# EXHIBIT A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRIENDLY ICE CREAM CORPORATION, *et al.*,[1] | ) | Case No. 11-13167 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS NOTICE AND CLAIMS AGENT FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

Upon the Motion (the "Motion")[2] of the above-captioned debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Epiq Bankruptcy Solutions, LLC ("Epiq") as notice and claims agent in these chapter 11 cases; and upon the First Day Declaration; and upon the Declaration of Jason D. Horwitz, Vice President and Senior Consultant at Epiq, in support of the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1855 Boston Road, Wilbraham, Massachusetts 01095.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

K&E 19705498

appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard statements in support of the relief requested therein at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized to retain and employ Epiq as their notice and claims agent in accordance with the Motion and subject to the terms of the Services Agreement *nunc pro tunc* to this Petition Date.

3. Subject to paragraph 9 of this Order, the terms of the Services Agreement are approved.

4. Epiq is authorized to perform the services set forth in the Motion, this Order and the Services Agreement.

5. Without further order of this Court, the Debtors are authorized to pay Epiq's fees and expenses as set forth in the Services Agreement on a monthly basis in the ordinary course of business and without the necessity of Epiq filing fee applications with this Court; *provided, however*, that Epiq shall provide copies of its invoices to the Office of the United States Trustee and any official committee of creditors appointed in these chapter 11 cases.

6. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq incurred pursuant to the Services Agreement shall be an administrative expense of the Debtors' estates.

2

K&E 19705498

7.     Epiq may hold its retainer under the Services Agreement during the chapter 11 cases as security for the payment of expenses only under the Services Agreement.

8.     Epiq is appointed as agent for the office of the Clerk of this Court (the "Clerk's Office") and, as such, is designated as the authorized repository for all proofs of claim and proofs of interest filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk's Office with a certified duplicate thereof as the Clerk's Office may direct.

9.     The indemnification provisions in Section 7 of the Services Agreement are approved, subject to the following clarifications:

    a.    Epiq shall not be entitled to indemnification, contribution, or reimbursement for services other than the services to be provided under the Services Agreement, the Motion, and this Order, unless such additional services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

    b.    Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from Epiq's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege breach of Epiq's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Motion and Order; and

    c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of

defense costs, Epiq must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment related to indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq.

10. If these cases convert to cases under chapter 7 of the Bankruptcy Code, Epiq will continue to be paid for its services until the claims filed in the chapter 11 cases have been completely processed; if claims agent representation is necessary in the converted chapter 7 cases, Epiq will continue to be paid in accordance with section 156(c) of title 28 of the United States Code under the terms set out in the Services Agreement and this Order.

11. The relief requested herein shall continue to apply to any of the Debtors' affiliates and their respective estates that subsequently commence chapter 11 cases without the need for any further requests or motions.

12. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

13. Notwithstanding anything to the contrary contained herein, (i) any payment made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any order approving debtor-in-possession financing (a "DIP Order"), and (ii) any claim for which payment is authorized pursuant to this Order that is treated as an administrative expense of the Debtors' estates shall be and is subject and subordinate to any and all claims, liens, security interests, and priorities granted to the DIP Agents (as defined in the DIP Order) in accordance with and subject to the terms of the applicable DIP Order, and payment on any such claim shall be subject to any and all restrictions on payments in the DIP Order and any other order of the Court authorizing the Debtors' use of cash collateral.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15. The Debtors and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

Dated: _____, 2011
      Wilmington, Delaware

_____
United States Bankruptcy Judge

K&E 19705498

# EXHIBIT 1

# Services Agreement



# EPIQ

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Bankruptcy Solutions, LLC ("<u>Epiq</u>") and Friendly Ice Cream Corporation and related entities (collectively, the "<u>Client</u>"), as of September _____, 2011.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

### 1. Services.

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "<u>Agreement</u>"), Epiq agrees to furnish Client with the services set forth on <u>Exhibit A</u> hereto (the "<u>Services</u>") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of the Client. Charges for the Services will be based on the pricing schedule set forth on <u>Exhibit B</u> hereto (the "<u>Pricing Schedule</u>"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. The Client may request separate Services or all of the Services reflected in the Pricing Schedule.

