# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRIENDLY ICE CREAM CORPORATION, *et al.*,[1] | ) Case No. 11-13167 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION TAXES AND FEES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to remit and pay sales and use, income, franchise, property, and unemployment taxes, and business license and other similar fees. In support of this Motion, the Debtors respectfully state as follows.[2]

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1855 Boston Road, Wilbraham, Massachusetts 01095.

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Steven C. Sanchioni, Executive Vice President, Chief Financial Officer, Treasurer, and Assistant Secretary of Friendly Ice Cream Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed contemporaneously herewith.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003, 6004(a) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## Relief Requested[3]

4. By this Motion, the Debtors seek the entry of an order authorizing, but not directing, the payment of Taxes and Fees in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date.

## Background

5. As described in the First Day Declaration, the Debtors are a leading full-service, family-oriented restaurant chain and provider of ice cream products in the Eastern United States. The Debtors' operations include approximately 490 restaurants located in 16 states. In addition to their restaurant operations, the Debtors manufacture a complete line of premium ice cream products distributed to more than 7,000 supermarkets and other third party retail locations in 48 states. The Debtors and their affiliates maintain their national headquarters in Wilbraham, Massachusetts, and employ over 10,000 workers across the country. In the first eight months of 2011, the Debtors' generated $329.7 million in revenue and $8.6 million in adjusted EBITDA.

---

[3] Capitalized terms used in this section shall have the meanings set forth elsewhere in this Motion.

6. In recent years, the restaurant industry—including the Debtors' businesses—has been hurt by the significant U.S. economic downturn and increased food costs. New advertising campaigns and cost-cutting programs implemented by the Debtors have successfully mitigated certain negative effects on their businesses; however, the Debtors have not been immune to the effects of the economy and rising food prices, and their financial performance has suffered significantly.

7. As the Debtors' liquidity position deteriorated, the Debtors struggled to meet their debt service obligations and failed to satisfy financial covenants under their prepetition revolving credit agreement, resulting in a default. Prior to their chapter 11 filing, the Debtors successfully negotiated a forbearance agreement with their senior secured lenders and a further extension of credit under their prepetition subordinated secured note in order to explore available restructuring alternatives. After careful review and extensive negotiations, the Debtors determined that a chapter 11 filing, coupled with an expedited operational restructuring and an efficient sale of the Debtors' assets, was the best and most efficient way to maximize a return for the Debtors, their estates, and all parties in interest.

8. On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code to permit them to restructure their balance sheets and operations to restore profitability. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.

## The Debtors' Tax Obligations

9. In the ordinary course of business, the Debtors: (a) incur and/or collect taxes, including income, franchise, sales, use, property, unemployment, and miscellaneous taxes in the operation of their businesses (collectively, the "Taxes"); (b) incur business license, permit, and vehicle fees and other similar assessments (collectively, the "Fees") in connection with obtaining licenses and permits necessary to operate their businesses; and (c) remit such Taxes and Fees to various taxing, licensing, and other governmental authorities (collectively, the "Authorities"). A list of the Authorities is attached hereto as **Exhibit B**. The Debtors pay the Taxes and Fees monthly, quarterly, or annually, in each case as required by applicable laws and regulations.

### I. Sales and Use Taxes.

10. The Debtors incur an assortment of sales, use, and miscellaneous similar taxes in connection with the operation of their restaurants and the distribution of their products (the "Sales and Use Taxes"). Generally, sales taxes are remitted to the Authorities in the month or quarter following acquisition or transportation of the corresponding goods. Although the Debtors are timely with respect to Sales and Use Taxes, they estimate that, as of the Petition Date, approximately $1.9 million of Sales and Use Taxes have accrued and are unpaid.

### II. State Income and Franchise Taxes.

11. The Debtors pay income and franchise taxes to certain state Authorities to operate their businesses in the applicable taxing jurisdictions. States assess income and franchise taxes in one of the following manners: (a) a minimum tax on all businesses; (b) a tax based on gross receipts, gross margin, or net operating income; or (c) a tax on an entity's total capital/equity or *pro forma* calculation thereof. The Debtors pay income and franchise taxes in most jurisdictions on a quarterly basis, with the requirement to remit quarterly estimated tax payments in some

4

cases. The Debtors estimate that, as of the Petition Date, approximately $75,000 of state income and franchise taxes have accrued and are unpaid.

