# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRIENDLY ICE CREAM CORPORATION, *et al.*,[1] | ) Case No. 11-13167 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND
## FINAL ORDERS DETERMINING ADEQUATE ASSURANCE
## OF PAYMENT FOR FUTURE UTILITY SERVICES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order, substantially in the form attached hereto as **Exhibit B** (the "Final Order"), determining adequate assurance of payment for future utility services. In support of this Motion, the Debtors respectfully state as follows.[2]

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1855 Boston Road, Wilbraham, Massachusetts 01095.

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Steven C. Sanchioni, Executive Vice President, Chief Financial Officer, Treasurer, and Assistant Secretary of Friendly Ice Cream Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed contemporaneously herewith.

3. The statutory bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

### Relief Requested[3]

4. By this Motion, the Debtors seek entry of interim and final orders: (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) approving the Debtors' proposed offer of adequate assurance and procedures governing the Utility Providers' requests for additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of the Final Order; (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion, pending entry of the Final Order; and (e) authorizing the Debtors to pay Advantage any amounts due and owing prior to the Petition Date and continue making payments to Advantage in the ordinary course of business.

I.  **The Proposed Adequate Assurance.**

5. The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner. The Debtors expect that their cash flow from operations and cash on hand combined with adequate DIP financing will be sufficient to pay postpetition obligations related to their utility service.

---

[3] Capitalized terms used in this section shall have the meanings set forth elsewhere in this Motion.

2

6.  Nevertheless, to provide additional assurance of payment for future services to the Utility Providers, the Debtors propose to deposit $900,000 (the "Adequate Assurance Deposit"), into a segregated, interest-bearing account (the "Adequate Assurance Deposit Account") within 3 business days following entry of the Interim Order. The amount of the Adequate Assurance Deposit equals the estimated aggregate cost for two weeks of utility service, calculated as a historical average over the past 12 months. The Adequate Assurance Deposit will be held for the benefit of Utility Providers during the pendency of these chapter 11 cases.[4]

7.  The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' demonstrated ability to pay for future utility services in the ordinary course of business (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers. If any Utility Provider believes additional assurance is required, that Utility Provider may request such assurance pursuant to the procedures set forth below.

8.  In light of the severe consequences to the Debtors of any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors propose that the Court approve and adopt the following procedures (the "Adequate Assurance Procedures").

    a.  The Debtors will mail a notice of the hearing date and a copy of this Motion to the Utility Providers on the Utility Service List so that such Motion is received within 14 days of the hearing date on this Motion.

    b.  If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment in the form of deposits, prepayments, or otherwise, it must serve a request (an "Additional Assurance Request") upon (i) Friendly Ice Cream Corporation, 1855 Boston Road, Wilbraham, Massachusetts 01095 ,Attn: Bob Sawyer; (ii) proposed counsel to Friendly Ice Cream Corporation, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago,

---

[4] The Debtors further request that any Adequate Assurance Deposit required by, and deposited into the Adequate Assurance Deposit Account on behalf of, any Utility Provider pursuant to the procedures described herein be returned to the Debtors upon confirmation of a plan of reorganization, if not applied or returned earlier.

Illinois 60654, Attn: Jeffrey D. Pawlitz and Inbal Hasbani; (iii) proposed co-counsel to Friendly Ice Cream Corporation, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899-8705 (courier 19801), Attn: Laura Davis Jones; (iv) The Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Richard L. Schepacarter; and (v) proposed counsel to any official committee appointed in these chapter 11 cases (collectively, the "Notice Parties").

c. Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits; (iv) certify the amount that is equal to two weeks of utility service it provides to the Debtors, calculated as a historical average over the past 12 months; (v) certify that it currently is not paid in advance for its services; and (vi) explain why the Utility Provider believes the Debtors' Adequate Assurance is not sufficient adequate assurance of future payment.

d. Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have 21 days from the receipt of such Additional Assurance Request (the "Resolution Period") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

e. The Debtors may resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and other forms of security, without further order of the Court if the Debtors believe such additional assurance is reasonable.

f. If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

g. Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

h. The Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request.

4

9. Absent compliance with the Adequate Assurance Procedures, the Utility Providers are forbidden to alter, refuse, or discontinue service on account of any prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance, pending entry of the Final Order.

## II. Subsequent Modifications.

10. To the extent that the Debtors subsequently identify additional providers of utility services, the Debtors seek authority to amend the Utility Service List to add or remove any Utility Provider. The Debtors further request that the Court make the Interim and Final Orders apply to any such subsequently identified Utility Provider, regardless of when each Utility Provider was added to the Utility Service List. The Debtors shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's Additional Assurance Request by mutual agreement with the Utility Provider without further order of the Court or to schedule a Determination Hearing with the Court to determine the adequacy of assurance of payment with respect to such Utility Provider in accordance with such Adequate Assurance Procedures.

