IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement effective as of the date first above written.

**ASSIGNORS:**

FRIENDLY ICE CREAM CORPORATION

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President


FRIENDLY'S RESTAURANTS FRANCHISE, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President


FRIENDLY'S REALTY I, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President


FRIENDLY'S REALTY II, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President


FRIENDLY'S REALTY III, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

**ASSIGNEE:**

SUNDAE GROUP HOLDINGS II, LLC

By: _____
Name: Jared Wien
Its: Vice President

**[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTION AGREEMENT]**

**Exhibit B**

**Form of Bankruptcy Sale Order**

See attached.

**Exhibit C**

**Form of Bidding Procedures Order**

See attached.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRIENDLY ICE CREAM CORPORATION, *et al.*,[1] | ) | Case No. 11-[____] (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## ORDER (A) APPROVING BIDDING PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES; (C) APPROVING FORM OF ASSET PURCHASE AGREEMENT, INCLUDING EXPENSE REIMBURSEMENT; (D) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALES, INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (E) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Bidding Procedures Order") approving Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and the sale of substantially all of the Debtors' assets; and upon the First Day Declaration; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  1855 Boston Road, Wilbraham, Massachusetts 01095.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Asset Purchase Agreement, or the Bidding Procedures, as applicable.

the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

## FOUND, CONCLUDED AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    The Court has jurisdiction over the Motion and the transactions contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 364 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014; and (iii) Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

D.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

E.    The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of substantially all of the Debtors' assets (the "Acquired Assets"), the Bidding Procedures to be employed in connection therewith, and the Sale Hearing.

K&E 19996122

F.     The Cure Notice (defined below) attached hereto as **Exhibit 2** is reasonably calculated to provide all non-Debtor counterparties (the "Contract Parties") to the Debtors' executory contracts and unexpired leases (each a "Contract or Lease" and, collectively, the "Contracts and Leases") with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure amounts relating thereto, although the mere listing of any executory contract or unexpired lease on the Cure Notice does not require or guarantee that such executory contract or unexpired lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.

G.     The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) set the Sale Hearing and approve the manner of notice of the Motion and the Sale Hearing; (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assigned Contracts"), including notice of proposed cure amounts; and (iv) grant certain bid protections as provided in the Asset Purchase Agreement and in this Bidding Procedures Order.

H.     The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

I.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

J.     The Expense Reimbursement set forth in the Asset Purchase Agreement shall be paid in accordance with the Asset Purchase Agreement, and (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 364(c)(1) and 503(b)(1) of the Bankruptcy Code, payable solely as provided in Section 11.3 of the Asset Purchase Agreement, (ii) is reasonable and appropriate, particularly in light of

3

the size and nature of the sale and the efforts that have been or will be expended by the Stalking Horse Purchaser notwithstanding that the proposed sale is subject to higher and better offers for the Acquired Assets, (iii) was negotiated by the parties at arm's length and in good faith, and (iv) is necessary to ensure that the Stalking Horse Purchaser will continue to pursue its proposed acquisition of the Acquired Assets contemplated by the Asset Purchase Agreement.

K.     The proposed sale of the Acquired Assets is consistent with section 363(b)(1)(A) of the Bankruptcy Code and the Debtors' existing privacy policy, and no consumer privacy ombudsman is necessary in connection with the sale or sales of the Debtors' assets.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     The relief requested in the Motion as it relates to the Bidding Procedures, the Expense Reimbursement, and the scheduling of, and notice to be approved with respect to, the sale process, the Auction, and the Sale Hearing, is granted and approved as set forth in this Bidding Procedures Order.

2.     Any and all objections and responses to the Motion that have not been withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.     The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby approved in their entirety. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

4.     The Debtors may pursue a sale (or sales) of the Acquired Assets and enter into the transactions contemplated by the Asset Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

4

5.    The Auction shall take place on **[December 1, 2011] at 9:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such other place and time as the Debtors shall notify all Qualified Bidders (including, but not limited to, the Stalking Horse Purchaser), any official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), counsel for the Stalking Horse Purchaser, counsel for each of the agent for the Debtors' prepetition secured lender and the agent for the Debtors' postpetition debtor-in-possession financing facility (the "DIP Agent"), and other invitees. The Auction shall be conducted in accordance with the Bidding Procedures.

6.    The Sale Hearing shall be held before the Court on **[December 5, 2011]**.

7.    Objections, if any, to the sale of the Acquired Assets or any of the Debtors' assets and the transactions contemplated by the Asset Purchase Agreement, or the relief requested in the Motion must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on **[November 24, 2011]** (the "Sale Objection Deadline"); and be served such that they are actually received by the Sale Objection Deadline by:  (a) the Debtors, Friendly Ice Cream Corporation, 1855 Boston Road, Wilbraham, Massachusetts 01095, Attn: Robert K. Sawyer; (b) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Ross M. Kwasteniet; (c) counsel to the Committee; (d) counsel to the Stalking Horse Purchaser, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, Attn: David A. Gerson; (e) counsel to the DIP Agent, Paul Hastings LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308, Attn: Jesse H. Austin, III

5

(f) Duff & Phelps, 55 E. 52nd Street, Floor 31, New York, New York 10055, Attn: Joshua Benn and 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025, Attn: Russ Belinsky; and (g) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Richard Schepacarter.

8.    The notice of the proposed sale or sales of the Debtors' assets, substantially in the form attached hereto as **Exhibit 3** (the "Sale Notice"), is hereby approved.

9.    On or before three (3) business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Acquired Assets; (b) the U.S. Trustee; (c) counsel to the DIP Agent; (d) the indenture trustee for the Debtors' prepetition unsecured noteholders; (e) the top 30 unsecured creditors; (f) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Acquired Assets or have any known interest in the relief requested by the Motion; (g) counsel to the Stalking Horse Purchaser; (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (i) counsel to the Committee; (k) all parties to any litigation involving the Debtors; (j) all Contract Parties of the Debtors; and (k) all potential Bidders previously identified or otherwise known to the Debtors.

10.    In addition to the foregoing, as soon as practicable, but in any event no later than five (5) business days after the entry of this Bidding Procedures Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in *The Wall Street Journal*,

6

national edition.

