# EXHIBIT B

## DIP Facility Agreement

FILING
VERSION

$71,378,664


**SENIOR SECURED, SUPER-PRIORITY**
**DEBTOR-IN-POSSESSION CREDIT AGREEMENT,**


dated as of October [___], 2011


among


FRIENDLY ICE CREAM CORPORATION,


as the Borrower,


VARIOUS LENDERS FROM TIME TO TIME

PARTIES HERETO,

as the Lenders,

and

WELLS FARGO CAPITAL FINANCE, INC.,

as Administrative Agent for the Lenders,

# TABLE OF CONTENTS

1.     DEFINITIONS AND RULES OF INTERPRETATION ................................................... 2
    1.1    Definitions ....................................................................................... 2
    1.2    Rules of Interpretation .................................................................. 25

2.     THE REVOLVING CREDIT FACILITY .................................................................. 26
    2.1    Commitment to Lend .................................................................... 26
    2.2    Commitment Fee ........................................................................... 27
    2.3    Reduction of Commitments .......................................................... 27
    2.4    The Revolving Credit Notes ........................................................ 27
    2.5    Interest on Revolving Credit Loans ............................................. 28
    2.6    Requests for Revolving Credit Loans ......................................... 28
    2.7    Conversion Options ...................................................................... 29
    2.8    Funds for Revolving Credit Loan ................................................ 30
    2.9    Settlements ................................................................................... 31
    2.10   Repayments of Revolving Credit Loans From Concentration Account
                 After Event of Default ................................................................. 32
    2.11   Defaulting Lenders ....................................................................... 32
    2.12   Super-Priority Nature of Obligations and Lenders' Liens ................... 33
    2.13   No Discharge; Survival of Claims ............................................... 34
    2.14   Waiver of any Priming Rights .................................................... 34

3.     REPAYMENT OF THE REVOLVING CREDIT LOANS ......................................... 35
    3.1    Maturity ........................................................................................ 35
    3.2    Mandatory Repayments of Revolving Credit Loans .................... 35
    3.3    Optional Repayments of Revolving Credit Loans ....................... 36
    3.4    Application of Payments .............................................................. 37

4.     LETTERS OF CREDIT ........................................................................................ 37
    4.1    Letters of Credit ........................................................................... 37
    4.2    Reliance by Administrative Agent .............................................. 40
    4.3    Letter of Credit Fees ................................................................... 41
    4.4    Existing Letters of Credit ............................................................ 41

5.     CERTAIN GENERAL PROVISIONS .................................................................... 41
    5.1    Administrative Agent's Fee ......................................................... 41
    5.2    Funds for Payments ..................................................................... 41
    5.3    Computations ................................................................................ 43
    5.4    Inability to Determine Eurodollar Rate ...................................... 43
    5.5    Illegality ....................................................................................... 44
    5.6    Additional Costs, etc .................................................................... 44
    5.7    Capital Adequacy ......................................................................... 45

| | | | |
|---|---|---|---|
| | 5.8 | Certificate | 46 |
| | 5.9 | Indemnity | 46 |
| | 5.10 | Interest After Default | 46 |
| | 5.11 | Replacement of Lenders | 47 |
| | 5.12 | Mitigation | 47 |
| 6. | | COLLATERAL SECURITY AND GUARANTIES | 47 |
| | 6.1 | Security of Borrower | 47 |
| | 6.2 | Guaranties and Security of the Parent and the Restricted Subsidiaries | 48 |
| | 6.3 | Sun Guaranty | 48 |
| 7. | | REPRESENTATIONS AND WARRANTIES | 48 |
| | 7.1 | Corporate Authority | 48 |
| | 7.2 | Governmental Approvals | 49 |
| | 7.3 | Title to Properties; Leases | 49 |
| | 7.4 | Financial Statements | 49 |
| | 7.5 | No Material Adverse Changes, etc | 49 |
| | 7.6 | Franchises, Patents, Copyrights, etc | 50 |
| | 7.7 | Litigation | 50 |
| | 7.8 | No Materially Adverse Contracts, etc | 50 |
| | 7.9 | Compliance with Other Instruments, Laws, etc | 50 |
| | 7.10 | Tax Status | 50 |
| | 7.11 | No Event of Default | 50 |
| | 7.12 | Investment Company Act | 51 |
| | 7.13 | Absence of Financing Statements, etc | 51 |
| | 7.14 | Perfection of Security Interest | 51 |
| | 7.15 | Certain Transactions | 51 |
| | 7.16 | Employee Benefit Plans | 51 |
| | 7.17 | Use of Proceeds | 52 |
| | 7.18 | Environmental Compliance | 53 |
| | 7.19 | Subsidiaries, etc | 55 |
| | 7.20 | Disclosure | 55 |
| | 7.21 | Bank Accounts | 55 |
| | 7.22 | Intentionally Omitted | 55 |
| | 7.23 | The Parent as a Holding Company; SPVs | 55 |
| | 7.24 | Patriot Act and OFAC | 56 |
| | 7.25 | Reorganization Matters | 56 |
| 8. | | AFFIRMATIVE COVENANTS | 57 |
| | 8.1 | Punctual Payment | 57 |
| | 8.2 | Maintenance of Office | 57 |
| | 8.3 | Records and Accounts | 57 |

| | | |
|---|---|---|
| 8.4 | Financial Statements, Certificates and Information | 58 |
| 8.5 | Notices | 60 |
| 8.6 | Legal Existence; Maintenance of Properties | 61 |
| 8.7 | Insurance | 61 |
| 8.8 | Taxes | 62 |
| 8.9 | Inspection of Properties and Books, etc. | 62 |
| 8.10 | Compliance with Laws, Contracts, Licenses, and Permits | 63 |
| 8.11 | Employee Benefit Plans | 64 |
| 8.12 | Use of Proceeds | 64 |
| 8.13 | Future Guarantors, Mortgages | 64 |
| 8.14 | Bank Accounts | 64 |
| 8.15 | Good Standing Certificates | 65 |
| 8.16 | Further Assurances | 65 |
| 8.17 | Franchise Matters | 66 |
| 8.18 | Meetings with Lenders | 66 |

**9. CERTAIN NEGATIVE COVENANTS** ............... 66

| | | |
|---|---|---|
| 9.1 | Restrictions on Indebtedness | 66 |
| 9.2 | Restrictions on Liens | 68 |
| 9.3 | Restrictions on Investments | 72 |
| 9.4 | Restricted Payments | 73 |
| 9.5 | Merger, Consolidation and Disposition of Assets | 73 |
| 9.6 | Sale and Leaseback | 75 |
| 9.7 | Compliance with Environmental Laws | 75 |
| 9.8 | Prepayments; Modification of Certain Documents | 75 |
| 9.9 | Employee Benefit Plans | 76 |
| 9.10 | Business Activities | 77 |
| 9.11 | Fiscal Year | 77 |
| 9.12 | Transactions with Affiliates | 77 |
| 9.13 | Bank Accounts | 77 |
| 9.14 | Marketing & Advertising Fund | 77 |
| 9.15 | Chapter 11 Claims | 78 |
| 9.16 | Critical Vendor and Other Payments | 78 |
| 9.17 | Cancellation of Indebtedness | 78 |
| 9.18 | Reclamation Claims | 78 |
| 9.19 | Pre-Petition Indebtedness | 78 |

**10. FINANCIAL COVENANTS** ............... 79

**11. CLOSING CONDITIONS** ............... 79

| | | |
|---|---|---|
| 11.1 | Delivery of Documents | 79 |
| 11.2 | Administrative Agent's Fee Letter | 79 |
| 11.3 | Budgets | 79 |

|       | 11.4  | Chapter 11 Case Administration | 79 |
|       | 11.5  | First Day Orders and Motions | 79 |
|       | 11.6  | Validity of Liens | 79 |
|       | 11.7  | Corporate Documents | 79 |
|       | 11.8  | Opinion of Counsel | 80 |
|       | 11.9  | Amendment to Guaranty | 80 |
|       | 11.10 | Officer's Certificate | 80 |
|       | 11.11 | Patriot Act and related Searches | 80 |
|       | 11.12 | Payment of Fees, Etc. | 80 |
|       | 11.13 | Miscellaneous | 80 |
| 12.   |       | CONDITIONS TO ALL BORROWINGS | 80 |
|       | 12.1  | Representations True; No Event of Default | 80 |
|       | 12.2  | No Legal Impediment | 81 |
|       | 12.3  | Proceedings and Documents | 81 |
|       | 12.4  | Bankruptcy Matters | 81 |
|       | 12.5  | Budget | 81 |
|       | 12.6  | Availability | 81 |
|       | 12.7  | DIP Participation Matters | 82 |
| 13.   |       | EVENTS OF DEFAULT; ACCELERATION; ETC | 82 |
|       | 13.1  | Events of Default and Acceleration | 82 |
|       | 13.2  | Termination of Commitments | 88 |
|       | 13.3  | Remedies | 88 |
|       | 13.4  | Distribution of Payments and Collateral Proceeds | 88 |
| 14.   |       | THE ADMINISTRATIVE AGENT | 90 |
|       | 14.1  | Authorization | 90 |
|       | 14.2  | Employees and Administrative Agents | 90 |
|       | 14.3  | No Liability | 91 |
|       | 14.4  | No Representations | 91 |
|       | 14.5  | Payments | 91 |
|       | 14.6  | Holders of Revolving Credit Notes | 92 |
|       | 14.7  | Indemnity | 92 |
|       | 14.8  | Administrative Agent as Lender | 92 |
|       | 14.9  | Resignation | 92 |
|       | 14.10 | Notification of Defaults and Events of Default | 93 |
|       | 14.11 | Duties in the Case of Enforcement | 93 |
|       | 14.12 | Release of Collateral | 93 |
|       | 14.13 | Actions in Concert | 94 |
|       | 14.14 | Enforcement | 94 |
| 15.   |       | ASSIGNMENT AND PARTICIPATION | 94 |

15.1    Conditions to Assignment by Lenders .................................................. 94
15.2    Certain Representations and Warranties; Limitations; Covenants ...................... 95
15.3    Register ........................................................................... 96
15.4    New Revolving Credit Notes ......................................................... 96
15.5    Participations ..................................................................... 97
15.6    Assignee or Participant Affiliated with the Borrower ............................... 97
15.7    Miscellaneous Assignment Provisions ................................................ 98
15.8    Assignment by Borrower ............................................................. 98

16.    PROVISIONS OF GENERAL APPLICATIONS ...................................................... 98
16.1    Setoff ............................................................................. 98
16.2    Expenses ........................................................................... 99
16.3    Indemnification ................................................................... 100
16.4    Treatment of Certain Confidential Information ..................................... 101
16.5    Survival of Covenants, etc ........................................................ 102
16.6    Notices ........................................................................... 102
16.7    Governing Law; Etc ................................................................ 103
16.8    Headings .......................................................................... 103
16.9    Counterparts ...................................................................... 103
16.10   Entire Agreement, etc ............................................................. 104
16.11   Waiver of Jury Trial .............................................................. 104
16.12   Consents, Amendments, Waivers, etc ................................................ 104
16.13   Severability ...................................................................... 106
16.14   Bank Product Providers ............................................................ 106
16.15   Patriot Act ....................................................................... 106
16.16   Pre-Petition Loan Documents ....................................................... 107
16.17   Parties including the Trustees; Bankruptcy Court Proceedings ...................... 107