### 2. Term.

This Agreement shall become effective on the date of its acceptance by both Epiq and the Client; <u>provided, however</u>, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) <u>by the Client</u>, on thirty (30) days' prior written notice to Epiq <u>and</u>, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) <u>by Epiq</u>, on ninety (90) days' prior written notice to the Client <u>and</u>, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

### 3. Charges.

3.1 For the Services and materials furnished by Epiq under this Agreement, the Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill the Client monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2013 and each January 2nd thereafter. If such annual increases exceed five

1



percent (5%) from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client of such proposed increases. In no event, however, shall Epiq propose an annual increase in excess of ten percent (10%).

3.3 Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 Client shall pay Epiq a retainer in the amount of $25,000 (the "Retainer"). The Retainer shall be applied in satisfaction of fees, costs and expenses incurred pursuant to this Agreement. To the extent the Client seeks relief under the Bankruptcy Code, any unapplied portion of the Retainer as of the petition date shall be applied immediately against post-petition date invoices until exhausted.

## 4. Confidentiality.

Any data ("Data") that may be received by Epiq from the Client during the term of this Agreement in connection with the Services shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if such Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Data or other Client materials provided to Epiq by Client, its agents or professionals in the performance of this Agreement.



## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1  Client is responsible for the accuracy of any programs and Data it may provide or give access to Epiq and for the output resulting from such data. In the event Data is provided by Client, Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Data which Client provides or gives access to Epiq. In the event Data is provided by Client, Client agrees, represents and warrants to Epiq that, prior to delivery of any Data to Epiq, Client warrants that it has full authority to deliver the Data to Epiq. In the event Data is provided by Client, Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Data to Epiq.

6.2  Any Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials"), if any, may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. In the event Data is provided by Client, Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). In the event Data is provided by Client, Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the Client Materials. In the event Data is provided by Client, Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if its intent to dispose of such data and media.



## 7. **Indemnification.**

The Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. **Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Epiq represents and warrants that it shall use its commercially reasonable and good faith efforts in performing its Services and such Services shall be performed in a manner that meet or exceed industry standards.

## 9. **Confidential On-Line Workspace**

Upon request of the Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to the Client pursuant to this Agreement; and (b) with the consent of the Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 10. **General**

10.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.



10.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide. Notwithstanding the above language, during the pendency of Client's Chapter 11 case, Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be adjudicated and enforced by the U.S. Bankruptcy Court, located in Wilmington, Delaware that has jurisdiction over Client's Chapter 11 case (the "Court"). Client and Epiq agree that such Court shall be the sole and exclusive venue and jurisdiction for any and all controversies or claims between the parties during the pendency of Client's Chapter 11 case.

10.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5 To the extent that it is necessary for Epiq to perform any portion of its Services at Client's facilities, Client and Epiq agree to work together utilizing their commercially reasonable and good faith efforts.

10.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.8 This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

10.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



10.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

    If to Epiq:

        Epiq Bankruptcy Solutions, LLC
        757 Third Avenue, Third Floor
        New York, New York 10017
        Attn: Ron Jacobs

    If to Client:

        Steven Sanchioni
        Executive Vice President & Chief Financial Officer
        Friendly Ice Cream Corporation
        1855 Boston Road
        Wilbraham, MA 01095

    With a copy to:

        Robert K. Sawyer, Jr.
        Senior Vice President and General Counsel
        Friendly Ice Cream Corporation
        1855 Boston Road
        Wilbraham, MA 01095

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

*/s/ Daniel C. McElhinney*

Name: Daniel C. McElhinney
Title: Managing Director


**FRIENDLY ICE CREAM CORPORATION**

By: */s/ Steven Sanchioni*
Name: Steven C. Sanchioni
Title: Executive Vice President



# EXHIBIT A

# SERVICES SCHEDULE

## CLAIMS MANAGEMENT

- ➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

- ➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

- ➢ Process all proof of claim/interest submitted.

- ➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

- ➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

  - Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
  - Date received;
  - Claim number assigned; and
  - Asserted amount and classification of the claim.

- ➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

- ➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- ➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- ➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

- ➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.