**III.   Personal and Real Property Taxes.**

12.    State and local laws in many of the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' real and personal property. To avoid the imposition of statutory liens on their personal and real properties, the Debtors typically pay these taxes in the ordinary course of business on a monthly basis. The Debtors estimate that, as of the Petition Date, approximately $750,000 of personal and real property taxes have accrued and are unpaid.

**IV.   Unemployment Taxes.**

13.    Federal and state Authorities impose unemployment taxes for employer-funded unemployment compensation programs. The Authorities calculate the unemployment taxes based upon various tax rates assessed against the amount of wages paid in those jurisdictions in which the Debtors operate. Often, state tax liability with respect to any one employee is capped at a certain amount. The Debtors estimate that, as of the Petition Date, approximately $1.0 million of unemployment taxes have accrued and are unpaid.

**V.    Business License, Reporting, and Food and Health Regulatory Fees.**

14.    Many states and certain local taxing Authorities require the payment of Fees for the authority to conduct business within their jurisdictions. The Fees are typically for health inspections, licenses, annual reports, permits and business licenses, and other similar charges and assessments. Depending on the jurisdiction, the Debtors remit these Fees on a monthly, quarterly, or annual basis. Although the Debtors believe they are current with respect to these Fees, they estimate that, as of the Petition Date, approximately $2,000 of Fees have accrued and

5

DOCS_DE:173744.1 00001-002

are unpaid.

## Basis for Relief

### I. Payment of the Taxes and Fees is Necessary and Appropriate.

15. The Debtors' payment of Taxes and Fees in the ordinary course of business is justified because, among other things, certain of the Taxes and Fees are not property of the estate pursuant to section 541(d) of the Bankruptcy Code. In addition, the Debtors' directors and officers may be held personally liable for the non-payment of certain taxes. Certain Authorities may take precipitous action against the Debtors' directors and officers for unpaid Taxes, which would distract the Debtors from their efforts to complete a successful reorganization.

#### A. Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.

16. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

17. Some of the Taxes and Fees constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Authorities. Courts have held that such taxes are not part of a debtor's estate. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *DuCharmes & Co. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *Shank v. Wash. State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by

6

bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dep't of Revenue (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983); *W. Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same). To the extent these "trust fund" Taxes are collected, they are not property of the Debtors' estates under section 541(d). *See, e.g., In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-105 (Bankr. E.D.Pa. 1987); *In re Dameron*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties not property of debtor's estate). The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to the Authorities as they become due.

### B. Payment of the Taxes and Fees Will Avoid Unnecessary Distractions in These Chapter 11 Cases.

18. Any regulatory dispute or delinquency that affects the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole. Specifically, the Debtors' failure to pay the Taxes and Fees could adversely affect their business operations because, among other things: (a) the Authorities could audit the Debtors or prevent the Debtors from continuing their businesses, which, even if unsuccessful, would unnecessarily divert the Debtors' attention away from the reorganization process; (b) the Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) certain directors and officers might be subject to personal liability—even if such a failure to pay such Taxes and Fees was not a result of malfeasance on their parts—which would undoubtedly distract those key individuals from their duties related to the Debtors' restructuring. Accordingly, the Debtors must continue to pay the Taxes and Fees as they become due to ensure that their officers and directors remain focused during these chapter 11 cases on operating the

7

businesses and implementing a successful restructuring.

C. **Certain of the Taxes and Fees May Constitute Secured or Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.**

19. Payment of certain of the Taxes and Fees likely will give the Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on the Taxes and Fees during these chapter 11 cases.

20. Claims for some of the Taxes and Fees are or may be priority claims entitled to payment prior to general unsecured creditors. *See* 11 U.S.C. § 507(a)(8). Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under section 507(a)(8)(b) of the Bankruptcy Code, the governmental units also may attempt to assess interest and penalties. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Thus, the payment of the Taxes and Fees at this time only affects the timing of the payment for the vast majority of the amounts at issue and, therefore, should not unduly prejudice the rights of other creditors.

D. **Payment of the Taxes and Fees is Warranted Under the Doctrine of Necessity.**

21. Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v.*

8

*James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants). When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 363(b) and 105(a) of the Bankruptcy Code.

22. Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g., Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

23. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere*

*Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

24.     In addition to the authority granted a debtor in possession under sections 363(b) and 105(a) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, see *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

25.     In *Lehigh*, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

26. The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . . ."); 3 COLLIER ON BANKRUPTCY ¶ 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

27. Here, the Debtors' payment of the Taxes and Fees are an exercise of sound business judgment and is necessary to permit a successful reorganization. As discussed above, the Debtors must continue to pay the Taxes and Fees to continue operating in certain jurisdictions and to avoid costly distractions during these chapter 11 cases. Indeed, it is possible that Authorities would seek to interfere with the Debtors' businesses if the Taxes and Fees are not paid on a timely basis. Additionally, the relief requested herein merely expedites the

treatment and distribution to the Authorities that would otherwise be made at a later date under the proposed plan of reorganization.

28. Moreover, in numerous chapter 11 cases, bankruptcy courts in this district, as well as other districts have exercised their powers to authorize chapter 11 debtors to pay prepetition taxes and fees. *See, e.g., In re SSI Grp. Holding Corp.*, No. 11-12917 (Bankr. D. Del. Sept. 15, 2011); *In re Neb. Book Co.*, No. 11-12005 (Bankr. D. Del. June 28, 2011); *In re L.A. Dodgers LLC*, No. 11-12010 (Bankr. D. Del. June 28, 2011); *In re Stallion Oilfield Servs. Ltd.*, No. 09-13562 (Bankr. D. Del. Nov. 16, 2009); *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 29, 2009); *In re Dayton Superior Corp.*, No. 09-11351 (Bankr. D. Del. Apr. 21, 2009); *In re Sun Times Media Grp., Inc.*, No. 09-11092 (Bankr. D. Del. Apr. 1, 2009); *In re Masonite Corp.*, No. 09-10844 (Bankr. D. Del. Mar. 17, 2009); *In re Portola Packaging, Inc.*, No. 08-12001 (Bankr. D. Del. Aug. 29, 2008); *In re ACG Holdings, Inc.*, No. 08-11467 (Bankr. D. Del. July 16, 2008); *In re Pierre Foods, Inc.*, No. 08-11480 (Bankr. D. Del. Aug. 13, 2008); *In re Tropicana Entm't, LLC*, No. 08-10856 (Bankr. D. Del. May 6, 2008); *In re Leiner Health Prods. Inc.*, No. 08-10446 (Bankr. D. Del. Apr. 4, 2008); *In re Wickes Holdings, LLC*, No. 08-10212 (Bankr. D. Del. Feb. 5, 2008). The Debtors submit that similar relief is warranted in these chapter 11 cases.[4]

### Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

29. The Debtors have sufficient funds to remit the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations

---

[4] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

and anticipated access to debtor in possession financing. Also, under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

30. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001)

31. Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties. Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf.* Bankruptcy Rule 4001(b)(2), (c)(2) (referring to "irreparable harm to the *estate*") (emphasis added). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions. *See* 9 COLLIER ON BANKRUPTCY ¶ 4001.06[3] (discussing source of "irreparable harm" standard under Rule

4001(c)(2)). Courts will routinely consider third party interests when granting such relief. *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

32. As discussed above, the Authorities may assert that the Debtors' directors and officers are personally liable if the Debtors fail to meet the obligations imposed upon them to remit Taxes and Fees. Thus, if the relief is not granted, the Debtors' directors and officers may be subject to personal tax-related lawsuits that would cause the Debtors' estate immediate and irreparable harm by detracting from the reorganization efforts. Moreover, pending entry of a final order, the Debtors only intend to remit Taxes and Fees to the extent that nonpayment may cause immediate and irreparable harm. Accordingly, the Debtors meet the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

## Satisfaction of Bankruptcy Rules 6004(a) and 6004(h)

33. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

34. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' prepetition secured lenders and the agent for the Debtors' proposed postpetition debtor-in-possession financing facility; (c) the indenture trustee for the Debtors' prepetition unsecured noteholders; (d) the top 20 unsecured creditors; and (e) any party that may have a particular interest in this Motion. As this Motion is seeking "first

14

DOCS_DE:173744.1 00001-002

day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Bankruptcy Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

35. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

15

DOCS_DE:173744.1 00001-002

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and granting such other further relief as is just and proper.

Dated: October 5, 2011
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ Laura Davis Jones

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:        ljones@pszjlaw.com
              tcairns@pszjlaw.com
              kmakowski@pszjlaw.com

- and -

James A. Stempel (*pro hac vice* admission pending)
Ross M. Kwasteniet (*pro hac vice* admission pending)
Jeffrey D. Pawlitz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
Email:        james.stempel@kirkland.com
              ross.kwasteniet@kirkland.com
              jeffrey.pawlitz@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*