11. The Debtors request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing utility services to the Debtors absent further order of the Court.

## Background

12. As described in the First Day Declaration, the Debtors are a leading full-service, family-oriented restaurant chain and provider of ice cream products in the Eastern United States. The Debtors' operations include approximately 490 restaurants located in 16 states. In addition to their restaurant operations, the Debtors manufacture a complete line of premium ice cream

5

products distributed to more than 7,000 supermarkets and other third party retail locations in 48 states. The Debtors and their affiliates maintain their national headquarters in Wilbraham, Massachusetts, and employ over 10,000 workers across the country. In the first eight months of 2011, the Debtors' generated $329.7 million in revenue and $8.6 million in adjusted EBITDA.

13. In recent years, the restaurant industry—including the Debtors' businesses—has been hurt by the significant U.S. economic downturn and increased food costs. New advertising campaigns and cost-cutting programs implemented by the Debtors have successfully mitigated certain negative effects on their businesses; however, the Debtors have not been immune to the effects of the economy and rising food prices, and their financial performance has suffered significantly.

14. As the Debtors' liquidity position deteriorated, the Debtors struggled to meet their debt service obligations and failed to satisfy financial covenants under their prepetition revolving credit agreement, resulting in a default. Prior to their chapter 11 filing, the Debtors successfully negotiated a forbearance agreement with their senior secured lenders and a further extension of credit under their prepetition subordinated secured note in order to explore available restructuring alternatives. After careful review and extensive negotiations, the Debtors determined that a chapter 11 filing, coupled with an expedited operational restructuring and an efficient sale of the Debtors' assets, was the best and most efficient way to maximize a return for the Debtors, their estates, and all parties in interest.

15. On the date hereof (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code to permit them to restructure their balance sheets and operations to restore profitability. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.

## The Utility Providers

16. As set forth in the First Day Declaration, in the ordinary course of business, the Debtors incur expenses for gas, water, sewer, electric, telecommunications, waste, and other similar utility services provided by approximately 380 utility providers (as such term is used in section 366 of the Bankruptcy Code, collectively, the "Utility Providers"), a list of which is attached as **Exhibit C** hereto (the "Utility Service List").[5] On average, the Debtors spend approximately $1.8 million each month on utility costs. To help manage the payment and provision of services by a large majority of the Utility Providers for the Debtors' company operated restaurants, the Debtors employ an outside vendor, Advantage IQ, Inc. ("Advantage"), which organizes and pays certain of the Utility Providers on behalf of the Debtors. The Debtors generally make wire payments to Advantage twice a week for all utility invoices managed by Advantage that are due and owing. For its services rendered to the Debtors, Advantage charges approximately $13,000 per month. For the Debtors to provide such services in-house would be significantly more expensive. In addition to paying Advantage, the Debtors pay directly certain Utility Providers for a portion of the Debtors' company operated restaurants, all charges for their ice cream manufacturing operations in Wilbraham, MA and distribution centers in Chicopee,

---

[5] Although the Debtors believe that the Utility Service List includes all of their Utility Providers as of the Petition Date, the Debtors reserve the right to supplement the Utility Service List if any Utility Provider has been omitted. Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

7

MA and York, PA, and all Utility Providers of phone, DSL and wireless charges. As of the Petition Date, the Debtors estimate that approximately $2.4 million in utility costs are outstanding.

17. Uninterrupted utility services are essential to the Debtors' ongoing operations and, therefore, to the success of their reorganization. Indeed, any interruption of utility services, even for a brief period of time, would negatively affect the Debtors' operations, customer relationships, revenues, and profits, seriously jeopardizing the Debtors' reorganization efforts and, ultimately, recoveries to creditors. It, therefore, is critical that utility services continue uninterrupted during these chapter 11 cases.

### Basis for Relief

**I.     The Utility Providers are Adequately Assured of Payment for Future Services.**

18. Section 366(c)(2) of the Bankruptcy Code provides that a utility provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment within 30 days after the petition date. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors will pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing. At the same time, it protects utilities by permitting them to alter, refuse, or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

DOCS_DE:173745.1/68700.001

19. Section 366(c) of the Bankruptcy Code also restricts the factors that a court may consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts no longer may consider (a) the absence of a security deposit before a debtor's petition date, (b) a debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these changes, it does not appear that Congress intended to—or did—abrogate the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

20. Thus, while section 366(c) of the Bankruptcy Code limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had under section 366(b) of the Bankruptcy Code. *Compare* 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with* 11 U.S.C. § 366(c)(3)(a) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

21. In addition, it is well-established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Va. Elec. & Power Co. v. Caldor Inc.-N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, . . .