11.     The notice of potential assumption and assignment of the Contracts and Leases, substantially in the form attached hereto as **Exhibit 2** (the "Cure Notice"), is hereby approved.

12.     On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtors shall serve by first class mail, overnight delivery, facsimile or electronic mail, as the case may be and in the Debtors' sole discretion, the Cure Notice on all Contract Parties. The Cure Notice shall identify the Contracts and Leases and provide the corresponding cure amounts that the Debtors believe must be paid to cure all prepetition defaults under the Contracts and Leases (the "Cure Amounts").

13.     Unless the Contract Party to any Contract or Lease files an objection to its scheduled Cure Amount or to the assumption and assignment of a Contract or Lease, and serves a copy of the such objection **so as to be received no later than the Sale Objection Deadline** by:     (a) the Debtors, Friendly Ice Cream Corporation, 1855 Boston Road, Wilbraham, Massachusetts 01095, Attn: Robert K. Sawyer; (b) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Ross M. Kwasteniet; (c) counsel to the Committee; (d) counsel to the Stalking Horse Purchaser, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, Attn: David A. Gerson; (e) counsel to the DIP Agent, Paul Hastings LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308, Attn: Jesse H. Austin, III and (f) the U.S. Trustee; such Contract Party shall be forever barred and estopped from objecting (i) to the Cure Amount and from asserting that any additional amounts are due or defaults exist, (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required

7

consent to assignment has not been given or (iii) that the Stalking Horse Purchaser has not provided adequate assurance of future performance.

14.     In accordance with the Bidding Procedures, promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Bankruptcy Court a notice of the Successful Bid(s) and Successful Bidder(s). Only if the Stalking Horse Purchaser is *not* the sole Successful Bidder for the Debtors' assets, the Contract Parties shall have until the Sale Hearing to object to the assumption and assignment of a Contract or Lease solely on the issue of whether the Successful Bidder (if not the Stalking Horse Purchaser) can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (each an "Adequate Assurance Objection"); provided, however, that if the Stalking Horse Purchaser is the sole Successful Bidder, all Adequate Assurance Objections must be filed by the Sale Objection Deadline. All objections to the assumption and assignment of Contracts and Leases that do not relate to the issue of whether the Successful Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

15.     In the event of a timely filed objection and dispute regarding: (a) any Cure Amount with respect to any of the Contracts and Leases; (b) the ability of the Successful Bidder or Successful Bidders (including the Stalking Horse Purchaser or such other Successful Bidder) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under a Contract or Lease; or (c) any other matter pertaining to assumption, the Cure Amount shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Contract of Lease; provided, however, that the Debtors are authorized to settle any dispute

8

regarding the amount of any Cure Amount or assignment to the Successful Bidder (including the Stalking Horse Purchaser) without any further notice to or action, order or approval of the Court.

16.    Within five (5) business days after the Closing Date, the Debtors will file a complete list of the Contracts and Leases that were assumed and assigned as Assigned Contracts, as of the Closing Date, in connection with the sales of the Acquired Assets and/or any other assets of the Debtors, separately or as a combined transaction. In addition, within five (5) business days after the Closing Date, the Debtors will file a complete list of Designation Right Contracts, if any. The procedures and provisions set forth in the Asset Purchase Agreement regarding the assumption and assignment or rejection of the Designation Right Contracts are approved in all respects.

17.    The Auction and/or Sale Hearing may be continued by the Debtors from time to time, for an aggregate period of up to five (5) days, with the consent of the Stalking Horse Purchaser (which consent will not unreasonably be withheld), without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

18.    The Expense Reimbursement and Section 11.3 of the Asset Purchase Agreement are hereby approved, authorized and binding upon the Debtors and their estates. The Debtors' obligation to pay the Expense Reimbursement shall survive termination of the Asset Purchase Agreement and shall be payable solely as provided in the Asset Purchase Agreement. To the extent that the Stalking Horse Purchaser is not the Successful Bidder, other than as a result of a breach of the Stalking Horse Purchaser's obligations under the Asset Purchase Agreement, the Successful Bidder is authorized and directed to pay the Expense Reimbursement directly to the Stalking Horse Purchaser by wire transfer of immediately available good funds to

9

an account specified by the Stalking Horse Purchaser at the Closing of any Alternate Transaction with the Successful Bidder. To the extent for any reason the Successful Bidder fails to pay the Expense Reimbursement directly to the Stalking Horse Purchaser, the Debtors are authorized and directed to pay the Expense Reimbursement to the Stalking Horse Purchaser in accordance with the terms of the Asset Purchase Agreement without further order of the Court.

19.     Except for the Stalking Horse Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement or breakup, termination or similar fee or payment.

20.     Except as otherwise provided in the Asset Purchase Agreement or this Bidding Procedures Order, the Debtors' rights are reserved, as they may reasonably determine to be in the best interests of their estates, in consultation with the Committee and the DIP Agent (provided that the DIP Agent will be consulted solely to the extent that it is not submitting a Bid on behalf of itself and any other lenders under the Debtors' postpetition debtor-in-possession financing facility and the Debtors' prepetition senior secured credit facility) to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures or implement additional procedural rules that are reasonable under the

circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures or the Asset Purchase Agreement.

21.     To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control.  The Debtors' obligations under this Bidding Procedures Order, the provision of this Bidding Procedures Order and the portions of the Asset Purchase Agreement pertaining to the Bidding Procedures (including all obligations to pay the Expense Reimbursement) shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code).

22.     Notwithstanding anything to the contrary contained herein, (i) any payment made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any order approving debtor-in-possession financing (a "DIP Order"), and (ii) any claim for which payment is authorized pursuant to this Order that is treated as an administrative expense of the Debtors' estates shall be and is subject and subordinate to any and all claims, liens, security interests, and priorities granted to the DIP Agents (as defined in the DIP Order) in accordance with and subject to the terms of the applicable DIP Order, and payment on any such claim shall be subject to any and all restrictions on payments in the DIP Order and any other order of the Court authorizing the Debtors' use of cash collateral.

11

23. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

24. All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

26. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Bidding Procedures Order.