## Exhibits

| | |
|---|---|
| Exhibit A | Form of Assignment and Acceptance |
| Exhibit B | Form of Revolving Credit Note |
| Exhibit C | Form of Loan and Letter of Credit Request |
| Exhibit D | Form of Compliance Certificate |
| Exhibit E | Form of 13-Week Budget |
| Exhibit F | Form of Variance Report |

## Schedules

| | |
|---|---|
| Schedule A | Administrative Agent's Account |
| Schedule E | Existing Letters of Credit |
| Schedule F | First Day Orders |
| Schedule M | Milestones |
| Schedule P | Permitted Variance |
| Schedule 1(a) | Lenders and Commitments |
| Schedule 1(e) | Non-Encumbered Properties |
| Schedule 4.1 | Letter of Credit |
| Schedule 7.3 | Title to Properties; Leases |
| Schedule 7.6 | Franchises, Patents, Trademarks, Copyrights, Etc. |
| Schedule 7.7 | Litigation |
| Schedule 7.14 | Perfection of Security Interest |
| Schedule 7.16 | ERISA Matters |
| Schedule 7.18 | Environmental Compliance |
| Schedule 7.19(a) | Restricted Subsidiaries |
| Schedule 7.19(b) | Unrestricted Subsidiaries |
| Schedule 7.19(c) | Joint Ventures: Partnerships |
| Schedule 7.19(d) | Jurisdiction of Incorporation/ Formation and Principal Place of Business |
| Schedule 7.21 | Bank Accounts |
| Schedule 7.23 | SPVs |
| Schedule 9.1 | Existing Indebtedness |
| Schedule 9.2 | Existing Liens |
| Schedule 9.2.2 | Restrictions on Negative Pledges |
| Schedule 9.3 | Existing Investments |

# SENIOR SECURED, SUPER-PRIORITY
# DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of October [__], 2011, is among FRIENDLY ICE CREAM CORPORATION, a Massachusetts corporation (the "Borrower"), the various lenders from time to time parties hereto as Lenders, and WELLS FARGO CAPITAL FINANCE, INC. (formerly known as Wells Fargo Foothill, Inc.), a California corporation ("WFCF"), as Administrative Agent for the Lenders.

## RECITALS

WHEREAS, on October [___], 2011 (the "Petition Date"), the Borrower and certain of the Guarantors (collectively, the "Debtors" and each, individually, a "Debtor") commenced Chapter 11 Case Nos. [_____] through [_____], as administratively consolidated as Chapter 11 Case No. [_____] (each, a "Chapter 11 Case" and, collectively, the "Chapter 11 Cases") by filing separate voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Debtors continue to operate their respective businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, prior to the Petition Date, the Prior Lenders provided financing to the Borrower pursuant to that certain Second Amended and Restated Revolving Credit Agreement, dated as of June 5, 2008, among the Borrower, as borrower, the Prior Agent and the Prior Lenders (as amended, restated, supplemented or otherwise modified on or prior to the Petition Date, the "Pre-Petition Credit Agreement");

WHEREAS, the Borrower has requested that the Lenders provide a senior secured, super-priority debtor-in-possession credit facility to the Borrower in an aggregate principal amount of $71,378,664, composed of a $56,500,000 maximum aggregate revolving credit commitment, with an $8,000,000 letter of credit sublimit for New Letters of Credit, and an additional $14,878,664 maximum aggregate letter of credit commitment with respect to the Rollover Letters of Credit, to fund the working capital requirements and other financing needs of the Borrower and its Subsidiaries during the pendency of the Chapter 11 Cases and to be used in accordance with §7.17; and

WHEREAS, the Lender Group is willing to make such loans and other extensions of credit to the Borrower upon the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the premises and the agreements, provisions and covenants herein contained, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, and subject to the terms and conditions hereof, the Borrower, the Lenders, and the Administrative Agent hereby agree as follows:

# 1. DEFINITIONS AND RULES OF INTERPRETATION.

**1.1  Definitions.** The following terms shall have the meanings set forth in this §1 or elsewhere in the provisions of this Credit Agreement referred to below:

13-Week Budget. A 13-week cash flow forecast for the Borrower substantially in the form attached hereto as Exhibit E or such other form as shall be reasonably acceptable to the Administrative Agent. As used herein, "13-Week Budget" shall initially refer to the "**[13-Week Budget/DIP Budget]**" delivered by the Borrower to the Administrative Agent and the Lenders on the Petition Date and, thereafter, the most recent 13-Week Budget delivered by the Borrower to the Administrative Agent in accordance with §8.4(f).

363 Sale. A sale of all or substantially all of the assets of the Borrower pursuant to Section 363 of the Bankruptcy Code.

ACH Transactions. Any cash management or related services (including the Automated Clearing House processing of electronic fund transfers through the direct Federal Reserve Fedline system) provided by a Bank Product Provider for the account of the Borrower or its Subsidiaries.

Administrative Agent. Wells Fargo Capital Finance, Inc. (formerly known as Wells Fargo Foothill, Inc.), acting as administrative agent for the Lenders; and each other Person appointed as the successor Administrative Agent in accordance with §14.9.

Administrative Agent's Account. The Deposit Account of Administrative Agent identified on Schedule A.

Administrative Agent's Fee Letter. The fee letter, dated as of the Effective Date, between the Borrower and the Administrative Agent.

Administrative Agent's Office. The Administrative Agent's office located at 2450 Colorado Avenue, Suite 3000 West, Santa Monica, California 90404, or at such other location as the Administrative Agent may designate from time to time.

Administrative Agent's Special Counsel. Paul Hastings LLP or such other counsel as may be approved by the Administrative Agent.

Advisors. Outside legal counsel (including local counsel), financial analysts, financial advisors, investment bankers, auditors, accountants, consultants, appraisers and other advisors of the Administrative Agent (including Administrative Agent's Special Counsel).

Affiliate. As to any Person, another Person which, directly or indirectly, controls, is controlled by or is under common control with such Person. "Control" of the Borrower means the power, directly or indirectly, (a) to vote ten percent (10%) or more of the Capital Stock (on a fully diluted basis) of the Borrower having ordinary voting power for the election of directors, managing members or general partners (as applicable); or (b) to direct or cause the direction of the management and policies of the Borrower (whether by contract or otherwise).

-2-

**Aggregate Letter of Credit Usage.** As of any date of determination, the aggregate undrawn amount of all outstanding Letters of Credit.

**Agency Account Agreement.** See §8.14.

**Applicable Amount.** The result of (a) $21,500,000 minus (b) the aggregate principal amount of the revolving credit loans outstanding under the Pre-Petition Credit Agreement as of any date of determination.

**Applicable Pension Legislation.** At any time, any pension or retirement benefits legislation (be it national, federal, provincial, territorial or otherwise) then applicable to the Borrower or any of its Subsidiaries.

**Asset Purchase Agreement.** That certain Asset Purchase Agreement, dated on or about the Effective Date, by and among DIP Participant, the Borrower and the other sellers party thereto.

**Asset Sale.** Any one or series of related transactions in which the Parent, the Borrower or any of the Restricted Subsidiaries of the Borrower conveys, sells, leases, licenses or otherwise disposes of (other than to the Borrower or any Restricted Subsidiary of the Borrower), directly or indirectly, any of its properties, businesses or assets (including the sale or issuance of capital stock of any Restricted Subsidiary other than to the Borrower or any Restricted Subsidiary of the Borrower) whether owned on the Effective Date or thereafter acquired.

**Assignment and Acceptance.** An assignment and acceptance substantially in the form of Exhibit A hereto.

**Authorized Person.** Any officer or employee of the Borrower.

**Availability.** As of any date of determination, the amount that the Borrower is entitled to borrow as Revolving Credit Loans under §2.1 (after giving effect to all then outstanding Revolving Credit Loans), subject to any limitations contained in the Financing Orders.

**Avoidance Actions.** Any and all claims or causes of action arising under Chapter 5 (other than Section 506(c)) or Section 724(a) of the Bankruptcy Code to avoid transfers, preserve or transfer liens or otherwise recover property of the estate and the proceeds thereof and property received thereby whether by judgment, settlement or otherwise. "Avoidance Actions" do not include claims or causes of action pursuant to Section 549 of the Bankruptcy Code and the proceeds thereof, to the extent the transfer avoided was of an asset otherwise constituting Collateral (as defined in the Pre-Petition Credit Agreement) or Collateral.

**Balance Sheet Date.** December 31, 2010.

**Bank Product.** Any financial accommodation extended to the Borrower or its Subsidiaries by a Bank Product Provider (other than pursuant to this Credit Agreement) including: (a) credit cards, (b) credit card processing services, (c) debit cards, (d) purchase

- 3 -

cards, (e) ACH Transactions, (f) cash management, including controlled disbursement, accounts or services, or (g) transactions under Hedge Agreements.

**Bank Product Agreements.** Those agreements entered into from time to time by the Borrower or its Subsidiaries with a Bank Product Provider in connection with the obtaining of any of the Bank Products.

**Bank Product Obligations.** (a) All obligations, liabilities, reimbursement obligations, fees, or expenses owing by the Borrower or its Subsidiaries to any Bank Product Provider pursuant to or evidenced by a Bank Product Agreement and irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and (b) all amounts that the Borrower or its Subsidiaries are obligated to reimburse to Administrative Agent or any member of the Lender Group as a result of Administrative Agent or such member of the Lender Group purchasing participations from, or executing guarantees or indemnities or reimbursement obligations to, a Bank Product Provider with respect to the Bank Products provided by such Bank Product Provider to the Borrower or its Subsidiaries.

**Bank Product Provider.** WFCF or any of its Affiliates.

**Bank Product Reserve.** As of any date of determination, the amount of reserves that Administrative Agent has established in its Permitted Discretion (based upon the Bank Product Providers' reasonable determination of the credit exposure of the Borrower and its Subsidiaries in respect of Bank Products) in respect of Bank Products then provided or outstanding.

**Bankruptcy Code.** Title 11 of the United States Code, as in effect from time to time.

**Bankruptcy Court.** As defined in the recitals hereto.

**Base Eurodollar Rate.** The greater of (a) the rate per annum, determined by the Administrative Agent in accordance with its customary procedures, and utilizing such electronic or other quotation sources as it considers appropriate, to be the rate at which Dollar deposits (for delivery on the first day of the requested Interest Period) are offered to major banks in the London interbank market 2 Business Days prior to the commencement of the requested Interest Period, for a term and in an amount comparable to the Interest Period and the amount of the Eurodollar Rate Loan requested (whether as an initial Eurodollar Rate Loan or as a continuation of a Eurodollar Rate Loan or as a conversion of a Base Rate Loan to a Eurodollar Rate Loan) by the Borrower in accordance with this Credit Agreement, which determination shall be conclusive in the absence of manifest error, and (b) 1.00 percent per annum.

**Base Rate.** The greatest of (a) the Federal Funds Rate plus ½%, (b) the rate of interest announced, from time to time, within Wells Fargo at its principal office in San Francisco as its "prime rate", with the understanding that the "prime rate" is one of Wells Fargo's base rates (not necessarily the lowest of such rates) and serves as the basis upon which effective rates of interest are calculated for those loans making reference thereto and is evidenced by the recording thereof after its announcement in such internal publications as Wells Fargo may

-4-

designate, (c) the Eurodollar Rate for a month period, which rate shall be determined on a daily basis, and (d) 3.25 percent per annum.