## SCHEDULES/STATEMENT PREPARATION

➤ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain of databases for maintenance and formatting of Schedules and Statement data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## NOTICING

➤ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;
- Notice of any auction sale hearing;
- Notice of the claims bar date;
- Notice of objection to claims;
- Notice of any hearings on a disclosure statement and confirmation of a plan of reorganization; and
- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➤ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➤ Update claim database to reflect undeliverable or changed addresses.

➤ Coordinate publication of certain notices in periodicals and other media.

➤ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.



- **BALLOTING/TABULATION**

- Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the Court, including (as needed):

  - Consult company and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.
  - Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.
  - Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist the company in requesting these listings).
  - Coordinate distribution of solicitation documents.
  - Prepare a certificate of service for filing with the court.
  - Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.
  - Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.
  - Establish a website for the posting of solicitation documents.
  - Receive and examine all ballots and master ballots cast by voting parties. Date- and time-stamp the originals of all such ballots and master ballots upon receipt.
  - Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote declaration or certification for filing with the court.
  - Undertake such other duties as may be requested by the Client.

## MISCELLANEOUS

- Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors.

- Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

- Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

- Provide temporary employees to the Clerk's Office to process claims, as necessary.

9



# EXHIBIT B

# EPIQ PRICING SCHEDULE

## Professional Services

| Title | Standard Hourly Rates[1] | 26% Discounted Rates[2] |
|---|---|---|
| Clerk | $40 – $60 | $30.00 – $44.00 |
| Case Manager | $95 – $145 | $70.00 – $107.00 |
| IT / Programming | $140 – $190 | $104.00 – $141.00 |
| Snr. Case Manager / Consultant | $165 – $220 | $122.00 – $163.00 |
| Senior Consultant | $225 - $275 | $166.00 - $203.00 |
| Vice President (equivalent or above) | $295 | $218.00 |

## Noticing Services[3]

| | |
|---|---|
| Printing | $0.10 per image (volume discounts apply) |
| Collate, fold and insert | **WAIVED** |
| Personalization / Labels | $0.05 each |
| Postage / Overnight Delivery | At cost |
| E-Mail Noticing | $50 per 1,000 |
| Fax Noticing | $0.10 per page |
| Claim Acknowledgement Card | $0.10 per card |
| Publication Noticing | Quoted at time of request |
| Processing Undeliverable Mail | $0.25 per piece |

---

[1] Epiq does not charge a premium/overtime charge for any of the professional services it performs. Outside vendors utilized by Epiq may include a premium / overtime charge for work performed on a weekend, holiday or after standard business hours.

[2] The discounted rates on Professional Fees will increase to 31% after such fees reach $250,000.

[3] Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.



## Claims Management Services

| | |
|---|---|
| Database Maintenance | $0.10 per record/month<br>**WAIVED FIRST 3 MONTHS** |
| Data Import / Transfer | No per creditor charge |
| Electronic Imaging[4] | $0.12 per image |
| Weblink Hosting Fee | $200.00 per month |
| Manual Claim Input | No per creditor charge |
| CD- ROM (Mass Document Storage) | Quoted at time of request |
| Document Storage   (paper) | **WAIVED** |
| (electronic) | No per creditor/image charge |

## On-Line Claim Filing Services

| | |
|---|---|
| On-Line Claim Filing | $600 per 100 claims filed |

## Call Center Services

| | |
|---|---|
| Standard Call Center Setup | $1,250<br>**WAIVED** |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $0.34 per minute<br>**WAIVED FIRST 3 MONTHS** |
| Support/Maintenance | $100.00 per month<br>**WAIVED** |

## Virtual Data Room

| | |
|---|---|
| Confidential On-line Workspace | Quoted at time of request |

## Solicitation, Balloting and Tabulation Services

| | |
|---|---|
| Set-up, tabulation and vote verification | Solicitation rates are usually higher than our standard hourly rates. However, for this case, Epiq will charge at its standard rates for all aspects, including solicitation |

---

[4] An additional $0.10 is charged per image for optical character recognition imaging.



## Public Securities Services

Quotes available upon request for:

- Noticing Event
- Voting Event
- Voting and Corporate Action Event
- Security Holder Identification Report

## Disbursement Services

| | |
|---|---|
| Check and/or Form 1099 | $1.50 each |
| Record to Transfer Agent | $0.25 each |