9

a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'") (citation omitted). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that utilities ultimately will render postpetition. *See* 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, even after the 2005 revisions to section 366 of the Bankruptcy Code, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

22. Finally, section 366(c) of the Bankruptcy Code, like section 366(b) of the Bankruptcy Code, requires only that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services."); *see also In re Caldor, Inc.-N.Y.*, 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (stating that section 366(b) "does not require an 'absolute guarantee of payment'"), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646 (2d Cir. 1997). Courts also have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original); *see also In re Penn Cent. Transp. Co.*,

10

467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

23. The Debtors submit that the Proposed Adequate Assurance, the Adequate Assurance Deposit Account, and the Adequate Assurance Procedures provide more than adequate assurance of future payment. Furthermore, the Debtors expect that revenue from continued operations, coupled with cash on hand, will be sufficient to pay their operating costs, including utility costs, as such costs come due. Moreover, the Debtors have a powerful incentive to stay current on utility obligations because of their reliance on utility services for the operation of their businesses. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that the Proposed Adequate Assurance, Adequate Assurance Deposit Account, and the Adequate Assurance Procedures are more than sufficient to assure the Utility Providers of future payment.

24. The Court has granted similar relief to that requested herein in a number of cases in this district. *See, e.g.*, *In re Neb. Book Co.*, No. 11-12005 (Bankr. D. Del. July 21, 2011) (deeming utilities adequately assured where the debtor established a segregated account containing the aggregate estimated cost for two weeks of utility service); *In re L.A. Dodgers LLC*, No. 11-12010 (Bankr. D. Del. July 19, 2011) (same); *In re Ambassadors Int'l, Inc.*, No. 11-11002 (Bankr. D. Del. Apr. 26, 2011) (same); *In re Stallion Oilfield Servs. Ltd.*, No. 09-13562 (Bankr. D. Del. Nov. 16, 2009) (same); *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 29, 2009) (same); *In re Masonite Corp.*, No. 09-10844 (Bankr. D. Del. Mar. 17, 2009)

(same); *In re Portola Packaging, Inc.*, No. 08-12001 (Bankr. D. Del. Aug. 29, 2008) (same); *In re Hines Horticulture, Inc.*, No. 08-11922 (Bankr. D. Del. Aug. 22, 2008) (same); *In re Pierre Foods, Inc.*, No. 08-11480 (Bankr. D. Del. July 16, 2008) (same); *In re ACG Holdings, Inc.*, No. 08-11467 (Bankr. D. Del. July 16, 2008) (same); *In re Tropicana Entm't, LLC*, No. 08-10856 (Bankr. D. Del. May 6, 2008) (same); *In re Leiner Health Prods. Inc.*, No. 08-10446 (Bankr. D. Del. Mar. 12, 2008) (same); *In re Buffets Holdings, Inc.*, No. 08-10141 (Bankr. D. Del. Feb. 28, 2008).[6]

25. Moreover, if a Utility Provider disagrees with the Debtors' analysis, the Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtors' continuing operations.

## II. The Adequate Assurance Procedures are Appropriate.

26. The Court has authority to approve the Adequate Assurance Procedures under section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts sic power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (15th ed. rev. 2007).

27. The proposed procedures are necessary in these chapter 11 cases. If they are not approved, the Debtors could be forced to address numerous requests by the Utility Providers in a disorganized manner during the critical first weeks of these chapter 11 cases. Moreover, a Utility Provider could blindside the Debtors by unilaterally deciding—on or after the 30th day following the Petition Date—that it is not adequately protected and discontinuing service or

---

[6] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

making an exorbitant demand for payment to continue service. Discontinuation of utility service could essentially shut down operations, and any significant disruption of operations could jeopardize these chapter 11 cases.

### Satisfaction of Bankruptcy Rule 6004(a) and 6004(h)

28. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

29. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' prepetition secured lenders and the agent for the Debtors' proposed postpetition debtor-in-possession financing facility; (c) the indenture trustee for the Debtors' prepetition unsecured noteholders; (d) the top 20 unsecured creditors; and (e) any party that may have a particular interest in this Motion. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Bankruptcy Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

30. No prior request for the relief sought in this Motion has been made to this or any other

*[Remainder of Page Intentionally Left Blank]*

13

DOCS_DE:173745.1/68700.001

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: October 5, 2011
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
  tcairns@pszjlaw.com
  kmakowski@pszjlaw.com

- and -

James A. Stempel (*pro hac vice* admission pending)
Ross M. Kwasteniet (*pro hac vice* admission pending)
Jeffrey D. Pawlitz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.stempel@kirkland.com
  ross.kwasteniet@kirkland.com
  jeffrey.pawlitz@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*