Dated: _____, 2011
      Wilmington, Delaware

_____
United States Bankruptcy Judge

K&E 19996122

## EXHIBIT 1

## Bidding Procedures

# BIDDING PROCEDURES[1]

By the Motion dated as of the Petition Date, Friendly Ice Cream Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[2] sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale of substantially all of their assets (the "Acquired Assets") described in the Asset Purchase Agreement by and among, Sundae Group Holdings II, LLC, as purchaser (the "Stalking Horse Purchaser"), and the Debtors, as sellers, dated as of October [__], 2011 (the "Asset Purchase Agreement"), a copy of which is attached attached as **Exhibit B** to the Motion.

On [_____], 2011 the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures").

## Marketing Process

### Contact Parties.

The Debtors, in consultation with their investment banker Duff & Phelps Securities, LLC ("Duff & Phelps") have developed a list of parties (in addition to the Stalking Horse Purchaser) who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing transaction for the Acquired Assets (any such transaction, an "Alternate Transaction"), which list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party" and, collectively, the "Contact Parties"). The Debtors and Duff & Phelps will contact the Contact Parties to explore their interest in pursuing an Alternate Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an "Information Package," comprising:

(a)     A cover letter;

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the motion for approval of, among other things, these Bidding Procedures (the "Motion") or in the Asset Purchase Agreement, as applicable.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1855 Boston Road, Wilbraham, Massachusetts 01095.

(b)    A copy of these Bidding Procedures and the Motion;

(c)    A copy of a confidentiality agreement; and

(d)    Such other materials as the Debtors and Duff &Phelps deem appropriate under the circumstances including, but not limited to, preliminary "teaser" information.

***Access to Diligence Materials.***

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtors an executed confidentiality agreement in the form and substance satisfactory to the Debtors and evidence demonstrating the party's financial capability with respect to an Alternate Transaction as determined by the Debtors.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." All due diligence requests must be directed to Duff & Phelps.

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

***Due Diligence from Bidders.***

Each Preliminary Interested Investor and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Preliminary Interested Investor to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that such bidder is not a Qualified Bidder. Failure by a Qualified Bidder (other than the Stalking Horse Purchaser) to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by such Qualified Bidder is not a Qualified Bid.

## Auction Qualification Process

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the conditions set forth below. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(a)    Good Faith Deposit: Each Bid must be accompanied by a deposit in the amount of $5,000,000 to an interest-bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). The Stalking Horse Purchaser shall not be required to submit a Good Faith Deposit.

(b)    Bids for Portions of Debtors' Assets: A Bid may offer to purchase all or substantially all of the Debtors' assets or only a portion of the Debtors' assets;

2

provided that the Debtors determine, in their sole discretion, that the aggregate consideration offered by any Bid or combination of Bids for all or substantially all of the Debtors' assets satisfies the "Minimum Bid" requirements set forth in clause (e) below.

(c) <u>Same or Better Terms</u>: Each Bid must be on terms that, in the Debtors' business judgment, are the same or better than the terms of the Asset Purchase Agreement.

(d) <u>Executed Agreement</u>: Each Bid must be based on the Asset Purchase Agreement and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternate Transaction (the "<u>Modified Asset Purchase Agreement</u>"). A Bid shall also include a copy of the Asset Purchase Agreement marked against the Modified Asset Purchase Agreement to show all changes requested by the Bidder (including those related to purchase price and to remove all provisions that apply only to the Stalking Horse Purchaser as the stalking horse bidder such as the Expense Reimbursement provisions contained in the Asset Purchase Agreement).

(e) <u>Minimum Bid</u>: A Bid of any combination of Bids for all or substantially all of the Debtors' assets must propose a minimum purchase price equal to or greater than $122,600,000 in cash, sufficient to satisfy:

   (1) the balance of the Debtors' postpetition debtor-in-possession financing facility in cash; ***plus***

   (2) the credit bid of the Stalking Horse Purchaser in cash; ***plus***

   (3) the Expense Reimbursement in cash; ***plus***

   (4) the Creditors' Recovery Amount (which amount shall be set forth in a notice to be provided to potential Bidders at least 48 hours prior to the Bid Deadline); ***plus***

   (5) the Additional Employee Payment obligation in the Asset Purchase Agreement; ***plus***

   (6) $500,000 in cash.

(f) <u>Designation of Assigned Contracts and Leases</u>: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at closing (together with any Designation Right Contracts that may be assumed and assigned to it in accordance with the governing terms of any applicable asset purchase agreement) pursuant to an Alternate Transaction.

(g) <u>Assumption of Liabilities</u>: A Bid must provide for the payment or assumption of at least all or substantially all of the Assumed Obligations (as defined in the Asset

Purchase Agreement).

(h)  Corporate Authority: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Alternate Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternate Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Alternate Transaction by the equity holder(s) of such Bidder.

(i)  Proof of Financial Ability to Perform: A Bid must include written evidence that the Debtors conclude in their sole discretion (in consultation with their advisors) demonstrates that the Bidder has the necessary financial ability to close the Alternate Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Alternate Transaction. Such information must include, inter alia, the following:

   (1)  contact names and numbers for verification of financing sources;

   (2)  evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Alternate Transaction;

   (3)  the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors; and

   (4)  any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Alternate Transaction.

(j)  Contingencies: Each Bid (1) may not contain representations and warranties, covenants, termination rights materially more onerous in the aggregate to the Debtors than those set forth in the Asset Purchase Agreement and (2) may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(k)  Irrevocable: Each Bid must be irrevocable through the Auction, provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(l)  Bid Deadline: The following parties must receive a Bid in writing, on or before **[November 24, 2011]** at 4:00 p.m. (prevailing Eastern Time) or such earlier date

4

as may be agreed to by the Debtors (the "Bid Deadline"): (1) the Debtors, Friendly Ice Cream Corporation, 1855 Boston Road, Wilbraham, Massachusetts 01095, Attn: Robert K. Sawyer; (2) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Ross M. Kwasteniet; (3) counsel to the Committee; (4) counsel to the Stalking Horse Purchaser, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, Attn: David A. Gerson; (5) counsel to the DIP Agent, Paul Hastings LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308, Attn: Jesse H. Austin, III; and (6) Duff & Phelps, 55 E. 52nd Street, Floor 31, New York, New York 10055, Attn: Joshua Benn and 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025, Attn: Russ Belinsky.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements for the applicable assets shall constitute a "Qualified Bid" for such assets, and such Bidder shall constitute a "Qualified Bidder" for such assets. Notwithstanding anything herein to the contrary, the Asset Purchase Agreement submitted by the Stalking Horse Purchaser shall be deemed a Qualified Bid, and the Stalking Horse Purchaser a Qualified Bidder. In addition, the Stalking Horse Purchaser will receive, from each Bidder, a copy of any Bids at the time such Bid is submitted to the Debtors. The Debtors shall inform counsel to the Stalking Horse Purchaser whether the Debtors will consider such Bids to be Qualified Bids no later than three (3) days prior to the Auction.