Base Rate Loans. Revolving Credit Loans bearing interest calculated by reference to the Base Rate.

Board of Directors. The board of directors (or comparable managers) of the Parent or any committee thereof duly authorized to act on behalf of the board of directors (or comparable managers).

Borrower. As defined in the preamble hereto.

Borrower Stock Pledge Agreement. The Stock Pledge Agreement among the Borrower and the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent.

Business Day. Any day on which banking institutions in California are open for the transaction of banking business and, in the case of Eurodollar Rate Loans, also a day which is a Eurodollar Business Day.

Capital Assets. Fixed assets, both tangible (such as land, buildings, fixtures, machinery and equipment) and intangible (such as patents, copyrights, trademarks, franchises and good will); provided that Capital Assets shall not include any item customarily charged directly to expense or depreciated over a useful life of twelve (12) months or less in accordance with GAAP.

Capital Expenditures. Amounts paid or Indebtedness incurred by the Parent or any of its Subsidiaries (excluding expenditures made in connection with the replacement, substitution or restoration of assets to the extent financed from insurance proceeds (or other similar recoveries) paid on account of the loss of or damage to the assets being replaced or restored or with awards of compensation arising from the taking by eminent domain or condemnation of the assets being replaced) in connection with (a) the purchase or lease by the Parent or any of its Subsidiaries of Capital Assets that would be required to be capitalized and shown on the balance sheet of such Person in accordance with GAAP, or (b) the lease of any assets by the Parent or any of its Subsidiaries as lessee under any Synthetic Lease to the extent that such assets would have been Capital Assets had the Synthetic Lease been treated for accounting purposes as a Capitalized Lease.

Capital Stock. Any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent membership or ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing.

Capitalized Leases. Leases under which the Parent or any of its Subsidiaries is the lessee or obligor, the discounted future rental payment obligations under which are required to be capitalized on the balance sheet of the lessee or obligor in accordance with GAAP; provided that the leases executed in connection with the Sale-Leaseback Transaction shall be deemed not to be Capitalized Leases hereunder.

**Carve-Out.** The Carve-Out (as such term is defined (i) prior to the entry of the Final Order, in the Interim Order and (ii) upon and after entry of the Final Order, in the Final Order).

**Carve-Out Reserve.** As of any date of determination, a reserve in an amount equal to the Carve-Out.

**Cash Equivalents.** As to the Parent and its Subsidiaries, (a) securities issued or directly and fully guaranteed or insured by the United States of America and having a maturity of not more than one (1) year from the date of acquisition; (b) certificates of deposit, time deposits and eurodollar time deposits with maturities of one (1) year or less from the date of acquisition, bankers' acceptances with maturities not exceeding one (1) year and overnight bank deposits, in each case, (i) with any Lenders or (ii) with any domestic commercial bank organized under the laws of the United States of America or any state thereof or a foreign subsidiary of such bank, in each case having a rating of not less than A or its equivalent by S&P or any successor and having capital and surplus in excess of $500,000,000; (c) repurchase obligations with a term of not more than thirty (30) days for underlying securities of the types described in clauses (a) and (b) above which (i) are secured by a fully perfected security interest in any obligation of the type described in clause (a) hereof, and (ii) have a market value at the time such repurchase agreement is entered into of not less than 100% of the repurchase obligation of such commercial banking institution thereunder; (d) any commercial paper or finance company paper issued by (i) any Lender or any holding company controlling any Lender or (ii) any other Person that is rated not less than "P-1" or "A-1" or their equivalents by Moody's or S&P or their successors; or (e) mutual funds registered under Rule 2a-7 of the Investment Company Act of 1940 investing only in assets described in clauses (a) through (d) of this definition.

**Casualty Event.** With respect to any property (including any interest in property) of the Parent, the Borrower or any of the Restricted Subsidiaries of the Borrower, any loss of, damage to, or condemnation or other taking of, such property for which the Parent, the Borrower or such Restricted Subsidiary receives insurance proceeds, proceeds of a condemnation award or other compensation.

**CERCLA.** See §7.18(a).

**Change of Control.** (a) Permitted Holders fail to own and control, directly or indirectly, 51%, or more, of the Capital Stock of the Parent having the right to vote for the election of members of the Board of Directors, or (b) the Parent fails to own and control, directly, 100% of the Capital Stock of the Borrower; provided, however, that no Change of Control shall result from a plan of reorganization confirmed by an order of the Bankruptcy Court in any Chapter 11 Case that is approved by the Agent and the Required Lenders.

**Code.** The Internal Revenue Code of 1986, as amended.

**Collateral.** All of the property, rights, and interests of the Parent, the Borrower and Restricted Subsidiaries of the Borrower that are or are intended to be subject to the Liens created by the Security Documents, the Financing Orders or any other order of the Bankruptcy

Court in the Chapter 11 Cases; provided, however, that "Collateral" shall not include Avoidance Actions, or the proceeds thereof.

Committee. The official committee of unsecured creditors formed in the Chapter 11 Cases.

Commitment. With respect to each Lender, the amount set forth on Schedule 1(a) hereto or in the applicable Assignment and Acceptance, in each case as the amount of such Lender's commitment to (i) make Revolving Credit Loans to the Borrower and (ii) to participate in the issuance, extension and renewal of Letters of Credit for the account of the Borrower under the Letter of Credit Sublimit, as the same may be reduced from time to time; or if such commitment is terminated pursuant to the provisions hereof, zero.

Commitment Fee. See §2.2.

Commitment Percentage. With respect to each Lender, the percentage set forth on Schedule 1(a) hereto or in the applicable Assignment and Acceptance, in each case as such Lender's percentage of the aggregate Commitments of all of the Lenders.

Compliance Certificate. A certificate substantially in the form of Exhibit D delivered by the principal financial or accounting officer of the Borrower and setting forth in reasonable detail computations evidencing compliance with the covenants contained in §10 and (if applicable) reconciliations to reflect changes in GAAP since the Balance Sheet Date.

Concentration Account. See §8.14.

Concentration Account Agreement. See §8.14.

Consolidated or consolidated. With reference to any term defined herein, shall mean that term as applied to the accounts of the Parent and its Subsidiaries, consolidated in accordance with GAAP.

Control Agreement. A control agreement, in form and substance satisfactory to Administrative Agent, executed and delivered by the Borrower or one of its Subsidiaries, the Administrative Agent, and the applicable bank or securities intermediary.

Conversion Request. A notice given by the Borrower to the Administrative Agent of the Borrower's election to convert or continue a Loan in accordance with §2.7.

Copyright Mortgages. The several Memorandums of Grants of Security Interest in Copyrights made by the Borrower and its Restricted Subsidiaries in favor of the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent.

Credit Agreement. This Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (as amended, restated, amended and restated, modified or supplemented from time to time) including the Schedules and Exhibits hereto.

Credit Extension. shall mean, as the context may require, (i) the making of a Loan or (ii) the issuance of any Letter of Credit, or the amendment, extension or renewal of any existing Letter of Credit, by the Issuing Lender; provided that "Credit Extensions" shall not include conversions and continuations of outstanding Loans.

Daily Balance. As of any date of determination and with respect to any Obligation, the amount of such Obligation (including without limitation the aggregate amount of Obligations consisting of contingent reimbursement obligations in respect of Letters of Credit) owed at the end of such day.

Debt Issuance. The sale or issuance by the Parent, the Borrower or any of the Restricted Subsidiaries of the Borrower of any Indebtedness permitted by this Credit Agreement.

Debtors. As defined in the recitals hereto.

Default. Any Event of Default or any condition, occurrence or event which, after notice or lapse of time or both, would constitute an Event of Default.

Defaulting Lender. Any Lender that (a) has failed to fund any amounts required to be funded by it under this Credit Agreement on the date that it is required to do so under this Credit Agreement within 1 Business Day of the date that it is required to do so hereunder (including the failure to make available to the Administrative Agent amounts required pursuant to a Settlement or to make a required payment in connection with an L/C Disbursement), (b) has notified the Borrower, the Administrative Agent, or any Lender in writing that it does not intend to comply with all or any portion of its funding obligations under this Credit Agreement, (c) has made a public statement to the effect that it does not intend to comply with its funding obligations under this Credit Agreement or under other agreements generally (as reasonably determined by the Administrative Agent) under which it has committed to extend credit, (d) has failed, within 1 Business Day after written request by the Administrative Agent, to confirm that it will comply with the terms of this Credit Agreement relating to its obligations to fund any amounts required to be funded by it under this Credit Agreement, (e) has otherwise failed to pay over to the Administrative Agent or any other Lender any other amount required to be paid by it under this Credit Agreement within 1 Business Day of the date that it is required to do so under the Agreement, unless the subject of a good faith dispute, or (f) (i) becomes or is insolvent or has a parent company that has become or is insolvent or (ii) becomes the subject of a bankruptcy or insolvency proceeding, or has had a receiver, conservator, trustee, or custodian or appointed for it, or has taken any action in furtherance of, or indicating its consent to, approval of or acquiescence in any such proceeding or appointment or has a parent company that has become the subject of a bankruptcy or insolvency proceeding, or has had a receiver, conservator, trustee, or custodian appointed for it, or has taken any action in furtherance of, or indicating its consent to, approval of or acquiescence in any such proceeding or appointment.

Defaulting Lender Rate. (a) For the first 3 days from and after the date the relevant payment is due, the Base Rate, and (b) thereafter, the interest rate then applicable to Revolving Credit Loans that are Base Rate Loans.

**Deferred Compensation.**  Payments of salary and compensation by the Borrower in connection with the Borrower's deferred compensation plan.

**Deposit Account.**  Any deposit account (as that term is defined in the Uniform Commercial Code, as in effect from time to time).

**DIP Participant.**  Sundae Group Holdings II, LLC.

**DIP Participation.**  The Participation Agreement, dated as of the Effective Date, by and among DIP Participant and the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent.

**DIP Participation Commitment Letter.**  That certain commitment letter, dated as of the Effective Date, by and among Sun Guarantor, DIP Participant and the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent, in respect of DIP Participant's obligations under the DIP Participation.

**Distribution.**  The declaration or payment of any dividend on or in respect of any shares of any class of Capital Stock of the Borrower, other than dividends payable solely in shares of common stock of the Borrower; the purchase, redemption, defeasance, retirement or other acquisition of any shares of any class of Capital Stock of the Borrower, directly or indirectly through a Subsidiary of the Borrower or otherwise (including the setting apart of assets for a sinking or other analogous fund to be used for such purpose); the return of capital by the Borrower to its shareholders as such; or any other distribution on or in respect of any shares of any class of Capital Stock of the Borrower.

**Dollars or $.**  Dollars in lawful currency of the United States of America.

**Domestic Lending Office.**  Initially, the office of each Lender designated as such in Schedule l(a) hereto; thereafter, such other office of such Lender, if any, located within the United States that will be making or maintaining Base Rate Loans.

**Drawdown Date.**  The date on which any Revolving Credit Loan is made or is to be made, and the date on which any Revolving Credit Loan is converted or continued in accordance with §2.7.

**Effective Date.**  The first date on which the conditions set forth in §11 have been satisfied and any Revolving Credit Loans are to be made or any Letter of Credit is to be issued, in each case hereunder after the date hereof.

**Employee Benefit Plan.**  Any employee benefit plan within the meaning of §3(3) of ERISA maintained or contributed to by the Borrower or any ERISA Affiliate, other than a Guaranteed Pension Plan or a Multiemployer Plan.