## Auction

If one or more Qualified Bids solely for the Debtors' assets (other than the Asset Purchase Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid or combination of Qualified Bids for any of the Debtors' assets (including the Acquired Assets). This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates and may include, among other things, the following: (a) the amount and nature of the consideration, including any assumed liabilities; (b) the number, type and nature of any changes to the Asset Purchase Agreement requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale or sales of the Debtors' assets and the cost to Sellers of such modifications or delay; (d) the total consideration to be received by Sellers; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to the Debtors' estates, taking into account the Stalking Horse Purchaser's right to the Expense Reimbursement (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Asset Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction. Unless otherwise agreed to by the Stalking Horse Purchaser in its sole discretion, only Qualified Bidders may participate in the Auction.

## Procedures for Auction

The Auction shall take place on **[December 1, 2011] at 9:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such other place and time as the Debtors shall notify all

Qualified Bidders, including, without limitation, the Stalking Horse Purchaser, the Committee, counsel for the Stalking Horse Purchaser and other invitees. The Auction shall be conducted according to the following procedures:

Only the Debtors and their counsel, members of the Committee and its counsel, the Stalking Horse Purchaser, the DIP Agent, the holder of the Debtors' subordinated secured promissory note, and any other Qualified Bidder, in each case, along with their representatives and counsel, shall attend the Auction in person, and only the Stalking Horse Purchaser, the DIP Agent, the holder of the Debtors' subordinated secured promissory note, and such other Qualified Bidders will be entitled to make any Bids at the Auction. The DIP Agent, on behalf of itself and any other lenders under the Debtors' postpetition debtor-in-possession financing facility and the Debtors' prepetition senior secured credit facility, and the Stalking Horse Bidder (as holder of the Debtors' subordinated secured promissory note) each reserve the right to make any Bid comprised of cash and/or any credit bid (pursuant to section 363(k) of the Bankruptcy Code or other applicable law) at the Auction. For the avoidance of doubt, at any time, and from time to time, during the Auction, the Stalking Horse Purchaser may increase its Bid, including by increasing the amount of the Credit Bid to the full amount then outstanding and owing under Debtors' subordinated secured promissory note and postpetition debtor-in-possession financing facility.

**The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction. Other than as expressly set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest, best, or otherwise financially superior offer for any of the Debtors' assets. At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid or Qualified Bids received prior to the Bid Deadline, (each such highest and best Qualified Bid the "Auction Baseline Bid"). Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein and (b) has reviewed and understands and accepts the Bidding Procedures.

**Terms of Overbids.**

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the respective Auction Baseline Bid for such Auction. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)  Minimum Overbid Increments:  Any Overbid after and above the respective Auction Baseline Bid shall be made in increments valued at not less than $500,000. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include cash and/or noncash consideration and, in the case of a Bid by the Stalking Horse Purchaser, a credit bid of the Expense Reimbursement.

(b)  Stalking Horse Purchaser May Credit Bid Expense Reimbursement: The Stalking Horse Purchaser shall be permitted to bid at the Auction, if any, and shall be

permitted to credit bid the full amount of the Expense Reimbursement pursuant to any Overbid in connection with each round of bidding in the Auction.

(c)    Remaining Terms Are the Same as for Qualified Bids:  Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid at any Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Alternate Transaction proposed by such Overbid.

***Announcement and Consideration of Overbids.***

(a)    Announcement of Overbids:  The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid.

(b)    Consideration of Overbids:  The Debtors reserve the right, in their reasonable business judgment, to make one or more continuances of the Auction to, among other things:  facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Alternate Transaction at the prevailing Overbid amount.

***Backup Bidder.***

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Bidder or Bidders with the next highest or otherwise best Bid or combination of Bids at the Auction, as determined by the Debtors, in the exercise of their business judgment, will be designated as the potential backup bidder (collectively, the "Potential Backup Bidder"). In the event that a Bidder or Bidders other than the Stalking Horse Purchaser are identified by the Debtors as the Potential Backup Bidder, such Bidder or Bidders shall be required to serve as the backup bidder or backup bidders (collectively, the "Backup Bidder"). If the Stalking Horse Purchaser is determined to be the Potential Backup Bidder, the Stalking Horse Purchaser may, in its sole discretion, elect not to serve as the Backup Bidder, and the Debtors may identify the Bidder or Bidders with the next highest or otherwise best Bid or combination of Bids, if any, as the Backup Bidder. The Backup Bidder shall be required to keep its initial Bid or combination of Bids (or if the Backup Bidder submitted one or more Overbids at the Auction, the final respective Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m.

(prevailing Eastern Time) on the date that is thirty (30) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein).

Following the Sale Hearing, if the Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein), the Debtors may designate the Backup Bidder to be the new Successful Bidder (defined herein), and the Debtors will be authorized, but not required, to consummate the transaction or transactions, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder (defined herein). The deposit of the Backup Bidder shall be held by the Debtors until the earlier of 72 hours after (i) the closing of the transaction or transactions with the Successful Bidder (defined herein) and (ii) the Outside Backup Date.

### *Additional Procedures.*

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures or the Asset Purchase Agreement.

### *Consent to Jurisdiction as Condition to Bidding.*

The Stalking Horse Purchaser, all Qualified Bidders, and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these chapter 11 cases, the Bidding Procedures, the Asset Purchase Agreement, the Auction, or the construction and enforcement of any Alternate Transaction Documents and waived any right to a jury trial in connection with any disputes relating to the Debtors, these chapter 11 cases, the Bidding Procedures, the Asset Purchase Agreement, the Auction, or the construction and enforcement of any Alternate Transaction Documents.