**Environmental Laws.**  See §7.18(a).

**Equity Issuance.**  The sale or issuance by the Parent, the Borrower, or any of the Restricted Subsidiaries of the Borrower of any of its Capital Stock (other than (x) the sale or

issuance of any Capital Stock by (i) the Borrower to any Restricted Subsidiary or (ii) any Restricted Subsidiary to the Borrower or another Restricted Subsidiary or (y) the sale or issuance of any Capital Stock by the Borrower or any of its Restricted Subsidiaries to any officers, directors or employees in connection with any benefit or compensation plan).

ERISA. The Employee Retirement Income Security Act of 1974 as amended, and any successor statute of similar import, and regulations thereunder, in each case, as in effect from time to time. References to sections of ERISA shall be construed also to refer to any successor sections.

ERISA Affiliate. Any Person which is treated as a single employer with the Borrower under §414 of the Code.

ERISA Reportable Event. A reportable event with respect to a Guaranteed Pension Plan within the meaning of §4043 of ERISA and the regulations promulgated thereunder.

Eurodollar Business Day. Any day on which commercial banks are open for international business (including dealings in Dollar deposits) in London or such other eurodollar interbank market as may be selected by the Administrative Agent in its sole discretion acting in good faith.

Eurodollar Lending Office. Initially, the office of each Lender designated as such in Schedule 1(a) hereto; thereafter, such other office of such Lender, if any, that shall be making or maintaining Eurodollar Rate Loans.

Eurodollar Rate. For each Interest Period for each Eurodollar Rate Loan, the rate per annum determined by the Administrative Agent by *dividing* (a) the Base Eurodollar Rate for such Interest Period, by (b) 100% *minus* the Reserve Percentage. The Eurodollar Rate shall be adjusted on and as of the effective day of any change in the Reserve Percentage.

Eurodollar Rate Loans. Revolving Credit Loans bearing interest calculated by reference to the Eurodollar Rate.

Event of Default. See §13.1.

Excluded Taxes. See §5.2.2.

Existing Letters of Credit. Those letters of credit set forth on Schedule E.

Extraordinary Receipts. Any payments received by Parent or any of its Subsidiaries not in the ordinary course of business (and not consisting of proceeds described in §3.2(b)(i) through (iv)) consisting of (a) proceeds of judgments, proceeds of settlements or other consideration of any kind in connection with any cause of action, (b) indemnity payments (other than to the extent such indemnity payments are immediately payable to a Person that is not an Affiliate of Parent or any of its Subsidiaries), (c) any purchase price adjustment (other than a working capital adjustment) received in connection with any purchase agreement and (d) any tax refunds.

- 10 -

Federal Funds Rate. For any period, a fluctuating interest rate per annum equal to, for each day during such period, the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers, as published on the next succeeding Business Day by the Federal Reserve Bank of New York, or, if such rate is not so published for any day which is a Business Day, the average of the quotations for such day on such transactions received by the Administrative Agent from three Federal funds brokers of recognized standing selected by it.

Fees. Collectively, the Commitment Fee, the Letter of Credit Fee and the other fees set forth in the Administrative Agent's Fee Letter.

[FFCA Loan Agreements. **The loan agreements, each dated as of December 17, 2001, by and among General Electric Capital Corporation, as lender, and the SPVs, as borrowers.**

FFCA Mortgage Financing. **The mortgage financing transaction described in the FFCA Loan Agreements.]**

Final Order. Collectively, the order of the Bankruptcy Court entered in the Chapter 11 Cases after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Bankruptcy Court which order shall be substantially in the form of the Interim Order and shall otherwise be reasonably satisfactory in form and substance to the Administrative Agent, and which has not been stayed (unless the Administrative Agent and the Required Lenders waive such requirement), together with all extensions, modifications, amendments or supplements thereto, in form and substance reasonably satisfactory to the Administrative Agent, which, among other matters but not by way of limitation, authorizes the Borrower and the Guarantors to, as applicable, obtain credit, incur (or guaranty) Indebtedness, and grant Liens under this Credit Agreement and the other Loan Documents, as the case may be, and provides for the super priority of the Agents' and the Lenders' claims.

Financial Affiliate. A Subsidiary of the bank holding company controlling any Lender, which Subsidiary is engaging in any of the activities permitted by §4(e) of the Bank Holding Company Act of 1956 (12 U.S.C. §1843).

Financing Orders. The Interim Order, the Final Order and any amendment, modification or supplement thereto in form and substance reasonably acceptable to the Administrative Agent.

First Day Orders. The First Day Orders described on Schedule F, which shall be in form and substance reasonably satisfactory to the Administrative Agent.

Foreign Subsidiaries. Each Subsidiary of the Borrower organized under the laws of any jurisdiction other than the United States or any state thereof.

Franchise Agreement. Any franchise, master franchise, area development and similar agreements, all equipment lease or similar agreements with any franchisee, sub-franchisee, licensee, sub-licensee or similar Person, all area hold or similar agreements and all other agreements with any franchisee, sub-franchisee, licensee, sub-licensee or similar Person

relating to the development or operation of restaurants to which the Borrower or any of its Subsidiaries is a party.

Franchisee. As of any date, any Person, other than the Borrower or a Guarantor, who is party to a Franchise Agreement.

Freeze Group. Freeze Group Holding Corp., a Delaware corporation.

Friendly Pension Plan. The Friendly Ice Cream Corp. Cash Balance Pension Plan.

GAAP or generally accepted accounting principles. Generally accepted accounting principles as in effect from time to time in the United States, consistently applied.

Governing Documents. With respect to any Person, the certificate or articles of incorporation, by-laws, operating agreement, partnership agreement, or other organizational documents of such Person.

Governmental Authority. Any foreign, federal, state, regional, local, municipal or other government, or any department, commission, board, bureau, agency, public authority or instrumentality thereof, or any court or arbitrator.

Guaranteed Pension Plan. Any employee pension benefit plan within the meaning of §3(2) of ERISA maintained or contributed to by the Borrower or any ERISA Affiliate the benefits of which are guaranteed on termination in full or in part by the PBGC pursuant to Title IV of ERISA, other than a Multiemployer Plan.

Guarantor and Guarantors includes each other Person which guarantees, pursuant to the Guaranty or otherwise, all or any part of the Obligations (other than the Sun Guarantor).

Guaranty. The Guaranty made by each Restricted Subsidiary of the Borrower in favor of the Lenders, the Issuing Lender, the Administrative Agent and the Bank Product Providers, pursuant to which Parent and each Restricted Subsidiary of the Borrower guaranties to the Lenders, the Issuing Lender, the Administrative Agent and the Bank Product Providers the payment and performance of the Obligations, in form and substance satisfactory to the Administrative Agent.

Hazardous Substances. See §7.18(b).

Hedge Agreement. Any and all agreements or documents now existing or hereafter entered into by the Borrower or any of its Subsidiaries that provide for an interest rate, credit, commodity or equity swap, cap, floor, collar, forward foreign exchange transaction, currency swap, cross currency rate swap, currency option, or any combination of, or option with respect to, these or similar transactions, for the purpose of hedging the Borrower's or any of its Subsidiaries' exposure to fluctuations in interest or exchange rates, loan, credit exchange, security, or currency valuations or commodity prices.

- 12 -

Indebtedness.  (a) All obligations for borrowed money, (b) all obligations evidenced by bonds, debentures, notes, or other similar instruments and all reimbursement or other obligations in respect of letters of credit, bankers acceptances, or other financial products, (c) all obligations as a lessee under any Capitalized Lease or any Synthetic Lease, (d) all obligations or liabilities of others secured by a Lien on any asset of a Person or its Subsidiaries, irrespective of whether such obligation or liability is assumed, (e) all obligations to pay the deferred purchase price of assets (other than trade payables incurred in the ordinary course of business and repayable in accordance with customary trade practices), (f) all obligations owing under Interest Rate Agreements (which amount shall be calculated based on the amount that would be payable by such Person if the Interest Rate Agreement were terminated on the date of determination), and (g) any obligation guaranteeing or intended to guarantee (whether directly or indirectly guaranteed, endorsed, co-made, discounted, or sold with recourse) any obligation of any other Person that constitutes Indebtedness under any of clauses (a) through (f) above.  For purposes of this definition, (i) the amount of any Indebtedness represented by a guaranty or other similar instrument shall be the lesser of the principal amount of the obligations guaranteed and still outstanding and the maximum amount for which the guaranteeing Person may be liable pursuant to the terms of the instrument embodying such Indebtedness, and (ii) the amount of any Indebtedness described in clause (d) above shall be the lower of the amount of the obligation and the fair market value of the assets securing such obligation.

Indemnified Liabilities.  See §16.3.

Ineligible Securities.  Securities which may not be underwritten or dealt in by member banks of the Federal Reserve System under Section 16 of the Banking Act of 1933 (12 U.S.C. §24, Seventh), as amended.

Intercreditor and Subordination Agreement.  That certain Intercreditor and Subordination Agreement dated as of June 5, 2008 by and between the Prior Agent, Freeze Group and Sundae Group (pursuant to that certain letter agreement dated as of September 9, 2011, by and among the Prior Agent, Freeze Group and Sundae Group), as amended by that certain amendment by and among Sundae Group, Freeze Group and Prior Agent, dated as of October 4, 2011, in form and substance reasonably satisfactory to the Administrative Agent.

Interest Payment Date.  (a) As to any Base Rate Loan, the last day of the calendar month with respect to interest accrued during such month, including, without limitation, the month which includes the Drawdown Date of such Base Rate Loan; and (b) as to any Eurodollar Rate Loan, the last day of the Interest Period applicable to such Eurodollar Rate Loan.

Interest Period.  With respect to each Revolving Credit Loan, (a) initially, the period commencing on the Drawdown Date of such Loan and ending on the last day of one of the periods set forth below, as selected by the Borrower in a Loan and Letter of Credit Request or as otherwise required by the terms of this Credit Agreement (i) for any Base Rate Loan, the last day of the calendar month; and (ii) for any Eurodollar Rate Loan, 1, 2 or 3 months; and (b) thereafter, each period commencing on the last day of the next preceding Interest Period applicable to such Revolving Credit Loan and ending on the last day of one of the periods set forth above, as selected by the Borrower in a Conversion Request; provided that all of the foregoing provisions relating to Interest Periods are subject to the following:

- 13 -

(a)    if any Interest Period with respect to a Eurodollar Rate Loan would otherwise end on a day that is not a Eurodollar Business Day, that Interest Period shall be extended to the next succeeding Eurodollar Business Day unless the result of such extension would be to carry such Interest Period into another calendar month, in which event such Interest Period shall end on the immediately preceding Eurodollar Business Day;

(b)    if any Interest Period with respect to a Base Rate Loan would end on a day that is not a Business Day, that Interest Period shall end on the next succeeding Business Day;

(c)    if the Borrower shall fail to give notice as provided in §2.7, the Borrower shall be deemed to have requested a conversion of the affected Eurodollar Rate Loan to a Base Rate Loan and the continuance of all Base Rate Loans as Base Rate Loans on the last day of the then current Interest Period with respect thereto;

(d)    any Interest Period relating to any Eurodollar Rate Loan that begins on the last Eurodollar Business Day of a calendar month (or on a day for which there is no numerically corresponding day in the calendar month at the end of such Interest Period) shall end on the last Eurodollar Business Day of a calendar month; and

(e)    any Interest Period that would otherwise extend beyond the Revolving Credit Loan Maturity Date shall end on the Revolving Credit Loan Maturity Date.