### *Sale Is As Is/Where Is.*

The Acquired Assets or any other assets of the Debtors sold pursuant to the Bidding Procedures, shall be conveyed at Closing in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

### *Closing the Auction.*

The Auction shall continue until there is (a) only one Qualified Bid or combination of Qualified Bids for the Acquired Assets or any other assets of the Debtors sold pursuant to the Bidding Procedures that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors and the Committee, is the highest and best Qualified Bid or combination of Qualified Bids at the Auction for the respective assets. Thereafter, the Debtors shall select one or more of such Qualified Bids, the combination of

which produces the highest and best recovery to the estates, as the overall highest and best Qualified Bid or Bids (each such Bid a "Successful Bid," and each Bidder submitting such Successful Bid, a "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria.

The Auction shall close when each Successful Bidder for any such assets submits fully executed sale and transaction documents memorializing the terms of its respective Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

### Expense Reimbursement

Pursuant to the Bidding Procedures Order, the Stalking Horse Purchaser is entitled to the Expense Reimbursement, in an amount of up to $1,000,000, in accordance with the terms of the Asset Purchase Agreement and the Bidding Procedures Order.

Pursuant to the Bidding Procedures Order, except for the Stalking Horse Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

### Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. The Good Faith Deposit of each Backup Bidder, if any, shall be returned to the respective Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the transaction with the Successful Bidder or Successful Bidders (defined herein) for the assets bid upon by such Backup Bidder and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder or Successful Bidders timely closes their winning transactions, their respective Good Faith Deposits shall be credited towards their respective purchase prices.

### Reservation of Rights

Except as otherwise provided in the Asset Purchase Agreement, the Bidding Procedures or the Sale Order, the Debtors further reserve the right as they may reasonably determine to be in the best interest of their estates, in consultation with the Committee, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal;

(d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures or implement additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures or the Asset Purchase Agreement.

Dated: October 5, 2011
        Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:        ljones@pszjlaw.com
              tcairns@pszjlaw.com
              kmakowski@pszjlaw.com

- and -

James A. Stempel (*pro hac vice* admission pending)
Ross M. Kwasteniet (*pro hac vice* admission pending)
Jeffrey D. Pawlitz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.stempel@kirkland.com
              ross.kwasteniet@kirkland.com
              jeffrey.pawlitz@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**EXHIBIT 2**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FRIENDLY ICE CREAM CORPORATION, *et al.*,[1] | ) Case No. 11-[_____] (___) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |

### NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES[2]

**PLEASE TAKE NOTICE** that on October [__], 2011, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed a motion [Docket No. __] (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") which seeks approval of key dates, times and procedures related to the sale of substantially all of the Debtors' assets (the "Acquired Assets") to Sundae Group Holdings II, LLC (the "Stalking Horse Purchaser") contemplated by the Asset Purchase Agreement. On [_____], 2011, the Bankruptcy Court approved the Bidding Procedures. On [December 5], 2011, the Debtors intend to seek approval of, among other things, the sale of the Acquired Assets, including the assumption and assignment of certain executory contracts and unexpired leases. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**[3]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1855 Boston Road, Wilbraham, Massachusetts 01095.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures Order, as applicable.

[3]  This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is <u>not</u> an admission by the Debtors that such contract or lease is executory or unexpired.

Debtors **may** assume and assign to the Stalking Horse Purchaser the executory contract(s) or unexpired lease(s) listed on **Exhibit A** attached hereto (each, an "Assigned Contract") to which you are a counterparty. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contract is as set forth on **Exhibit A** attached hereto (the "Cure Amount"). **If you disagree with the proposed Cure Amount, object to the proposed assignment to the Stalking Horse Purchaser of the Assigned Contract(s) or object to the Stalking Horse Purchaser' ability to provide adequate assurance of future performance with respect to any Assigned Contracts, you must file an objection with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on [November 24, 2011], (the "Objection Deadline") and serve such objection on (a) the Debtors, Friendly Ice Cream Corporation, 1855 Boston Road, Wilbraham, Massachusetts 01095, Attn: Robert K. Sawyer; (b) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Ross M. Kwasteniet; (c) counsel to the Committee; (d) counsel to the Stalking Horse Purchaser, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, Attn: David A. Gerson; (e) counsel to the DIP Agent, Paul Hastings LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308, Attn: Jesse H. Austin, III and (f) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Richard Schepacarter.**

PLEASE TAKE FURTHER NOTICE that the Debtors propose that if no objection to (a) the Cure Amount(s), (b) the proposed assignment of the Assigned Contract(s) to the Stalking Horse Purchaser or (c) adequate assurance of the Stalking Horse Purchaser' ability to perform is filed by Objection Deadline, (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) you shall be forever barred, stopped, and enjoined from asserting any additional cure amount under the Assigned Contract(s) and (iii) you will be forever barred from objecting to the assignment of the Assigned Contract(s) to the Stalking Horse Purchaser adequate assurance of future performance.

PLEASE TAKE FURTHER NOTICE that, promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder. In the event the Stalking Horse Purchaser is not the Successful Bidder at the Auction, any counterparty to a Assigned Contract shall have the right to object to the Successful Bidder's ability to perform on or before the Sale Hearing scheduled for [December 5, 2011] at [_____] (prevailing Eastern Time). To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Assigned Contract from objecting to the adequate assurance of the Successful Bidder's ability to perform.

PLEASE TAKE FURTHER NOTICE that with respect to any Assigned Contract assumed and assigned to the Successful Bidder (including the Stalking Horse Purchaser), all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Acquired Assets to the Successful Bidder (including the Stalking Horse Purchaser) or on such other terms as the parties to each such Assigned Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Assigned Contract

2

may be conditioned upon the disposition of all issues with respect to such Assigned Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, with respect to any Assigned Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Successful Bidder (including the Stalking Horse Purchaser) to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Assigned Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption of such Assigned Contract; provided, however, that the Debtors may settle any dispute regarding the amount of any Cure Amount or assignment to the Successful Bidder (including the Stalking Horse Purchaser) without any further notice to or action, order or approval of the Bankruptcy Court.

**PLEASE THAT FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Assigned Contracts. Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority or amount of any claims of a counterparty to an Assigned Contract against the Debtors that may arise under such Assigned Contract, (b) creates a postpetition contract or agreement or (c) elevates to administrative expense priority any claims of an counterparty to an Assigned Contract against the Debtors that may arise under such Assigned Contract.