Interest Rate Agreement.  Any interest rate swap agreement, interest rate cap agreement, interest rate collar agreement, interest rate futures contract, interest rate option agreement or other similar agreement or arrangement to which the Borrower and any Lender is a party, designed to protect the Borrower against fluctuations in interest rates.

Interim Order.  Collectively, the order of the Bankruptcy Court entered in the Chapter 11 Cases after an interim hearing, which, among other matters, but not by way of limitation, authorizes, on an interim basis, the Borrower and the Guarantors to execute and perform under the terms of this Credit Agreement and the other Loan Documents, together with all extensions, modifications, amendments and supplements thereto, in form and substance reasonably satisfactory to the Administrative Agent.

Investments.  All expenditures made and all liabilities incurred (contingently or otherwise) for the acquisition of stock or Indebtedness of, or for loans, advances, capital contributions or transfers of property (other than in the ordinary course of business) to, or in respect of any guaranties (or other commitments as described under Indebtedness), or obligations of, any other Person.  In determining the aggregate amount of Investments outstanding at any particular time:  (a) the amount of any Investment represented by a guaranty (subject to any limitation contained in such guaranty) shall be taken at not less than the principal amount of the obligations guaranteed and still outstanding; (b) there shall be deducted in respect of each such Investment any amount received as a return of capital (but only by repurchase, redemption, retirement, repayment, liquidating dividend or liquidating distribution); (c) there shall not be deducted in respect of any Investment any amounts received as earnings on such Investment,

- 14 -

whether as dividends, interest or otherwise; and (d) there shall not be deducted from the aggregate amount of Investments any decrease in the value thereof.

Issuing Lender. WFCF and/or any other Lender that, at the request of the Borrower and with the consent of Administrative Agent, agrees, in such Lender's sole discretion, to become an Issuing Lender for the purpose of issuing L/Cs or L/C Undertakings pursuant to Section 4.1.

L/C. See §4.1.1.

L/C Disbursement. A payment made by the Issuing Lender pursuant to a Letter of Credit.

L/C Undertaking. See §4.1.1.

Lender Affiliate. (a) With respect to any Lender, (i) an Affiliate of such Lender or (ii) any entity (whether a corporation, partnership, limited liability company, trust or legal entity) that is engaged in making, purchasing, holding or otherwise investing in bank loans and similar extensions of credit in the ordinary course of its business and is administered or managed by such Lender or an Affiliate of such Lender and (b) with respect to any Lender that is a fund which invests in bank loans and similar extensions of credit, any other entity (whether a corporation, partnership, limited liability company, trust or other legal entity) that is a fund that invests in bank loans and similar extensions of credit and is managed by the same investment advisor as such Lender or by an Affiliate of such investment advisor.

Lenders. WFCF and the other lending institutions listed on Schedule 1(a) hereto and any other Person who becomes an assignee of any rights and obligations of a Lender pursuant to §15.

Lender Group. Individually and collectively, each of the Lenders (including the Issuing Lender) and the Administrative Agent.

Letter of Credit. A New Letter of Credit or a Rollover Letter of Credit, as the context requires.

Letter of Credit Commitment. With respect to each Lender, the amount set forth on Schedule 1(a) hereto or in the applicable Assignment and Acceptance, in each case as the amount of such Lender's commitment to participate in the issuance, extension and renewal of Letters of Credit for the account of the Borrower, as the same may be reduced from time to time; or if such commitment is terminated pursuant to the provisions hereof, zero.

Letter of Credit Commitment Percentage. With respect to each Lender, the percentage set forth on Schedule 1(a) hereto or in the applicable Assignment and Acceptance, in each case as such Lender's percentage of the aggregate Letter of Credit Commitments of all of the Lenders.

Letter of Credit Sublimit. $8,000,000.

- 15 -

**Letter of Credit Usage.** As of any date of determination, the aggregate undrawn amount of all outstanding New Letters of Credit.

**Letter of Credit Application.** See §4.1.1.

**Letter of Credit Fee.** The fees set forth in §4.3.

**Letter of Credit Participation.** See §4.1.

**Lien.** Any mortgage, deed of trust, security interest, pledge, hypothecation, assignment, attachment, deposit arrangement, encumbrance, lien (statutory, judgment or otherwise), or other security agreement or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any Capitalized Lease, any Synthetic Lease, any financing lease involving substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC or comparable law of any jurisdiction).

**Loan and Letter of Credit Request.** A written notice of each Revolving Credit Loan and Letter of Credit requested pursuant to this Credit Agreement, substantially in the form of Exhibit C hereto.

**Loan Documents.** This Credit Agreement, the Revolving Credit Notes, the Compliance Certificates, the Letter of Credit Applications, the Letters of Credit, the Copyright Mortgages, the Trademark Assignments, the Administrative Agent's Fee Letter, the Agency Account Agreements, the Concentration Account Agreements, the Control Agreements, the Financing Orders, the Bank Product Agreements, the Intercreditor and Subordination Agreement, the DIP Participation Commitment Letter, the DIP Participation and the Sun Guaranty, each agreement pursuant to which the Administrative Agent is granted a Lien to secure Obligations (including, without limitation, the Security Documents) and each other agreement, certificate, document or instrument delivered in connection with any Loan Document, whether or not specifically mentioned herein or therein, in each case as amended, supplemented, amended and restated or otherwise modified from time to time.

**Loans.** Collectively, the Revolving Credit Loans and the Swing Line Loans.

**Management Agreement.** The Management Services Agreement, dated as of August 30, 2007, by and between Freeze Group and Sun Capital Partners Management V, LLC, a Delaware limited liability company.

**Material Adverse Effect.** With respect to any event or occurrence of whatever nature (including any adverse determination in any litigation, arbitration or governmental investigation or proceeding):

        (a)    a material adverse effect on the business, assets, liabilities (actual or contingent), condition (financial or otherwise) or operations of the Parent and its Subsidiaries, taken as a whole;

LEGAL_US_W # 69146878.8

(b)     a material adverse effect on the ability of the Parent or any of its Subsidiaries taken as a whole, to perform any of their respective Obligations under any of the Loan Documents to which it is a party;

(c)     any material impairment of the validity, binding effect or enforceability of this Credit Agreement or any of the other Loan Documents or any material impairment of the rights, remedies or benefits available to the Administrative Agent or any Lender under any Loan Document; or

(d)     any material impairment of the attachment, perfection or priority of any Lien of the Administrative Agent under the Security Documents as a result of an action or failure to act on the part of the Parent or any of its Subsidiaries;

provided, however, that a Material Adverse Effect shall not be deemed to exist solely as a result of the Chapter 11 Cases or events leading up to the commencement of the Chapter 11 Cases.

Maximum Drawing Amount.    The maximum aggregate amount that the beneficiaries may at any time draw under outstanding Letters of Credit, as such aggregate amount may be reduced from time to time pursuant to the terms of the Letters of Credit.

Milestones. Those certain milestones related to the Chapter 11 Cases set forth on Schedule M; provided, however, that if the parties to the Asset Purchase Agreement mutually agree to extend any deadline in the Asset Purchase Agreement with a corresponding equivalent set forth on Schedule M, the corresponding deadline on Schedule M shall be deemed, without further action by the parties to this Credit Agreement, to be extended by the number of days by which the applicable deadline in the Asset Purchase Agreement has been extended.

Moody's. Moody's Investors Services, Inc.

Mortgaged Properties.    The Mortgaged Properties (as defined in the Pre-Petition Credit Agreement).

Multiemployer Plan.    Any multiemployer plan within the meaning of §3(37) of ERISA maintained or contributed to by the Borrower or any ERISA Affiliate.

Net Cash Debt Issuance Proceeds.    With respect to any Debt Issuance of any Person, the excess of the gross cash proceeds received by such Person for such Debt Issuance after deduction of all reasonable and customary transaction expenses (including, without limitation, underwriting discounts and commissions) actually incurred in connection with such a sale or other issuance.

Net Cash Equity Issuance Proceeds.    With respect to any Equity Issuance of any Person, the excess of the gross cash proceeds received by such Person for such Equity Issuance over, and after giving effect to the deduction of, all reasonable and customary transaction expenses (including, without limitation, underwriting discounts and commissions) actually incurred in connection with such a sale or other issuance.

- 17 -

Net Cash Sale Proceeds. The net cash proceeds received by a Person in respect of any Asset Sale, less the sum of (a) all reasonable out-of-pocket fees, commissions and other reasonable and customary direct expenses actually incurred in connection with such Asset Sale, including, (i) the amount of any taxes required to be paid by such Person in connection with such Asset Sale, and (ii) any out-of-pocket fees, commissions, management fees, transaction fees and expenses payable under the Management Agreement in connection with such Asset Sale to the extent permitted to be paid hereunder, (b) the aggregate amount of cash so received by such Person which is required to be used to retire (in whole or in part) any Indebtedness (other than (i) under the Loan Documents, or (ii) assumed by the purchaser of such asset) of such Person permitted by this Credit Agreement that was secured by a lien or security interest permitted by this Credit Agreement having priority over the liens and security interests (if any) of the Administrative Agent (for the benefit of the Administrative Agent and the Lenders) with respect to such assets transferred and which is required to be repaid in whole or in part (which repayment, in the case of any other revolving credit arrangement or multiple advance arrangement, reduces the commitment thereunder) in connection with such Asset Sale, and (c) amounts to be provided by the Borrower or any Subsidiary, as the case may be, as a reserve against any liabilities associated with the assets sold or disposed of in such Asset Sale and retained by the Borrower or such Subsidiary, as the case may be, after such Asset Sale, including pension and other post-employment benefit liabilities and liabilities related to environmental matters and liabilities under any indemnification obligation associated with the assets sold or disposed of in such Asset Sale; provided, that (x) the Borrower shall notify the Administrative Agent on or prior to the date of such Asset Sale of the amount of such reserve, and (y) the amount of such reserve shall be reasonably acceptable to the Administrative Agent.

Net Casualty Proceeds. With respect to any Casualty Event, the amount of any insurance proceeds or condemnation awards received by the Parent, the Borrower or any of the Restricted Subsidiaries of the Borrower in connection with such Casualty Event, individually or in the aggregate over the course of a fiscal year (net of all reasonable and customary collection expenses thereof).

New Letter of Credit. An L/C or an L/C Undertaking, as the context requires, issued after the Effective Date pursuant to §4.1.1.

Obligations. All (i) indebtedness, obligations and liabilities of any of the Borrower and its Subsidiaries and each Guarantor to any member of the Lender Group, existing on the date of this Credit Agreement or arising thereafter, direct or indirect, joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, arising by contract, operation of law or otherwise, arising or incurred under this Credit Agreement, any of the other Loan Documents (including any fees or any interest accruing during, or which would have accrued but for, the pendency of any insolvency or bankruptcy proceeding, regardless of whether a claim therefor is allowed in whole or in part in any such proceeding), or in respect of any of the Loans made or Reimbursement Obligations incurred or any of the Revolving Credit Notes, the Letter of Credit Applications, the Letters of Credit, or other instruments at any time evidencing any thereof and (ii) Bank Product Obligations.

OFAC. The Office of Foreign Assets Control of the U.S. Department of the Treasury.

- 18 -

Operating Account. See §2.6.1.