Dated: October 5, 2011         **PACHULSKI STANG ZIEHL & JONES LLP**
         Wilmington, Delaware

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:       ljones@pszjlaw.com
             tcairns@pszjlaw.com
             kmakowski@pszjlaw.com

- and -

James A. Stempel (*pro hac vice* admission pending)
Ross M. Kwasteniet (*pro hac vice* admission pending)
Jeffrey D. Pawlitz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:       james.stempel@kirkland.com
             ross.kwasteniet@kirkland.com
             jeffrey.pawlitz@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

## EXHIBIT A

| [Counterparty Name] | [Contract/Lease] | Cure Amount |

## EXHIBIT 3

## Sale Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRIENDLY ICE CREAM CORPORATION, *et al.*,[1] | ) Case No. 11-[_____] (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

   1. On October [__], Friendly Ice Cream Corporation, and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed their Motion[2] for entry of an order (the "Bidding Procedures Order"), among other things, (a) approving Bidding Procedures for the sale of substantially all of the assets owned by the Debtors (the "Acquired Assets"), as described in the Asset Purchase Agreement by and between Sundae Group Holdings II, LLC (the "Stalking Horse Purchaser") and the Debtors, dated as of October [__], 2011 (the "Asset Purchase Agreement"); (b) approving the Asset Purchase Agreement and payments to the Stalking Horse Purchaser thereunder; (c) approving the form and manner of notice of the Auction on the Acquired Assets and the Sale Hearing; (d) approving procedures relating to the assumption and assignment of contracts and leases; and (e) scheduling a sale hearing (the "Sale Hearing") to consider the sale of the Acquired Assets and setting objection and bidding deadlines with respect to the Sale. The Motion additionally requests entry of an order (the "Sale Order") approving (i) the sale of the Acquired Assets free and clear of liens, claims, encumbrances and interests contemplated by the Asset Purchase Agreement; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

   2. On [_____], 2011, the United States Bankruptcy Court for the District of Delaware entered the Bidding Procedures Order [Docket No. ___]. Pursuant to the Bidding Procedures Order, the Auction for the Acquired Assets shall take place on **[December 1, 2011] at 9:00 a.m. (prevailing Eastern Time)** at the offices of counsel to the Debtors, Kirkland &

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Friendly Ice Cream Corporation (3130); Friendly's Restaurants Franchise, LLC (3693); Friendly's Realty I, LLC (2580); Friendly's Realty II, LLC (2581); and Friendly's Realty III, LLC (2583). The location of the Debtors' corporate headquarters and the Debtors' service address is: 1855 Boston Road, Wilbraham, Massachusetts 01095.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Ellis LLP, 601 Lexington Avenue, New York, New York 10022. Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as **Exhibit 1**, by no later than **[November 24, 2011] at 4:00 p.m. (Eastern Time)** (the "Bid Deadline") may participate at the auction. Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit a competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures. Parties interested in receiving information regarding the sale of the Acquired Assets should contact the Debtors' financial advisors, Duff & Phelps Securities, LLC, at 55 E. 52nd Street, Floor 31, New York, New York 10055, Attn: Joshua Benn, telephone (212) 450-2840, email joshua.benn@duffandphelps.com and 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025, Attn: Russ Belinsky, telephone (310) 445-4010, email russ.belinsky@duffandphelps.com.

3.     The Sale Hearing to consider approval of the Sale of the Acquired Assets to the Stalking Horse Purchaser or any of the Debtors' assets to a Successful Bidder or Successful Bidders (as defined in the Bidding Procedures) free and clear of all liens, claims and encumbrances will be held before the Honorable [_____], United States Bankruptcy Judge, 824 North Market Street, [___ Floor, Courtroom No. ___] Wilmington, Delaware 19801 on **[December 5, 2011] at [_____] (prevailing Eastern Time)**, or at such earlier date as counsel may be heard. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

4.     **Objections, if any, to the sale of the Acquired Assets contemplated by the Asset Purchase Agreement, or the relief requested in the Motion (including with respect to cure amounts and adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on [November 24, 2011], or such earlier date and time as the Debtors may agree and (d) be served, so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon: (1) the Debtors, Friendly Ice Cream Corporation, 1855 Boston Road, Wilbraham, Massachusetts 01095, Attn: Robert K. Sawyer; (2) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Ross M. Kwasteniet; (3) counsel to the Committee; (4) counsel to the Stalking Horse Purchaser, Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, Attn: David A. Gerson; (5) counsel to the DIP Agent, Paul Hastings LLP, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308, Attn: Jesse H. Austin, III (6) Duff & Phelps, 55 E. 52nd Street, Floor 31, New York, New York 10055, Attn: Joshua Benn and 11150 Santa Monica Boulevard, Floor 6, Los Angeles, California 90025, Attn: Russ Belinsky; and (7) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Richard Schepacarter.**

5.     In the event that the Stalking Horse Purchaser is not the Successful Bidder at the Auction, the non-Debtor party to any Assigned Contract(s) will have until the Sale Hearing to object to the Successful Bidder's ability to perform under such Assigned Contract(s).

2

6.    This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Motion, the Asset Purchase Agreement, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained at the website maintained by the Debtors' notice and claims agent at http://[_____] or by written request to counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Ross M. Kwasteniet. In addition, copies of the aforementioned pleadings may be found on the Pacer's website, http://ecf.deb.uscourts.gov.

Dated: October 5, 2011
       Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

---

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:        ljones@pszjlaw.com
              tcairns@pszjlaw.com
              kmakowski@pszjlaw.com

- and -

James A. Stempel (*pro hac vice* admission pending)
Ross M. Kwasteniet (*pro hac vice* admission pending)
Jeffrey D. Pawlitz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.stempel@kirkland.com
              ross.kwasteniet@kirkland.com
              jeffrey.pawlitz@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

## Exhibit D

### **<u>Form of Bill of Sale</u>**

See attached.