Outstanding. With respect to the Loans, the aggregate unpaid principal thereof as of any date of determination.

Parent. Freeze Operations Holding Corp., a Delaware corporation.

Patriot Act. Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act of 2001).

PBGC. The Pension Benefit Guaranty Corporation created by §4002 of ERISA and any successor entity or entities having similar responsibilities.

Perfection Certificates. The Perfection Certificates as defined in the Security Agreements.

Permitted Asset Sales. The sale or other disposition of any assets arising from discontinuance of operations (including, without limitation furniture, fixtures and equipment) or from any re-franchising arrangement by the Borrower to any Person or business to which, in each case, the Administrative Agent has consented in writing in its reasonable discretion in which the following conditions are satisfied:

(a)     the purchase and sale documentation is in form, scope and substance reasonably satisfactory to the Administrative Agent in its sole discretion;

(b)     immediately before and after giving effect to such sale, no Default shall have occurred and be continuing or would result therefrom;

(c)     the aggregate amount of net cash proceeds of any individual property sold in a Permitted Asset Sale shall not exceed $3,000,000;

(d)     each Permitted Asset Sale is for not less than fair market value (as determined by the Borrower in good faith) and the consideration received consists of no less than 90% in cash; and

(e)     the aggregate amount of net cash proceeds of all Permitted Asset Sales shall not, in the aggregate, exceed $7,500,000 in any fiscal year.

Permitted Discretion. A determination made in the exercise of reasonable (from the perspective of a secured lender) business judgment.

Permitted Holders. Collectively, (a) Sun Capital Partners IV, LP, a Delaware limited partnership or any of its Affiliates, (b) Sun Capital Partners V, L.P., a Cayman Islands exempted limited partnership or any of its Affiliates, or (c) H.I.G. Sun Partners, Inc. so long as (i) H.I.G. Sun Partners, Inc. owns no more than 5% of the Capital Stock of the Parent, and (ii) H.I.G. Sun Partners, Inc. is contractually obligated to exercise voting rights in respect of the Capital Stock of the Parent as directed by the entities described in clause (a) or clause (b) of this definition.

- 19 -

Permitted Liens.  Liens permitted by §9.2.

Permitted Intercompany Sales.  The sale or other disposition of assets (a) by the Borrower to any Restricted Subsidiary or (b) by any Restricted Subsidiary to the Borrower or any other Restricted Subsidiary, in each case in which immediately before and after giving effect to such sale, no Default shall have occurred and be continuing or would result therefrom.

Permitted Protest.  The right of the Parent or any of its Subsidiaries to protest any Lien (other than any Lien that secures the Obligations), taxes (other than payroll taxes or taxes that are the subject of a United States federal tax lien), or rental payment, provided that (a) a reserve with respect to such obligation is established on the Parent's or its Subsidiaries' books and records in such amount as is required under GAAP, and (b) any such protest is instituted promptly and prosecuted diligently by the Parent or its Subsidiary, as applicable, in good faith.

Person.  Any individual, corporation, limited liability company, partnership, limited liability partnership, trust, other unincorporated association, business, or other legal entity, and any Governmental Authority.

Petition Date.  As defined in the recitals hereto.

Pre-Petition.  The time period ending immediately prior to the filing of the Chapter 11 Cases.

Pre-Petition Credit Agreement.  As defined in the recitals hereto.

Pre-Petition Loan Documents.  The Loan Documents (as defined in the Pre-Petition Loan Documents).

Prior Agent.  The Administrative Agent (as defined in the Pre-Petition Credit Agreement).

Prior Lenders.  The Lenders (as defined in the Pre-Petition Credit Agreement).

Real Estate.  All real property (including any attendant fixtures) at any time owned or leased (as lessee or sublessee) by the Borrower or any of its Restricted Subsidiaries.

Record.  The grid attached to a Revolving Credit Note, or the continuation of such grid, or any other similar record, including computer records, maintained by any Lender with respect to any Loan referred to in such Revolving Credit Note.

Refinancing Indebtedness.  Indebtedness that refunds, refinances, replaces, renews, repays or extends (including pursuant to any defeasance or discharge mechanism) (collectively, "refinances," and "refinanced" shall have a correlative meaning) any Indebtedness including Indebtedness that refinances other Refinancing Indebtedness; *provided, however,* that (1) the Refinancing Indebtedness has a stated maturity no earlier than the stated maturity of the Indebtedness being refinanced, (2) such Refinancing Indebtedness is incurred in an aggregate principal amount (or if issued with original issue discount, an aggregate issue price) that is equal to or less than the sum of the aggregate principal amount (or if issued with original issue

discount, the aggregate accreted value) then outstanding of the Indebtedness being refinanced plus the amount of accrued and unpaid interest on the Indebtedness being refinanced, any premium paid to the holders of the Indebtedness being refinanced and reasonable expenses incurred in connection with the incurrence of the Refinancing Indebtedness and (3) the material terms of such Refinancing Indebtedness shall be on terms which are not materially more onerous on the Borrower than the terms in the Indebtedness being refinanced.

Register. See §15.3.

Reimbursement Obligation. The Borrower's obligation to reimburse the Administrative Agent and the Lenders on account of any drawing under any Letter of Credit as provided in §4.1.

Required Lenders. As of any date, the Lenders whose Commitments constitute at least 50.1% of the aggregate amount of the Commitments; provided, however, that in the event the Commitments have been terminated or reduced to zero, Required Lenders shall be the Lenders holding at least 50.1% of the outstanding principal amount of the Revolving Credit Loans.

Reserve Percentage. On any day, for any Lender, the maximum percentage prescribed by the Board of Governors of the Federal Reserve System (or any successor Governmental Authority) for determining the reserve requirements (including any basic, supplemental, marginal, or emergency reserves) that are in effect on such date with respect to eurocurrency funding (currently referred to as "eurocurrency liabilities") of that Lender, but so long as such Lender is not required or directed under applicable regulations to maintain such reserves, the Reserve Percentage shall be zero.

Restaurant Concentration Account. See §8.14.

Restricted Payment. In relation to the Borrower and its Subsidiaries, any (a) Distribution, (b) payment or prepayment in respect of Capital Stock by the Borrower or its Subsidiaries to the Borrower's or any Subsidiary's shareholders (or other equity holders), in each case, other than to the Borrower, or (c) derivatives or other transactions with any financial institution, commodities or stock exchange or clearinghouse (each, a "Derivatives Counterparty") obligating the Borrower or any Restricted Subsidiary to make payments to such Derivatives Counterparty as a result of any change in market value of any Capital Stock of the Borrower or such Subsidiary.

Restricted Subsidiary. Each Subsidiary that is not an Unrestricted Subsidiary.

Revolving Credit Loan Maturity Date. The earliest to occur of (a) the date on which all of the Obligations have been indefeasibly repaid in full and the Commitments have terminated, (b) April 2, 2012, (c) 5 days following the Petition Date if the Interim Order has not been entered by the Bankruptcy Court by such date, (d) 45 days following the Petition Date if the Final Order has not been entered by the Bankruptcy Court by such date, (e) the date on which the Interim Order expires, unless the Final Order shall have been entered and become effective by such date, (f) the date a plan of reorganization confirmed in any Chapter 11 Case becomes effective that does not provide for the payment in full of all amounts owed to the Administrative

- 21 -

Agent and the Lenders under this Credit Agreement and the other Loan Documents on such effective date, (g) the date of the closing of a sale of all or substantially all of Borrower's assets pursuant to Section 363 of the Bankruptcy Code, (h) the effective date of a confirmed plan of reorganization for Borrower in any case commenced pursuant to Chapter 11 of the Bankruptcy Code, (i) the date of a conversion pursuant to Chapter 7 of any of the Chapter 11 Cases and (j) the date of the termination of all of the Commitments (whether by acceleration or otherwise) in accordance with this Credit Agreement.

Revolving Credit Loans. Revolving credit loans made or to be made by the Lenders to the Borrower pursuant to §2.

Revolving Credit Note Record. A Record with respect to a Revolving Credit Note.

Revolving Credit Notes. The revolving promissory notes of the Borrower in substantially the form of Exhibit B attached hereto.

Risk Participation Liability. As to each Letter of Credit, all obligations of the Borrower with respect to such Letter of Credit, including (a) the contingent reimbursement obligations of the Borrower with respect to the amounts available to be drawn or which may become available to be drawn thereunder, (b) the reimbursement obligations of the Borrower with respect to amounts that have been paid by the Issuing Lender to beneficiary of such Letter of Credit or the Underlying Issuer, as applicable, to the extent not reimbursed by the Borrower, whether by the making of a Loan or otherwise, and (c) all accrued and unpaid interest, fees, and expenses payable with respect thereto.

Rollover Letter of Credit. An L/C or an L/C Undertaking, as the context requires, issued as a result of the Existing Letters of Credit being deemed to be issued hereunder pursuant to §4.4.

S&P. Standard & Poor's Ratings Group.

Sale-Leaseback Transaction. The sale of ninety-three (93) fee properties and the assignment of the leasehold interest in twenty-three (23) leasehold properties pursuant to that certain Purchase Agreement and Escrow Instructions by and between O ICE, LLC, Realty Income Pennsylvania Properties Trust, and Crest Net Lease, Inc., as buyer, and Friendly Ice Cream Corporation, Friendly's Realty I, LLC, Friendly's Realty II, LLC, and Friendly's Realty III, LLC, as seller, dated August 30, 2007, and the related documentation executed in connection therewith.

Sanctioned Entity. Any of (a) a country or a government of a country, (b) an agency of the government of a country, (c) an organization directly or indirectly controlled by a country or its government, (d) a Person resident in or determined to be resident in a country, in each case, that is subject to a country sanctions program administered and enforced by OFAC.

Sanctioned Person. A Person named on the list of Specially Designated Nationals maintained by OFAC.

**Security Agreement.** The several Security Agreements among the Parent, the Borrower, the Borrower's Restricted Subsidiaries and the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent.

**Security Documents.** The Guaranty, the Security Agreements, the Trademark Assignments, the Copyright Mortgages, the Borrower Stock Pledge Agreement and all other instruments and documents, including without limitation Uniform Commercial Code financing statements, required to be executed or delivered pursuant to any Security Document.

**Senior Notes.** The senior notes issued pursuant to the Senior Note Indenture.

**Senior Note Indenture.** The indenture by and among the Borrower and an indenture trustee, dated March 8, 2004, pursuant to which up to $175,000,000 of Senior Notes have been issued.

**Settlement.** The making or receiving of payments, in immediately available funds, by the Lenders, to the extent necessary to cause each Lender's actual share of the outstanding amount of Revolving Credit Loans (after giving effect to any Loan and Letter of Credit Request) to be equal to such Lender's Commitment Percentage of the outstanding amount of such Revolving Credit Loans (after giving effect to any Loan and Letter of Credit Request), in any case where, prior to such event or action, the actual share is not so equal.

**Settlement Amount.** See §2.9.1.

**Settlement Date.** (a) The Drawdown Date relating to any Loan and Letter of Credit Request, (b) Friday of each week, or if a Friday is not a Business Day, the Business Day immediately following such Friday, (c) at the option of the Administrative Agent, on any Business Day following a day on which the account officers of the Administrative Agent active upon the Borrower's account become aware of the existence of an Event of Default, (d) any Business Day on which the sum of the outstanding amount of Revolving Credit Loans, the Maximum Drawing Amount and any Unpaid Reimbursement Obligations is equal to or greater than the Total Commitment, (e) any day on which any conversion of a Base Rate Loan to a Eurodollar Rate Loan occurs, and (f) any Business Day on which (i) the amount of outstanding Revolving Credit Loans decreases, and (ii) the amount of the Administrative Agent's Revolving Credit Loans outstanding equals zero Dollars ($0).