**FORM OF**

**BILL OF SALE**

      This Bill of Sale (this "<u>Bill of Sale</u>"), dated as of _____ \_\_, 2011, is made and entered into by and among Friendly Ice Cream Corporation, a Massachusetts corporation, Friendly's Restaurants Franchise, LLC, a Delaware limited liability company, Friendly's Realty I, LLC, a Delaware limited liability company, Friendly's Realty II, LLC, a Delaware limited liability company, and Friendly's Realty III, LLC, a Delaware limited liability company (collectively, "<u>Sellers</u>"), and Sundae Group Holdings II, LLC, a Delaware limited liability company ("<u>Purchaser</u>").

**R E C I T A L S**

      WHEREAS, Purchaser and Sellers are parties to that certain Asset Purchase Agreement, dated as of October \_\_, 2011 (the "<u>Purchase Agreement</u>"), pursuant to which Sellers have agreed to sell, and Purchaser has agreed to purchase, the Acquired Assets; and

      WHEREAS, pursuant to the terms of the Purchase Agreement and by this Bill of Sale, Sellers are selling, assigning, transferring and conveying all of Sellers' rights, titles and interests in, to and under the Acquired Assets.

      NOW, THEREFORE, in consideration of the foregoing and of the consideration set forth in the Purchase Agreement, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

      1.    Capitalized terms used herein and not defined shall have the meanings assigned to them in the Purchase Agreement.

      2.    The transactions contemplated by the Purchase Agreement have been approved by an order of the Bankruptcy Court as set forth in the Bankruptcy Sale Order.

      3.    In consideration of the Purchase Price, Sellers hereby sell, convey, transfer, assign and deliver to Purchaser, and Purchaser hereby purchases and acquires from Sellers, all of Sellers' rights, titles and interests in the Acquired Assets. Sellers, for themselves, their successors and assigns, irrevocably constitute and appoint Purchaser, its successors and assigns, and each of them, the true and lawful attorney of Sellers, their successors and assigns, with full power of substitution and gives and grants unto Purchaser, its successors and assigns, and each of them, full power and authority in the names of Sellers, their successors and assigns, at any time and from time to time, to demand, sue for, recover and receive any and all rights, demands, claims and causes of action of every kind and description whatsoever incident or relating to the Acquired Assets, for the purpose of fully vesting in Purchaser, its successors and assigns, all and singular, all the right, title and interest in and to the Acquired Assets. Sellers are not selling, conveying, transferring or assigning the Excluded Assets.

4.     This Bill of Sale and all of the provisions hereof will be binding from and after its execution upon Sellers and Purchaser and their respective successors and assigns.

5.     To the extent any term, condition or provision of this Bill of Sale is in any way inconsistent with or in conflict with any term, condition or provision of the Purchase Agreement, the Purchase Agreement shall govern and control.

6.     This Bill of Sale may not be amended or waived except in a writing executed by the party against which such amendment or waiver is sought to be enforced.  No course of dealing between or among any persons having any interest in this Bill of Sale will be deemed effective to modify or amend any part of this Bill of Sale or any rights or obligations of any person under or by reason of this Bill of Sale.

7.     This Bill of Sale may be executed in one or more counterparts, all of which shall constitute one and the same instrument.  Any such counterpart, to the extent delivered by means of an Electronic Delivery shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

8.     This Bill of Sale shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of Delaware (without giving effect to the principles of conflicts of Laws thereof).

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the parties hereto have executed this Bill of Sale effective as of the date first above written.

**PURCHASER:**

SUNDAE GROUP HOLDINGS II, LLC

By: _____
Name: Jared Wien
Its: Vice President

**SELLERS:**

FRIENDLY ICE CREAM CORPORATION

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S RESTAURANTS FRANCHISE, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S REALTY I, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S REALTY II, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S REALTY III, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

**[SIGNATURE PAGE TO BILL OF SALE]**

## Exhibit E

## Form of Domain Name Assignment

See attached.

# FORM OF

## DOMAIN NAME ASSIGNMENT AGREEMENT

This Domain Name Assignment Agreement (this "Assignment Agreement"), dated as of _____, 2011, is made and entered into by and among Friendly Ice Cream Corporation, a Massachusetts corporation, Friendly's Restaurants Franchise, LLC, a Delaware limited liability company, Friendly's Realty I, LLC, a Delaware limited liability company, Friendly's Realty II, LLC, a Delaware limited liability company, and Friendly's Realty III, LLC, a Delaware limited liability company (each, an "Assignor" and collectively, "Assignors"), and Sundae Group Holdings II, LLC, a Delaware limited liability company ("Assignee").

## R E C I T A L S

WHEREAS, Assignors and Assignee are parties to that certain Asset Purchase Agreement, dated as of October __, 2011 (the "Purchase Agreement"), providing for, among other things, the sale, conveyance, transfer and delivery by Assignors of all rights, titles and interests in and to Intellectual Property; and

WHEREAS, Assignors have agreed to transfer, sell and assign to Assignee all of Assignors' rights, titles and interests in and to the domain names set forth on **Schedule A** hereto (collectively, the "Domain Names").

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in the Purchase Agreement, the parties hereto hereby agree as follows:

1.      Capitalized terms used herein and not defined shall have the meanings assigned to them in the Purchase Agreement.

2.      Each Assignor hereby sells, conveys, assigns and transfers to Assignee, and Assignee hereby purchases, acquires and accepts from each such Assignor, free and clear of any and all Liens, liabilities, or other restrictions, all of the right, title and interest in and to the respective Domain Names of each Assignor.

3.      All rights and privileges in the Domain Names will be held and enjoyed by Assignee and its successors and assigns.

4.      For no additional consideration, Assignors agree to cooperate with Assignee to initiate the transfer process in relation to the Domain Names electronically from Assignors' account to Assignee's account within thirty (30) business days after the date of this Assignment Agreement. Assignors further agree to complete, execute, notarize (as necessary) and deliver at any future date any additional documents that Assignee reasonably determines are necessary to perfect Assignee's ownership of the Domain Names including, but not limited to, any transfer documents required by a domain name registrar or where electronic transfer is not possible.

5.      Each Assignor authorizes and requests the applicable registration authority to transfer the respective Domain Names from Assignors to Assignee.

6.      This Assignment Agreement will be binding from and after its execution upon Assignors and Assignee and their respective successors and assigns.

7.      This Assignment Agreement may not be amended or waived except in a writing executed by the party against which such amendment or waiver is sought to be enforced. No course of dealing between or among any persons having any interest in this Assignment Agreement will be deemed effective to modify or amend any part of this Assignment Agreement or any rights or obligations of any person under or by reason of this Assignment Agreement.