**Settling Lender.** See §2.9.1.

**SPV.** Collectively, Friendly's Realty I, LLC, a Delaware limited liability company, Friendly's Realty II, LLC, a Delaware limited liability company, and Friendly's Realty III, LLC, a Delaware limited liability company, or one or more successor special purpose vehicles which hold title to any of the assets held by the SPVs existing on the Effective Date.[1]

---

[1] Status of SPVs and concept of Unrestricted Subsidiaries to be confirmed.

Stock Pledge Agreement. The Stock Pledge Agreement among the Parent, the Borrower, and the Borrower's Restricted Subsidiaries, if applicable, and the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent.

Subordinated PIK Note. The Subordinated Secured Promissory Note due January 11, 2013, issued by the Borrower in favor of Sundae Group (as assignee of Freeze Group), which note shall be subordinated in right of payment to the Obligations pursuant to the Intercreditor and Subordination Agreement and additionally, any Liens securing such notes shall be subordinated to the Administrative Agent's Liens securing the Obligations pursuant to the Intercreditor and Subordination Agreement.

Subordinated PIK Note Documents. The Subordinated PIK Note and each other document or instrument executed by the Borrower in connection therewith.

Subsidiary. Any corporation, association, trust, or other business entity of which the designated parent shall at any time own directly or indirectly through a Subsidiary or Subsidiaries at least a majority (by number of votes) of the outstanding Voting Stock.

Sundae Group. Sundae Group Holdings I, LLC, a Delaware limited liability company.

Sun Guarantor. Sun Capital Partners V, L.P.

Sun Guaranty. The Guaranty made by Sun Guarantor on or about the Effective Date in favor of the Administrative Agent, in form and substance reasonably satisfactory to the Administrative Agent, in respect of the Borrower's obligations under the Loan Documents.

Swing Line Loans. See §2.6.2.

Synthetic Lease. Any lease of goods or other property, whether real or personal, which is treated as an operating lease under GAAP and as a loan or financing for U.S. income tax purposes.

Total Commitment. $71,378,664.

Trademark Assignments. The several Trademark Assignments made by the Borrower and its Restricted Subsidiaries in favor of the Administrative Agent and the Assignments of Trademarks and Service Marks executed in connection therewith in form and substance reasonably satisfactory to the Administrative Agent.

Type. As to any Revolving Credit Loan, its nature as a Base Rate Loan or a Eurodollar Rate Loan.

UCC. The New York Uniform Commercial Code, as in effect from time to time.

UFOCs. The Uniform Franchise Offering Circulars and other franchise disclosure documents of the Parent and its Subsidiaries.

LEGAL_US_W # 69146878.8

**Underlying Issuer**. A third Person which is the beneficiary of an L/C Undertaking and which has issued a letter of credit at the request of the Issuing Lender for the benefit of the Borrower.

**Underlying Letter of Credit**. A letter of credit that has been issued by an Underlying Issuer.

**Unpaid Reimbursement Obligation**. Any Reimbursement Obligation for which the Borrower does not reimburse the Administrative Agent and the Lenders on the date specified in, and in accordance with, §4.1.

**Unrestricted Subsidiary**. The SPVs and any Foreign Subsidiary.

**Variance Report**. See §8.4(g).

**Voting Stock**. Stock or similar interests, of any class or classes (however designated), the holders of which are at the time entitled, as such holders, to vote for the election of a majority of the directors (or persons performing similar functions) of the corporation, association, trust or other business entity involved, whether or not the right so to vote exists by reason of the happening of a contingency.

**Wells Fargo**. Wells Fargo Bank, N.A.

**WFCF**. As defined in the preamble hereto.

**1.2    Rules of Interpretation**.

(a)    A reference to any document or agreement shall include such document or agreement as amended, restated, modified or supplemented from time to time in accordance with its terms and the terms of this Credit Agreement, together with all Exhibits and Schedules hereto.

(b)    The singular includes the plural and the plural includes the singular.

(c)    The term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or."

(d)    A reference to any law includes any amendment or modification to such law.

(e)    A reference to any Person includes its permitted successors and permitted assigns.

(f)    Accounting terms not otherwise defined herein have the meanings assigned to them by GAAP applied on a consistent basis by the accounting entity to which they refer.

LEGAL_US_W # 69146878.8

(g)     The words "include," "includes" and "including" are not limiting.

(h)     Any terms not specifically defined herein or by GAAP that are defined in the Uniform Commercial Code shall be construed and defined as set forth in the UCC; provided, however, that to the extent that the UCC is used to define any term herein and such term is defined differently in different Articles of the UCC, the definition of such term contained in Article 9 of the UCC shall govern.

(i)     Reference to a particular "§" refers to that section of this Credit Agreement unless otherwise indicated.

(j)     The words "herein," "hereof," "hereunder" and words of like import shall refer to this Credit Agreement as a whole and not to any particular section or subdivision of this Credit Agreement.

(k)     Unless otherwise expressly indicated, in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including," the words "to" and "until" each mean "to but excluding," and the word "through" means "to and including."

(l)     This Credit Agreement and the other Loan Documents may use several different limitations, tests or measurements to regulate the same or similar matters. All such limitations, tests and measurements are, however, cumulative and are to be performed in accordance with the terms thereof.

(m)     This Credit Agreement and the other Loan Documents are the result of negotiation among, and have been reviewed by counsel to, among others, the Administrative Agent and the Borrower and are the product of discussions and negotiations among all parties. Accordingly, this Credit Agreement and the other Loan Documents are not intended to be construed against the Administrative Agent or any of the Lenders merely on account of the Administrative Agent's or any Lender's involvement in the preparation of such documents.

## 2.     THE REVOLVING CREDIT FACILITY.

2.1     **Commitment to Lend.**     Subject to the terms and conditions set forth in this Credit Agreement, each of the Lenders severally agrees to lend to the Borrower, and the Borrower may borrow, repay, and reborrow from time to time from the Effective Date up to but not including the Revolving Credit Loan Maturity Date upon notice by the Borrower to the Administrative Agent given in accordance with §2.6, such sums as are requested by the Borrower up to a maximum aggregate amount outstanding (after giving effect to all amounts requested) at any one time equal to the difference between (a) the lesser of (i) such Lender's Commitment minus such Lender's Commitment Percentage of the sum of (A) the aggregate outstanding principal amount of all Revolving Credit Loans (as defined in and under the Pre-Petition Credit Agreement), plus (B) the Letter of Credit Usage plus (C) the Unpaid Reimbursement Obligations in respect of New Letters of Credit, and (ii) such Lender's Commitment Percentage of the amount of Revolving Credit Loans shown as outstanding at any

- 26 -

given time under the 13-Week Budget, subject to any variances permitted under §10 and (b) such Lender's Commitment Percentage of the sum of (i) the Bank Product Reserve and (ii) the Carve-Out Reserve; provided that the sum of the outstanding amount of the Revolving Credit Loans (after giving effect to all amounts requested and including any Letter of Credit Usage and any Unpaid Reimbursement Obligations in respect of New Letters of Credit) shall not at any time exceed the result of (x) the lesser of (I) the aggregate amount of the Commitments minus the sum of (A) the aggregate outstanding principal amount of all Revolving Credit Loans (as defined in and under the Pre-Petition Credit Agreement), plus (B) the Letter of Credit Usage and plus (C) the Unpaid Reimbursement Obligations in respect of New Letters of Credit, and (II) the amount of Revolving Credit Loans and New Letters of Credit shown as outstanding at any given time under the 13-Week Budget, subject to any variances permitted under §10, minus (y) the sum of (I) the Bank Product Reserve and (II) the Carve-Out Reserve. Each request for a Revolving Credit Loan hereunder shall constitute a representation and warranty by the Borrower that the conditions set forth in §11 and §12, in the case of the initial Revolving Credit Loans to be made on the Effective Date, and §12, in the case of all other Revolving Credit Loans, have been satisfied on the date of such request.

2.2   **Commitment Fee**.  The Borrower agrees to pay to the Administrative Agent for the sole account of WFCF as a Lender, and no other Lender or any participant, a commitment fee (the "Commitment Fee") equal to (a) a rate per annum of 0.50% times (b) the average daily amount (to the extent greater than zero) during each calendar month or portion thereof from the Effective Date or other applicable date to the Revolving Credit Loan Maturity Date by which the Applicable Amount exceeds the sum of (i) outstanding amount of Revolving Credit Loans and (ii) the Letter of Credit Usage during such calendar month. The Commitment Fee shall be payable monthly in arrears on the first day of each calendar month for the immediately preceding calendar month commencing on the first such date following the date hereof, with a final payment on the Revolving Credit Loan Maturity Date or any earlier date on which the Commitments shall terminate and in each instance shall be fully earned and nonrefundable when paid.

2.3   **Reduction of Commitments**.  The Borrower shall have the right at any time and from time to time upon five (5) Business Days' prior written notice to the Administrative Agent to reduce by $1,000,000 or an integral multiple thereof or to terminate entirely the aggregate amount of the Commitments whereupon the Commitments of the Lenders shall be reduced pro rata in accordance with their respective Commitment Percentages of the amount specified in such notice or, as the case may be, terminated.  Promptly after receiving any notice of the Borrower delivered pursuant to this §2.3, the Administrative Agent will notify the Lenders of the substance thereof.  Upon the effective date of any such reduction or termination, the Borrower shall pay to the Administrative Agent for the respective accounts of the Lenders the full amount of any Commitment Fee then accrued on the amount of the reduction.  No reduction or termination of the Commitments may be reinstated.

2.4   **The Revolving Credit Notes**.  Upon the request of any Lender, the Revolving Credit Loans made by such Lender shall be evidenced by a Revolving Credit Note, dated as of the Effective Date (or such other date on which such Lender becomes a party hereto in accordance with §15 hereof) and completed with appropriate insertions.  One Revolving Credit Note shall be payable to such Lender requesting a Revolving Credit Note in a principal

- 27 -

amount equal to such Lender's Commitment or, if less, the outstanding amount of all Revolving Credit Loans made by such Lender, plus interest accrued thereon, as set forth below. The Borrower irrevocably authorizes such Lender to make or cause to be made, at or about the time of the Drawdown Date of any Revolving Credit Loan or at the time of receipt of any payment of principal on such Lender's Revolving Credit Note, an appropriate notation on such Lender's Revolving Credit Note Record reflecting the making of such Revolving Credit Loan or (as the case may be) the receipt of such payment. The outstanding amount of the Revolving Credit Loans set forth on such Lender's Revolving Credit Note Record shall be prima facie evidence of the principal amount thereof owing and unpaid to such Lender absent manifest error, but the failure to record, or any error in so recording, any such amount on such Lender's Revolving Credit Note Record shall not limit or otherwise affect the obligations of the Borrower hereunder or under any Revolving Credit Note to make payments of principal of or interest on any Revolving Credit Note or any Revolving Credit Loan when due.