8.      This Assignment Agreement may be executed in one or more counterparts, all of which shall constitute one and the same instrument. Any such counterpart, to the extent delivered by means of an Electronic Delivery shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

9.      To the extent any term, condition, or provision of this Assignment Agreement is in any way inconsistent with or in conflict with any term, condition or provision of the Purchase Agreement, the Purchase Agreement shall govern and control.

10.     This Assignment Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of Delaware (without giving effect to the principles of conflicts of Laws thereof).

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the parties hereto have executed this Domain Name Assignment Agreement effective as of the date first above written.

**ASSIGNORS:**

FRIENDLY ICE CREAM CORPORATION

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S RESTAURANTS FRANCHISE, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S REALTY I, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S REALTY II, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

FRIENDLY'S REALTY III, LLC

By: _____
Name: Harsha V. Agadi
Title: Chief Executive Officer and President

**ASSIGNEE:**

SUNDAE GROUP HOLDINGS II, LLC

By: _____
Name: Jared Wien
Its: Vice President

**[SIGNATURE PAGE TO DOMAIN NAME ASSIGNMENT AGREEMENT]**

## SCHEDULE A

| Assignor | Domain Name |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## Exhibit F

### Form of Trademark Assignment

See attached.

**FORM OF**

**TRADEMARK ASSIGNMENT AGREEMENT**

       This Trademark Assignment Agreement (this "<u>Assignment Agreement</u>"), dated as of _____ \_\_, 2011, is made and entered into by and among Friendly Ice Cream Corporation, a Massachusetts corporation, Friendly's Restaurants Franchise, LLC, a Delaware limited liability company, Friendly's Realty I, LLC, a Delaware limited liability company, Friendly's Realty II, LLC, a Delaware limited liability company, and Friendly's Realty III, LLC, a Delaware limited liability company (each, an "<u>Assignor</u>" and collectively, "<u>Assignors</u>"), and Sundae Group Holdings II, LLC, a Delaware limited liability company ("<u>Assignee</u>").

**R E C I T A L S**

       WHEREAS, Assignors and Assignee are parties to that certain Asset Purchase Agreement, dated as of October \_\_, 2011 (the "<u>Purchase Agreement</u>"), providing for, among other things, the sale, conveyance, transfer and delivery by Assignors of all rights, titles and interests in and to Intellectual Property; and

       WHEREAS, Assignors have agreed to transfer, sell and assign to Assignee all of Assignors' rights, titles and interests in and to the marks and/or trade names set forth on **<u>Schedule A</u>** hereto, together with the goodwill of the businesses associated therewith (collectively, the "<u>Marks</u>").

       NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in the Purchase Agreement, the parties hereto hereby agree as follows:

       1.     Capitalized terms used herein and not defined shall have the meanings assigned to them in the Purchase Agreement.

       2.     Each Assignor hereby sells, conveys, assigns and transfers to Assignee, and Assignee hereby purchases, acquires and accepts from each such Assignor, free and clear of any and all Liens, liabilities, or other restrictions, all of the right, title and interest in and to the respective Marks of each Assignor.

       3.     All rights and privileges, including without limitation any Claims, demands, and the right to sue for and receive all damages from past infringements of the Marks or for unfair competition in business in connection therewith, shall be held and enjoyed by Assignee and its successors, assigns and other legal representatives.

       4.     For no additional consideration, Assignors agree to execute and deliver at any future date any additional documents that Assignee reasonably determines are required to perfect Assignee's ownership of or title to the Marks, including without limitation the execution, acknowledgment and recordation of specific assignments, oaths,

1

declarations and other documents on a country-by-country basis, to assist Assignee in obtaining, perfecting, sustaining, and/or enforcing the Marks.

5.    Each Assignor authorizes and requests the Commissioner of Patents and Trademarks of the United States, and any other official throughout the world whose duty is to register and record ownership in trademark registrations and applications for registration of trademarks, to record Assignee as the assignee and owner of any and all of each Assignor's respective rights in the Marks.

6.    This Assignment Agreement will be binding from and after its execution upon Assignors and Assignee and their respective successors and assigns.

7.    This Assignment Agreement may not be amended or waived except in a writing executed by the party against which such amendment or waiver is sought to be enforced.  No course of dealing between or among any persons having any interest in this Assignment Agreement will be deemed effective to modify or amend any part of this Assignment Agreement or any rights or obligations of any person under or by reason of this Assignment Agreement.

8.    This Assignment Agreement may be executed in one or more counterparts, all of which shall constitute one and the same instrument.  Any such counterpart, to the extent delivered by means of an Electronic Delivery shall be treated in all manner and respects as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

9.    To the extent any term, condition, or provision of this Assignment Agreement is in any way inconsistent with or in conflict with any term, condition or provision of the Purchase Agreement, the Purchase Agreement shall govern and control.

10.    This Assignment Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of Delaware (without giving effect to the principles of conflicts of Laws thereof).

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the parties hereto have executed this Trademark Assignment Agreement effective as of the date first above written.

**ASSIGNORS:**

FRIENDLY ICE CREAM CORPORATION

By: _____
Name: Harsha V. Agadi
Title:  Chief Executive Officer and President

FRIENDLY'S RESTAURANTS FRANCHISE, LLC

By: _____
Name: Harsha V. Agadi
Title:  Chief Executive Officer and President

FRIENDLY'S REALTY I, LLC

By: _____
Name: Harsha V. Agadi
Title:  Chief Executive Officer and President

FRIENDLY'S REALTY II, LLC

By: _____
Name: Harsha V. Agadi
Title:  Chief Executive Officer and President

FRIENDLY'S REALTY III, LLC

By: _____
Name: Harsha V. Agadi
Title:  Chief Executive Officer and President

**ASSIGNEE:**

SUNDAE GROUP HOLDINGS II, LLC

By: _____
Name: Jared Wien
Its:  Vice President

**[SIGNATURE PAGE TO TRADEMARK ASSIGNMENT AGREEMENT]**

## SCHEDULE A

| Assignor | Mark Name | Country | Status | Goods/Services |
|----------|-----------|---------|--------|----------------|
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |
|          |           |         |        |                |