**2.5** **Interest on Revolving Credit Loans**. Except as otherwise provided in §5.10:

(a) Each Revolving Credit Loan which is a Base Rate Loan shall bear interest for the period commencing with the Drawdown Date thereof and ending on the last day of the Interest Period with respect thereto at the rate per annum equal to the Base Rate plus 3.00 percent per annum with respect to Base Rate Loans as in effect from time to time.

(b) Each Revolving Credit Loan which is a Eurodollar Rate Loan shall bear interest for the period commencing with the Drawdown Date thereof and ending on the last day of the Interest Period with respect thereto at the rate per annum equal to the Eurodollar Rate determined for such Interest Period plus 5.00 percent per annum with respect to Eurodollar Rate Loans as in effect from time to time.

The Borrower promises to pay interest on each Revolving Credit Loan in arrears on each Interest Payment Date with respect thereto.

**2.6** **Requests for Revolving Credit Loans**.

**2.6.1** **General**. The Borrower shall give to the Administrative Agent a Loan and Letter of Credit Request no less than (a) three (3) Business Days (or, if the sum of (i) the aggregate principal amount of the Revolving Credit Loans outstanding under (and as defined in) the Pre-Petition Credit Agreement as of any date of determination, (ii) the aggregate principal amount of the Revolving Credit Loans outstanding hereunder as of any date of determination and (iii) the principal amount of the proposed Loan or face amount of the proposed Letter of Credit, as applicable, is less than or equal to $21,500,000, then one (1) Business Day) prior to the proposed Drawdown Date of any Base Rate Loan and (b) three (3) Eurodollar Business Days prior to the proposed Drawdown Date of any Eurodollar Rate Loan. Each such notice shall specify (i) the principal amount of the Revolving Credit Loan requested, (ii) the proposed Drawdown Date of such Revolving Credit Loan, (iii) the Interest Period for such Revolving Credit Loan and (iv) the Type of such Revolving Credit Loan. Promptly upon receipt of any such notice, the Administrative Agent shall notify each of the Lenders thereof. Each Loan and

Letter of Credit Request shall be irrevocable and binding on the Borrower and shall obligate the Borrower to accept the Revolving Credit Loan requested from the Lenders on the proposed Drawdown Date. Each Loan shall be in a minimum aggregate amount of $250,000 or an integral multiple thereof and shall be made to the Borrower's operating account, as such operating account number is delivered to the Administrative Agent from time to time (the "Operating Account").

     **2.6.2**   **Swing Line.**   Notwithstanding the notice and minimum amount requirements set forth in §2.6.1 but otherwise in accordance with the terms and conditions of this Credit Agreement, the Administrative Agent may, in its sole discretion and without conferring with the Lenders, make Revolving Credit Loans to the Borrower to the Operating Account in an amount as requested by the Borrower, in an aggregate outstanding amount not to exceed $2,000,000 in accordance with this §2.6.2 (each a "Swing Line Loan"). Anything contained herein to the contrary notwithstanding, the Administrative Agent may, but shall not be obligated to, make Swing Line Loans at any time that one or more of the Lenders is a Defaulting Lender. The Borrower acknowledges and agrees that the making of such Swing Line Loans shall, in each case, be subject in all respects to the provisions of this Credit Agreement as if they were Revolving Credit Loans covered by a Loan and Letter of Credit Request including, without limitation, the limitations set forth in §2.1 and the requirements that the applicable provisions of §11 (in the case of Revolving Credit Loans made on the Effective Date) and §12 be satisfied. All actions taken by the Administrative Agent pursuant to the provisions of this §2.6.2 shall be conclusive and binding on the Borrower and the Lenders absent the Administrative Agent's gross negligence or willful misconduct. Revolving Credit Loans made pursuant to this §2.6.2 shall be Base Rate Loans until converted in accordance with the provisions of the Credit Agreement and, prior to a Settlement, such interest shall be for the account of the Administrative Agent.

    **2.7**   **Conversion Options.**

     **2.7.1**   **Conversion to Different Type of Revolving Credit Loan.**   The Borrower may elect from time to time to convert any outstanding Revolving Credit Loan of a certain Type to a Revolving Credit Loan of the other Type, provided that (a) with respect to any such conversion of a Eurodollar Rate Loan to a Base Rate Loan, the Borrower shall give the Administrative Agent at least one (1) Business Day's prior written notice of such election; (b) with respect to any such conversion of a Base Rate Loan to a Eurodollar Rate Loan, the Borrower shall give the Administrative Agent at least three (3) Eurodollar Business Days' prior written notice of such election; and (c) no Revolving Credit Loan may be converted into a Eurodollar Rate Loan when any Default or Event of Default has occurred and is continuing. On the date on which such conversion is being made each Lender shall take such action as is necessary to transfer its Commitment Percentage of such Revolving Credit Loans to its Domestic Lending Office or its Eurodollar Lending Office, as the case may be. All or any part of outstanding Revolving Credit Loans of any Type may be converted into a Revolving Credit Loan of the other Type as provided herein, provided that any partial conversion shall be in an aggregate principal amount of $250,000 or a whole multiple thereof. Each Conversion Request relating to the conversion of a Revolving Credit Loan to a Eurodollar Rate Loan shall be irrevocable by the Borrower.

**2.7.2    Continuation of Type of Revolving Credit Loan.** Any Revolving Credit Loan of any Type may be continued as a Revolving Credit Loan of the same Type upon the expiration of an Interest Period with respect thereto by compliance by the Borrower with the notice provisions contained in §2.7.1; provided that no Eurodollar Rate Loan may be continued as such when any Default or Event of Default has occurred and is continuing, but shall be automatically converted to a Base Rate Loan on the last day of the first Interest Period relating thereto ending during the continuance of any Default or Event of Default of which officers of the Administrative Agent active upon the Borrower's account have actual knowledge. In the event that the Borrower fails to provide any such notice with respect to the continuation of any Eurodollar Rate Loan as such, then such Eurodollar Rate Loan shall be automatically converted to a Base Rate Loan on the last day of the first Interest Period relating thereto. The Administrative Agent shall notify the Lenders promptly when any such automatic conversion contemplated by this §2.7.2 is scheduled to occur.

**2.7.3    Eurodollar Rate Loans.** Any conversion to or from Eurodollar Rate Loans shall be in such amounts and be made pursuant to such elections so that, after giving effect thereto, the aggregate principal amount of all Eurodollar Rate Loans having the same Interest Period shall not be less than $250,000 or a whole multiple of $100,000 in excess thereof. No more than six (6) Eurodollar Rate Loans having different Interest Periods may be outstanding at any time.

## 2.8    Funds for Revolving Credit Loan.

**2.8.1    Funding Procedures.** Not later than 11:00 a.m. (California time) on the proposed Drawdown Date of any Revolving Credit Loans (other than Revolving Credit Loans made pursuant to §2.6.2), each of the Lenders will make available to the Administrative Agent, at the Administrative Agent's Office, in immediately available funds, the amount of such Lender's Commitment Percentage of the amount of the requested Revolving Credit Loans. Upon receipt from each Lender of such amount, and upon receipt of the documents required by §§11 and 12 and the satisfaction of the other conditions set forth therein, to the extent applicable, the Administrative Agent will make available to the Borrower the aggregate amount of such Revolving Credit Loans made available to the Administrative Agent by the Lenders. The failure or refusal of any Lender to make available to the Administrative Agent at the aforesaid time and place on any Drawdown Date the amount of its Commitment Percentage of the requested Revolving Credit Loans (a) shall not relieve any other Lender from its several obligation hereunder to make available to the Administrative Agent the amount of such other Lender's Commitment Percentage of any requested Revolving Credit Loans, or (b) shall not impose upon any other Lender any liability with respect to such failure or refusal or otherwise increase the Commitment of such other Lender.

**2.8.2    Advances by Administrative Agent.** The Administrative Agent may, unless notified to the contrary by any Lender prior to a Drawdown Date, assume that such Lender has made available to the Administrative Agent on such Drawdown Date the amount of such Lender's Commitment Percentage of the Revolving Credit Loans to be made on such Drawdown Date, and the Administrative Agent may (but it shall not be required to), in reliance upon such assumption, make available to the Borrower a corresponding amount. If any Lender makes available to the Administrative Agent such amount on a date after such Drawdown Date,

such Lender shall pay to the Administrative Agent on demand an amount equal to such amount plus interest thereon at the Defaulting Lender Rate until paid in full. A statement of the Administrative Agent submitted to such Lender with respect to any amounts owing under this paragraph shall be prima facie evidence of the amount due and owing to the Administrative Agent by such Lender. If the amount of such Lender's Commitment Percentage of such Revolving Credit Loans is not made available to the Administrative Agent by such Lender within three (3) Business Days following such Drawdown Date, the Administrative Agent shall be entitled to recover such amount from the Borrower on demand, with interest thereon at the rate per annum applicable to the Revolving Credit Loans made on such Drawdown Date.

2.9 **Settlements**.

2.9.1 **General**. On each Settlement Date, the Administrative Agent shall, not later than 11:00 a.m. (California time), give telephonic or facsimile notice (a) to the Lenders and the Borrower of the respective outstanding amount of Revolving Credit Loans made by the Administrative Agent on behalf of the Lenders from the immediately preceding Settlement Date through the close of business on the prior day and the amount of any Eurodollar Rate Loans to be made (following the giving of notice pursuant to §2.6.1(b)) on such date pursuant to a Loan and Letter of Credit Request and (b) to the Lenders of the amount (a "Settlement Amount") that each Lender (a "Settling Lender") shall pay to effect a Settlement of any Revolving Credit Loan. A statement of the Administrative Agent submitted to the Lenders and the Borrower or to the Lenders with respect to any amounts owing under this §2.9.1 shall be prima facie evidence of the amount due and owing. Each Settling Lender shall, not later than 3:00 p.m. (California time) on such Settlement Date, effect a wire transfer of immediately available funds to the Administrative Agent in the amount of the Settlement Amount for such Settling Lender. All funds advanced by any Lender as a Settling Lender pursuant to this §2.9.1 shall for all purposes be treated as a Revolving Credit Loan made by such Settling Lender to the Borrower and all funds received by any Lender pursuant to this §2.9.1 shall for all purposes be treated as repayment of amounts owed with respect to Revolving Credit Loans made by such Lender. In the event that any bankruptcy, reorganization, liquidation, receivership or similar cases or proceedings in which the Borrower is a debtor prevent a Settling Lender from making any Revolving Credit Loan to effect a Settlement as contemplated hereby, such Settling Lender will make such dispositions and arrangements with the other Lenders with respect to such Revolving Credit Loans, either by way of purchase of participations, distribution, pro tanto assignment of claims, subrogation or otherwise as shall result in each Lender's share of the outstanding Revolving Credit Loans being equal, as nearly as may be, to such Lender's Commitment Percentage of the outstanding amount of the Revolving Credit Loans. Anything in this §2.9.1 to the contrary notwithstanding, in the event that a Lender is a Defaulting Lender, the Administrative Agent shall be entitled to refrain from remitting settlement amounts to the Defaulting Lender and, instead, shall be entitled to elect to implement the provisions set forth in §2.11.

2.9.2 **Failure to Make Funds Available**. The Administrative Agent may, unless notified to the contrary by any Settling Lender prior to a Settlement Date, assume that such Settling Lender has made or will make available to the Administrative Agent on such Settlement Date the amount of such Settling Lender's Settlement Amount, and the Administrative Agent may (but it shall not be required to), in reliance upon such assumption, make available to the Borrower a corresponding amount. If any Settling Lender makes available

- 31 -