(xxiii) Liens existing as of the Effective Date and not otherwise permitted hereunder securing Indebtedness in an aggregate amount not to exceed $100,000.

Notwithstanding the foregoing, Liens permitted under the foregoing clauses (i) through (xxiii) shall at all times be junior and subordinate to the Liens under the Loan Documents and the Financing Orders (and, except for clause (x) thereof, the adequate protection Liens, if any, of the Prior Agent and the Prior Lenders), other than the Carve-Out. The prohibition provided for in this section specifically includes, without limitation, the Borrower, any Guarantor, any Committee, or any other party-in-interest in the Chapter 11 Cases or any successor case to priming or creating pari passu to any claims, Liens or interests of the Administrative Agent and the Lenders (and the adequate protection claims and Liens, if any, of the Prior Agents and Prior Lenders) any Lien (other than for the Carve-Out Amount) irrespective of whether such claims, Liens or interests may be "adequately protected" (unless the Obligations and adequate protection claims will be paid in full in cash upon the granting of any such Lien and the Commitments terminated).

**9.2.2** <u>**Restrictions on Negative Pledges and Upstream Limitations**</u>. Except as set forth on <u>Schedule 9.2.2</u>, the Borrower will not, nor will it permit any of its Restricted Subsidiaries to (a) enter into or permit to exist any arrangement or agreement (excluding the Credit Agreement and the other Loan Documents) which directly or indirectly prohibits the Borrower or any of its Restricted Subsidiaries from creating, assuming or incurring any Lien granted pursuant to this Credit Agreement or any other Loan Document to secure the Obligations upon its properties, revenues or assets or those of any of its Restricted Subsidiaries whether now owned or hereafter acquired, or (b) enter into any agreement, contract or arrangement (excluding the Credit Agreement and the other Loan Documents) restricting the ability of any Restricted Subsidiary of the Borrower to pay or make dividends or distributions in cash or kind to the Borrower, to make loans, advances or other payments of whatsoever nature to the Borrower, or to make transfers or distributions of all or any part of its assets to the Borrower; in each case other than (i) restrictions on specific assets which assets are the subject of purchase money security interests or Capitalized Leases to the extent permitted under §9.2.1, (ii) customary anti-assignment provisions contained in leases and licensing agreements entered into by the Borrower or such Restricted Subsidiary in the ordinary course of its business, (iii) in the case of clause (b), any encumbrance or restriction (A) that restricts in a customary manner the subletting, assignment or transfer of any property or asset that is subject to a lease, license or similar contract, (B) by virtue of any transfer of, agreement to transfer, option or right with respect to, or Lien on, any property or assets of the Borrower or any Restricted Subsidiary not otherwise prohibited by this Credit Agreement or (C) contained in security agreements securing Indebtedness of a Restricted Subsidiary permitted hereunder to the extent such encumbrance or restrictions restrict the transfer of the property subject to such security agreements, (iv) any encumbrance or restriction arising under or by reason of applicable law, (v) any encumbrance or restriction applicable to secured Indebtedness otherwise permitted to be incurred under this Credit Agreement that limits the right of the debtor to dispose of the assets securing such Indebtedness, (vi) customary net worth provisions contained in leases and other agreements entered into by the Borrower or a Restricted Subsidiary in the ordinary course of business, (vii) any restrictions with respect to a Restricted Subsidiary imposed pursuant to an agreement which has been entered into in connection with the disposition of the common stock or assets of

- 71 -

such Restricted Subsidiary in a transaction permitted hereunder, or (viii) as set forth in the Pre-Petition Loan Documents.

**9.2.3    Negative Pledge**.  The Borrower will not, and will not permit any of its Restricted Subsidiaries to create, assume or incur any Lien (other than Liens permitted pursuant to §§9.2.1(ii), (iv), (v), (vi) and (x)) upon any Non-Encumbered Properties.

**9.3    Restrictions on Investments**.  The Borrower will not, and will not permit any of its Subsidiaries to, make or permit to exist or to remain outstanding any Investment except:

(a)    Investments existing on the Effective Date hereof and listed on Schedule 9.3 hereto;

(b)    Investments with respect to Indebtedness permitted by §§9.1(d), (f), (g), (h), (i), (j), (k), and (l);

(c)    Investments consisting of the Guaranty or Investments by the Borrower in Restricted Subsidiaries of the Borrower existing on the Effective Date;

(d)    Investments consisting of promissory notes received as proceeds of asset dispositions permitted by §§9.5.2(d);

(e)    Investments consisting of (i) loans and advances to employees in the ordinary course of business consistent with past practices not to exceed $500,000 in the aggregate at any time outstanding, and (ii) non-cash loans to employees, officers, and directors of the Parent or any of its Subsidiaries for the purpose of purchasing Stock in the Parent so long as the proceeds of such loans are used in their entirety to purchase such stock in the Parent;

(f)    Investments consisting of extensions of trade credit in the ordinary course of business consistent with past practices;

(g)    Investments in cash and Cash Equivalents which are subject to an Agency Account Agreement, a Concentration Account Agreement or any other Control Agreement; provided that the Parent, the Borrower and the Borrower's Restricted Subsidiaries may have up to $200,000 on deposit with financial institutions which have not entered into an Agency Account Agreement, a Concentration Account Agreement or such other Control Agreement;

(h)    Investments in, and extensions of credit to the Borrower by any Restricted Subsidiary existing as of the Effective Date;

(i)    Investments in securities of account debtors received (i) in settlement of obligations in the ordinary course of business, or (ii) pursuant to any plan of reorganization or similar arrangement upon the bankruptcy or insolvency of such account debtors;

LEGAL_US_W # 69146878.8

(j)     Investments in respect of guarantees of the Borrower and its Restricted Subsidiaries permitted by §9.1;

(k)     Intentionally Omitted;

(l)     Investments in negotiable instruments deposited or to be deposited for collection in the ordinary course of business;

(m)     advances made in connection with purchases of goods or services in the ordinary course of business;

(n)     deposits of cash made in the ordinary course of business to secure performance of operating leases;

(o)     Investments in Franchisees existing as of the Effective Date in an aggregate amount at any one time outstanding not to exceed $10,000,000; and

(p)     any other Investments existing as of the Effective Date in an aggregate amount not to exceed $1,000,000 at any time outstanding.

**9.4     Restricted Payments**.  The Borrower will not, and will not permit any of its Subsidiaries to, make any Restricted Payments except that (a) the Borrower or any of its Subsidiaries may make dividends or other Distributions to enable the Borrower or its Subsidiaries to make payments of salary and compensation to employees and members of the respective boards of directors of the Borrower and its Subsidiaries in the ordinary course of business and consistent with past practices or as Deferred Compensation, (b) the Borrower or any of its Subsidiaries may make dividends or other Distributions to enable the Borrower or its Subsidiaries to make payments of Fees and expenses payable pursuant to this Credit Agreement, (c) the Borrower or any of its Subsidiaries may make dividends or other Distributions to enable the Borrower or its Subsidiaries to make payments to suppliers and customers in the ordinary course of business and consistent with past practices, and (d) the Borrower or any of its Subsidiaries may make dividends or other Distributions to the Parent and the Parent may make dividends or other Distributions to Freeze Group, in each case, solely for the purpose of permitting the Parent or Freeze Group, as applicable, to pay federal and state income taxes and franchise taxes solely arising out of the consolidated operations of the Parent and its Subsidiaries, after taking into account all available credits and deductions (provided that neither the Borrower nor any of its Subsidiaries shall make any Distribution to the Parent in any amount greater than the share of such taxes arising out of the Borrower's consolidated net income).

**9.5     Merger, Consolidation and Disposition of Assets**.

**9.5.1     Mergers and Acquisitions**.  The Borrower will not, and will not permit any of its Restricted Subsidiaries to form or acquire any Subsidiary after the Effective Date or to become a party to any merger, amalgamation or consolidation, or agree to or effect any asset acquisition or stock acquisition (other than the acquisition of assets in the ordinary course of business consistent with past practice) except:

(a)     the merger, amalgamation or consolidation of one or more of the Restricted Subsidiaries of the Borrower with and into the Borrower; and

(b)     the merger, amalgamation or consolidation of two or more Restricted Subsidiaries of the Borrower.

**9.5.2     Disposition of Assets**. The Borrower will not, and will not permit any of its Restricted Subsidiaries to, become a party to or agree to or effect any disposition of assets, except as permitted under §§9.3 and 9.5.1 and:

(a)     the sale of inventory in the ordinary course of business;

(b)     Intentionally Omitted;

(c)     the licensing of patents, trademarks, copyrights and other intellectual property rights on a non-exclusive basis;

(d)     the abandonment, sale or disposition of damaged, surplus, obsolete or worn-out assets in the ordinary course of business;

(e)     Intentionally Omitted;

(f)     Sale of Cash Equivalents in the ordinary course of business;

(g)     Permitted Intercompany Sales;

(h)     Permitted Asset Sales;

(i)     the Sale-Leaseback Transaction, to the extent consummated prior to the Effective Date;

(j)     the granting of Permitted Liens;

(k)     the sale or discount, in each case without recourse, of Accounts arising in the ordinary course of business, but only in connection with the compromise or collection thereof,

(l)     any involuntary loss, damage or destruction of property,

(m)     any involuntary condemnation, seizure or taking, by exercise of the power of eminent domain or otherwise, or confiscation or requisition of use of property;

(n)     Intentionally Omitted;

(o)     the sale or issuance of Stock (as permitted hereunder) of Parent;

(p)    the lapse or abandonment of registered patents, trademarks and any application therefor, and any other intellectual property of the Borrower and its Subsidiaries to the extent not economically desirable in the conduct of their business and so long as such lapse is not materially adverse to the interests of the Lenders;

(q)    the granting of franchises with respect to restaurants (and dispositions of property in connection therewith) made to Franchisees in the ordinary course of business; and

(r)    the disposition of other assets not described in clauses (a) through (q) in an amount not to exceed $750,000 so long as, in each case, consummated for not less than fair market value (as determined by the Borrower in good faith) and for which the consideration received consists of no less than 90% in cash.

**9.6**    **Sale and Leaseback**. The Borrower will not, and will not permit any of its Restricted Subsidiaries to, enter into any arrangement, directly or indirectly, whereby the Borrower or any Restricted Subsidiary of the Borrower shall sell or transfer any property owned by it in order then or thereafter to lease such property or lease other property that the Borrower or any Restricted Subsidiary of the Borrower intends to use for substantially the same purpose as the property being sold or transferred, other than the Sale-Leaseback Transaction to the extent consummated prior to the Effective Date.

**9.7**    **Compliance with Environmental Laws**. The Borrower will not, and will not permit any of its Subsidiaries to, (a) use any of the Real Estate or any portion thereof for the handling, processing, storage or disposal of Hazardous Substances, (b) cause or permit to be located on any of the Real Estate any underground tank or other underground storage receptacle for Hazardous Substances, (c) generate any Hazardous Substances on any of the Real Estate, (d) conduct any activity at any Real Estate or use any Real Estate in any manner so as to cause a release (i.e. releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, disposing or dumping) or threatened release of Hazardous Substances on, upon or into the Real Estate or (e) otherwise conduct any activity at any Real Estate or use any Real Estate in any manner that would violate any Environmental Law or bring such Real Estate in violation of any Environmental Law, where, in the case of clauses (a) through (e), it could reasonably be expected to have a Material Adverse Effect.

**9.8**    **Prepayments; Modification of Certain Documents**. The Borrower will not, and will not permit any of its Subsidiaries to:

(a)    optionally prepay, redeem, defease, purchase, or otherwise acquire the Indebtedness evidenced by the Subordinated PIK Note, other than in connection with a refinancing thereof with Refinancing Indebtedness of such Indebtedness that is permitted hereunder,

(b)    make any payment on account of Indebtedness that has been contractually subordinated in right of payment if such payment is not permitted at such time under the subordination terms and conditions,

(c)     consent to or enter into any amendment, supplement or other modification of any of the terms or provisions contained in, or applicable to (i) any Subordinated PIK Note Document in any manner that is adverse in any respect to the Lenders unless consented to in writing prior thereto by the Required Lenders or as otherwise expressly permitted under the Intercreditor and Subordination Agreement, or (ii) the Governing Documents of the Borrower or any of its Subsidiaries if the effect thereof, either individually or in the aggregate, could reasonably be expected to be materially adverse to the interests of the Lenders,

(d)     make any payments or transfer, or agree to any setoff or recoupment, with respect to any Pre-Petition claim, Pre-Petition Lien or Pre-Petition Indebtedness, except (i) as approved by order of the Bankruptcy Court and (ii) as expressly permitted by the terms of the Loan Documents and the 13-Week Budget, or

(e)     amend or modify, or permit the amendment or modification of, any other Loan Document, the Financing Orders, the First Day Orders, in each case except for amendments or modifications which are not in any way adverse in any material respect to the interests of the Agents or Lenders in such capacities.

**9.9     Employee Benefit Plans**. Except as set forth on Schedule 7.16, neither the Borrower nor any ERISA Affiliate will:

(a)     engage in any non-exempt "<u>prohibited transaction</u>" within the meaning of §406 of ERISA or §4975 of the Code which could result in a material liability for the Borrower or any of its Subsidiaries (other than the failure to make required contributions to the Friendly Pension Plan); or

(b)     permit any Guaranteed Pension Plan, other than the Friendly Pension Plan, to fail to satisfy any applicable minimum funding standard under ERISA or the Code, whether or not such deficiency is or may be waived; or

(c)     fail to contribute to any Guaranteed Pension Plan to an extent which, or terminate any Guaranteed Pension Plan in a manner which, could result in the imposition and, with respect to the Friendly Pension Plan, perfection of a lien or encumbrance on the assets of the Borrower or any of its Subsidiaries pursuant to ERISA; or

(d)     amend any Guaranteed Pension Plan in circumstances requiring the posting of security pursuant to ERISA or the Code; or

(e)     permit or take any action which would result in the aggregate benefit liabilities (within the meaning of §4001 of ERISA) of all Guaranteed Pension Plans exceeding the value of the aggregate assets of such Plans, disregarding for this purpose the benefit liabilities and assets of the Friendly Pension Plan and any such Plan with assets in excess of benefit liabilities, by more than the amount set forth in §7.16.3; or

(f)     permit or take any action which would contravene any Applicable Pension Legislation other than the failure to make required contributions to the Friendly Pension Plan.

- 76 -

**9.10　Business Activities**. The Borrower will not, and will not permit any of its Subsidiaries to, engage directly or indirectly (whether through Subsidiaries or otherwise) in any type of business other than the businesses and related businesses conducted by them on the Effective Date as debtors-in-possession in the Chapter 11 Cases.

**9.11　Fiscal Year**. The Borrower will not, and will not permit any of its Subsidiaries to, change the date of the end of its fiscal year from that set forth in §7.4.1.

**9.12　Transactions with Affiliates**. The Borrower will not, and will not permit any of its Subsidiaries to, engage in any transaction with any Affiliate (other than for services as employees, officers and directors), including any contract, agreement or other arrangement providing for the furnishing of services to or by, providing for rental of real or personal property to or from, or otherwise requiring payments to or from any such Affiliate or, to the knowledge of the Borrower, any corporation, partnership, trust or other entity in which any such Affiliate has a substantial interest or is an officer, director, trustee or partner, on terms more favorable to such Person than would have been obtainable on an arm's-length basis in the ordinary course of business; provided, that nothing contained herein shall prohibit (a) the Borrower or any of its Subsidiaries from making dividends or distributions to the Parent, and the Parent from making dividends or distributions to Freeze Group, to the extent permitted by §9.4(d), (b) transactions (other than the payment of management, consulting, monitoring, or advisory fees) between the Parent or its Subsidiaries, on the one hand, and any Affiliate of the Parent or its Subsidiaries, on the other hand, so long as such transactions (i) are upon fair and reasonable terms, (ii) are fully disclosed to the Administrative Agent prior to the consummation thereof, if they involve one or more payments by the Parent or its Subsidiaries for any single transaction or series of related transactions, and (iii) are no less favorable, taken as a whole, to the Parent or its Subsidiaries, as applicable, than would be obtained in an arm's length transaction with a non-Affiliate, (c) so long as it has been approved by the Parent's Board of Directors in accordance with applicable law, any indemnity provided for the benefit of directors of the Parent, (d) so long as it has been approved by the Parent's Board of Directors, the payment of reasonable fees, compensation, or employee benefit arrangements to employees, officers, and outside directors of the Parent in the ordinary course of business and consistent with industry practice, (e) the Subordinated PIK Note; and (f) any transactions between the Parent or one of its Subsidiaries, on the one hand, and Affiliates of such Person, on the other hand, as permitted under §§9.5.1 and 9.5.2.

**9.13　Bank Accounts**. The Borrower will not, and will not permit any of its Restricted Subsidiaries to (a) if at any time an Event of Default shall have occurred and be continuing, establish any bank accounts other than those Concentration Accounts and Restaurant Concentration Accounts and other accounts, all listed on Schedule 7.21 (as such Schedule shall be updated pursuant to §8.4(h)), without the Administrative Agent's prior written consent, (b) violate directly or indirectly any Agency Account Agreement or other bank agency or lock box agreement in favor of the Administrative Agent for the benefit of the Lenders and the Administrative Agent with respect to such account, or (c) deposit into any of the payroll accounts listed on Schedule 7.21 any amounts in excess of amounts necessary to pay current payroll obligations from such accounts.

**9.14　Marketing & Advertising Fund**. Except with the permission of the affected Franchisees or as required by law or court order, the Borrower will not, and will not

- 77 -

permit any of its Restricted Subsidiaries to, permit payments made by Franchisees in respect of their advertising and promotion obligations (as defined in the relevant Franchise Agreements) to be used for any purpose other than marketing, advertising and promotional activities to support the franchised restaurants in accordance with the terms and conditions of the Franchise Agreements.

**9.15** **Chapter 11 Claims**. Except as otherwise allowed pursuant to the Financing Orders, incur, create, assume, suffer to exist or permit any Lien or other super priority administrative claim which is *pari passu* with or senior to the Liens or claims of the Administrative Agent and Lenders against the Loan Parties, or the adequate protection Liens or claims, if any, of the Prior Agents and Prior Lenders against the Loan Parties, in each case, other than the Carve-Out.

**9.16** **Critical Vendor and Other Payments**. The Loan Parties shall not make (i) any pre-petition "critical vendor" payments or other payments on account of any creditor's pre-petition unsecured claims, (ii) payments on account of claims or expenses arising under Section 503(b)(9) of the Bankruptcy Code, or (iii) payments under any management incentive plan or on account of claims or expenses arising under Section 503(c) of the Bankruptcy Code, except in each case in amounts and on terms and conditions that (a) are approved by order of the Bankruptcy Court after notice and a hearing and (b) are expressly permitted by any approved 13-Week Budget.

**9.17** **Cancellation of Indebtedness**. Neither the Borrower nor any Guarantor shall cancel any claim or debt owing to it, except for reasonable consideration negotiated on an arm's length basis and in the ordinary course of its business consistent with past practices.

**9.18** **Reclamation Claims**. Neither the Borrower nor any Guarantor shall enter into any agreement to return any of its inventory to any of its creditors for application against any Indebtedness arising Pre-Petition, Pre-Petition trade payables or other Pre-Petition claims under Section 546(g) of the Bankruptcy Code or allow any creditor to take any setoff or recoupment against any of its Indebtedness arising Pre-Petition, Pre-Petition trade payables or other Pre-Petition claims based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise if, after giving effect to any such agreement, setoff or recoupment, the aggregate amount of Indebtedness arising Pre-Petition, Pre-Petition trade payables and other Pre-Petition claims subject to all such agreements, setoffs and recoupments since the Petition Date would exceed $250,000.

**9.19** **Pre-Petition Indebtedness**. The Loan Parties shall not make any adequate protection payments on account of Indebtedness arising Pre-Petition other than (a) any adequate protection payments made on account of insurance premium finance agreements or (b) any other adequate protection payments in an amount not to exceed $250,000 in the aggregate so long as, in each case, such adequate protection payments are (y) approved by the Bankruptcy Court or the Administrative Agent and (z) included in the 13 Week Budget.

- 78 -

## 10. FINANCIAL COVENANTS.

The Borrower covenants and agrees that, so long as any Loan, Unpaid Reimbursement Obligation, Letter of Credit or Revolving Credit Note is outstanding or any Lender has any obligation to make any Loans or the Administrative Agent has any obligation to issue, extend or renew any Letters of Credit, the Borrower will, and will cause its Subsidiaries, to comply with the 13-Week Budget at all times, subject to the permitted variances set forth on Schedule P.

## 11. CLOSING CONDITIONS.

The obligations of the Lenders to make Revolving Credit Loans and of the Issuing Lender to continue to issue any initial Letters of Credit after the date hereof shall be subject to the satisfaction of the following conditions precedent:

**11.1    Delivery of Documents.**  Each of the Loan Documents shall have been duly executed and delivered by the respective parties thereto, shall be in full force and effect and shall be in form and substance reasonably satisfactory to each of the Lenders.

**11.2    Administrative Agent's Fee Letter.**  The Administrative Agent shall have received the Administrative Agent's Fee Letter, in form and substance reasonably satisfactory to the Administrative Agent and duly executed and delivered by the respective parties thereto.

**11.3    Budgets.**  The Administrative Agent shall have received a copy of the initial 13-Week Budget, in form and substance acceptable to the Administrative Agent.

**11.4    Chapter 11 Case Administration.**  Entry by the Bankruptcy Court of the Interim Order no later than five (5) days after the Petition Date.

**11.5    First Day Orders and Motions**.  All of the First Day Orders shall have been entered in the Chapter 11 Cases and shall be in form and substance reasonably satisfactory to the Administrative Agent.

**11.6    Validity of Liens.**  Upon entry of the Interim Order (or the Final Order, when applicable) by the Bankruptcy Court, and subject to the terms thereof, the Security Documents shall be effective to create in favor of the Administrative Agent a legal, valid and enforceable first priority (except for Permitted Liens entitled to priority under applicable law) security interest in and Lien upon the Collateral.  All filings, recordings, deliveries of instruments and other actions necessary or desirable in the opinion of the Administrative Agent to protect and preserve such security interests shall have been duly effected.  The Administrative Agent shall have received evidence of the foregoing in form and substance satisfactory to the Administrative Agent.

**11.7    Corporate Documents**.  The Administrative Agent shall have received:

**11.7.1**    a certificate from the Secretary of each of the Borrower, each Guarantor and Sun Guarantor (i) attesting to the resolutions of such Person's board of directors

authorizing its execution, delivery, and performance of this Credit Agreement and the other Loan Documents to which such Person is a party, (ii) authorizing specific officers of the Borrower to execute the same, and (iii) attesting to the incumbency and signatures of such specific officers of the Borrower;

    **11.7.2** copies of each of the Borrower's, each Guarantor's and Sun Guarantor's Governing Documents, as amended, modified, or supplemented to the Effective Date, certified by the Secretary of such Person; and

    **11.7.3** a certificate of status with respect to each of the Borrower, each Guarantor and Sun Guarantor, dated within 15 days of the Effective Date, such certificate to be issued by the appropriate officer of the jurisdiction of organization of such Person, which certificate shall indicate that such Person is in good standing in such jurisdiction.

    · **11.8** **Opinion of Counsel**. The Administrative Agent shall have received one or more opinions of the Borrower's, the Guarantors' and Sun Guarantor's respective counsel, each in form and substance reasonably satisfactory to the Administrative Agent.

    **11.9** **Amendment to Guaranty**. The Sun Guaranty (as defined in the Pre-Petition Credit Agreement) shall have been amended by the parties thereto by a duly executed amendment in form and substance reasonably satisfactory to the Administrative Agent.

    **11.10** **Officer's Certificate**. The Administrative Agent shall have received a certificate, dated the Effective Date and signed by an authorized officer of the Borrower containing customary closing certifications, in form and substance reasonably satisfactory to the Administrative Agent.

    **11.11** **Patriot Act and related Searches**. The Administrative Agent and each Lender shall have completed such Patriot Act, OFAC/PEP and customary background searches as they shall require, the results of which shall be reasonably satisfactory to Administrative Agent and each Lender.

    **11.12** **Payment of Fees, Etc**. The Borrower shall have paid all fees (including all Fees), costs, expenses and taxes then payable pursuant to the Loan Documents.

    **11.13** **Miscellaneous**. The Administrative Agent shall have received such other documents and instruments as shall be reasonably required by it in connection with this Credit Agreement and the transactions contemplated thereby.

## 12. CONDITIONS TO ALL BORROWINGS.

    The obligations of the Lenders to make any Loan, including any Revolving Credit Loan, and of the Issuing Lender to issue, extend or renew any Letter of Credit, in each case whether on or after the Effective Date, shall also be subject to the satisfaction of the following conditions precedent:

    **12.1** **Representations True; No Event of Default**. Each of the representations and warranties of any of the Borrower and its Subsidiaries contained in this Credit Agreement

and the other Loan Documents shall be true in all material respects as of the date as of which they were made and, except with respect to the representations and warranties made with resepect to the Friendly Pension Plan in Sections 7.16.1 (as to contribution obligations that become due after the Effective Date only) and 7.16.2, shall also be true in all material respects at and as of the time of the making of such Loan or the issuance, extension or renewal of such Letter of Credit, with the same effect as if made at and as of that time (except to the extent of changes resulting from transactions contemplated or permitted by this Credit Agreement and the other Loan Documents and changes occurring in the ordinary course of business that singly or in the aggregate are not materially adverse, and to the extent that such representations and warranties relate expressly to an earlier date) and no Default or Event of Default shall have occurred and be continuing. The Administrative Agent shall have received a certificate of the Borrower signed by an authorized officer of the Borrower to such effect.

**12.2  No Legal Impediment.**  No change shall have occurred in any law or regulations thereunder or interpretations thereof that in the reasonable opinion of any Lender would make it illegal for such Lender to make such Loan or to participate in the issuance, extension or renewal of such Letter of Credit or in the reasonable opinion of the Administrative Agent or the Issuing Lender would make it illegal for the Issuing Lender to issue, extend or renew such Letter of Credit.

**12.3  Proceedings and Documents.**  All proceedings in connection with the transactions contemplated by this Credit Agreement, the other Loan Documents and all other documents incident thereto shall be satisfactory in substance and in form to the Lenders and to the Administrative Agent and the Administrative Agent's Special Counsel, and the Lenders, the Administrative Agent and such counsel shall have received all information and such counterpart originals or certified or other copies of such documents as the Administrative Agent may reasonably request.

**12.4  Bankruptcy Matters.**  At the time of any such Credit Extension, (i) if such Credit Extension is prior to the entry and effectiveness of the Final Order, the Interim Order shall not have terminated or expired, (ii) if such Credit Extension is after entry and effectiveness of the Final Order, the Final Order shall be effective, and shall not have terminated or expired, (iii) no Financing Order shall have been vacated, reversed, stayed, amended, supplemented or otherwise modified (without the consent of the Administrative Agent and the Required Lenders), (iv) no Financing Order shall be stayed, and (v) no appeal of any Financing Order shall be pending and no Financing Order shall be the subject of a stay pending appeal or a motion for a stay pending appeal.

**12.5  Budget.**  At the time of such Credit Extension, the amount of such Credit Extension is consistent with the most recently delivered 13-Week Budget in effect at such time (after giving effect to any permitted variances thereto).

**12.6  Availability.**  The Borrower shall have the requisite Availability for such Credit Extension and, after giving effect to such Credit Extension, the aggregate outstanding amount of Loans plus the aggregate amount of Aggregate Letter of Credit Usage shall not exceed the amount then authorized by the Financing Orders.

- 81 -

**12.7   DIP Participation Matters.** (a) The Administrative Agent shall have received immediately available funds equal to (i) in the case of a request for a Revolving Credit Loan, the amount of the requested Revolving Credit Loan, or (ii) in the case of a request for a New Letter of Credit, the Maximum Drawing amount of such New Letter of Credit, in each case from DIP Participant pursuant to the terms and conditions of the DIP Participation, (b) DIP Participant shall not be in default under any of its payment obligations under the DIP Participation (including §1 thereof), and (c) the Sun Guarantor shall not be in default under any of its payment obligations under the DIP Participation Commitment Letter other than as may be permitted or waived pursuant to the terms thereof.

Each of the delivery of a borrowing request or notice requesting the issuance, amendment, extension or renewal of a Letter of Credit and the acceptance by the Borrower of the proceeds of such Credit Extension shall constitute a representation and warranty by Borrower and, by its execution of the Guaranty, each Guarantor that on the date of such Credit Extension (both immediately before and after giving effect to such Credit Extension and the application of the proceeds thereof) the conditions contained in this §12 have been satisfied.

## 13.   EVENTS OF DEFAULT; ACCELERATION; ETC.

**13.1   Events of Default and Acceleration.** If any of the following events ("Events of Default") shall occur (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without notice, application or motion to , hearing before, or order of the Bankruptcy Court or any notice to the Borrower or any Guarantor):

(a)     the Borrower shall fail to pay any principal of the Loans or any Reimbursement Obligation when the same shall become due and payable, whether at the stated date of maturity or any accelerated date of maturity or at any other date fixed for payment;

(b)     the Borrower or any of its Subsidiaries shall fail to pay any interest on the Loans, any Fees, or other sums due hereunder or under any of the other Loan Documents, within three (3) days of such sum becoming due and payable, whether at the stated date of maturity or any accelerated date of maturity or at any other date fixed for payment;

(c)     the Borrower or any of its Subsidiaries shall fail to comply with any of its covenants contained in §§ 7.17, 7.24, 7.25, 8.5, 8.6.1, 8.7, 8.4(f) or (g), 8.12, 8.14, 9 or 10;

(d)     the Borrower or any of its Subsidiaries shall (i) fail to comply with the covenants contained in §8.4 (except clauses (f) and (g) thereof) for ten (10) days, or (ii) fail to perform any term, covenant or agreement contained herein or in any of the other Loan Documents (other than those specified elsewhere in this §13.1 (including §13.1(a), (b), and (c))) for thirty (30) days after written notice of such failure has been given to the Borrower by the Administrative Agent;

(e)     any representation or warranty of the Borrower or any of its Subsidiaries in this Credit Agreement or any of the other Loan Documents or in any other

document or instrument delivered pursuant to or in connection with this Credit Agreement shall prove to have been false in any material respect upon the date when made or deemed to have been made or repeated;

(f)     the Borrower or any of its Subsidiaries (other than any Unrestricted Subsidiary) shall (i) fail to pay at maturity, or within any applicable period of grace, any obligation for borrowed money, credit received or in respect of any Capitalized Leases which obligation exceeds $2,000,000 and which are either (A) incurred or entered into after the Petition Date or (B) Pre-Petition and assumed after the Petition Date, or (ii) fail to observe or perform any material term, covenant or agreement contained in any agreement, which is either (A) incurred or entered into after the Petition Date or (B) Pre-Petition and affirmed after the Petition Date, by which it is bound, evidencing or securing borrowed money or credit received or in respect of any Capitalized Leases which obligation exceeds $2,000,000 for such period of time as would permit (assuming the giving of appropriate notice if required) the holder or holders thereof or of any obligations issued thereunder to accelerate the maturity thereof or to require the Borrower, to prepay, redeem or repurchase such obligations in whole or in part or offer to prepay, redeem or repurchase such obligations in whole or in part;

(g)     there shall be an assignment for the benefit of creditors or any marshalling of assets and liabilities of the Borrower or any Guarantor;

(h)     the DIP Participant shall (i) fail to perform or comply with any term, covenant or agreement contained in §§5, 6, 10(c), 10(f) of the DIP Participation, or (ii) fail to perform or comply with any term, covenant or agreement contained in the DIP Participation and such failure continues for five (5) Business Days, in each case except for the DIP Participant's payment obligations under §1 of the DIP Participation;

(i)     there shall remain in force, undischarged, unsatisfied and unstayed, for more than thirty days any final judgment in respect of obligations arising after the Petition Date against the Borrower or any of its Subsidiaries that, with other outstanding final judgments, undischarged and in connection with obligations arising after the Petition Date, against the Borrower or any of its Subsidiaries exceeds in the aggregate (exclusive of any amounts fully covered by insurance (less any applicable deductible)) $2,000,000;

(j)     if any of the Loan Documents shall be cancelled, terminated, revoked or rescinded or the Administrative Agent's security interests, mortgages or liens in a substantial portion of the Collateral shall cease to be perfected, or shall cease to have the priority contemplated by the Security Documents, in each case otherwise than in accordance with the terms thereof or pursuant to any transaction permitted hereunder or with the express prior written agreement, consent or approval of the Lenders, or any action at law, suit or in equity or other legal proceeding to cancel, revoke or rescind any of the Loan Documents shall be commenced by or on behalf of the Borrower or any of its Subsidiaries party thereto or any of their respective stockholders, or any court or any other governmental or regulatory authority or agency of competent jurisdiction shall make a determination that, or issue a judgment, order, decree or ruling to the effect that, any one or more of the Loan Documents is illegal, invalid or unenforceable in accordance with the terms thereof;

- 83 -

(k)     The PBGC obtains a ruling from a court of competent jurisdiction that it is entitled to enforce any lien arising with respect to the Friendly Pension Plan with such lien having priority over any of the liens created under the Loan Documents other than with respect to the Friendly Pension Plan, the Borrower or any ERISA Affiliate incurs any termination liability to the PBGC or a Guaranteed Pension Plan pursuant to Title IV of ERISA in an aggregate amount exceeding $1,000,000, or the Borrower or any ERISA Affiliate is assessed withdrawal liability pursuant to Title IV of ERISA by a Multiemployer Plan requiring aggregate annual payments exceeding $100,000, or any of the following occurs with respect to a Guaranteed Pension Plan:  (i) an ERISA Reportable Event, or a failure to make a required installment or other payment (within the meaning of §302(f)(1) of ERISA), provided that such event (A) could reasonably be expected to result in liability of the Borrower or any of its Subsidiaries to the PBGC or such Guaranteed Pension Plan in an aggregate amount exceeding $100,000 and (B) could reasonably be expected to constitute grounds for the termination of such Guaranteed Pension Plan by the PBGC, for the appointment by the appropriate United States District Court of a trustee to administer such Guaranteed Pension Plan or for the imposition of a lien in favor of such Guaranteed Pension Plan; or (ii) the appointment by a United States District Court of a trustee to administer such Guaranteed Pension Plan; or (iii) the institution by the PBGC of proceedings to terminate such Guaranteed Pension Plan;

(l)     a Change of Control shall occur;

(m)     the Sun Guarantor shall (i) fail to perform or comply with any term, covenant or agreement contained in §§2, 3, 4, 6(c), 6(f), or 11 of the Sun Guaranty or contained in the DIP Participation Commitment Letter, or (ii) fail to perform or comply with any term, covenant or agreement contained in §§6(d) or 6(e) of the Sun Guaranty or contained in the DIP Participation Commitment Letter and such failure continues for five (5) Business Days;

(n)     any provision of the Sun Guaranty, the DIP Participation or the DIP Participation Commitment Letter shall at any time for any reason (other than pursuant to the express terms thereof) cease to be valid and binding on or enforceable against the Sun Guarantor or the DIP Participant, as applicable, or the validity or enforceability thereof shall be contested by any party thereto, or a proceeding shall be commenced by the Sun Guarantor, the DIP Participant or any Governmental Authority having jurisdiction over the Sun Guarantor or the DIP Participant, as applicable, seeking to establish the invalidity or unenforceability thereof, or the Sun Guarantor or the DIP Participant shall deny in writing that the Sun Guarantor or the DIP Participant, as applicable, has any liability or obligation purported to be created under the Sun Guaranty, the DIP Participation or the DIP Participation Commitment Letter, as applicable;

(o)     the parties to the Asset Purchase Agreement either terminate with the mutual consent of Borrower and DIP Participant, render ineffective or otherwise mutually consent to the cessation of the Asset Purchase Agreement or the DIP Participant elects to not pursue the transactions contemplated by the Asset Purchase Agreement as a result of, directly or indirectly, a Material Adverse Effect (as defined in the Asset Purchase Agreement); or

- 84 -

(p)    the occurrence of any of the following in the Chapter 11 Cases:

(i)    the bringing of a motion by the Borrower or any Guarantor, or the entry of an order or ruling (which has not been withdrawn, dismissed or reversed); (w) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Credit Agreement (unless such financing is proposed to refinance and pay in full the Obligations due under this Credit Agreement and the Pre-Petition Credit Agreement with the termination of all related lending commitments thereunder) that is senior or pari passu with the Obligations hereunder or the Obligations (as defined in the Pre-Petition Credit Agreement); (x) to grant any Lien other than Permitted Liens and the Carve-Out Amount upon or affecting any Collateral without the prior written consent of the Administrative Agent and the Required Lenders (unless the granting of such Lien is simultaneous with a refinancing to pay in full in cash all Obligations due under this Credit Agreement and the Pre-Petition Credit Agreement); (y) except as provided in the Financing Orders, to use cash collateral of the Administrative Agent or the Prior Agents under Section 363(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent and the Required Lenders; or (z) any other action or actions adverse to the Administrative Agent, the Lenders, Prior Agents or Prior Lenders or their rights and remedies hereunder or their interests in the Collateral or under the Pre-Petition Loan Documents;

(ii)    the filing of any plan of reorganization or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, by the Borrower or any Guarantor which plan does not propose to provide for the payment in full in cash of all Obligations under this Credit Agreement and Administrative Agent and the Required Lenders do not consent or otherwise agree to the treatment of their claims;

(iii)    the entry of an order in the Chapter 11 Cases confirming a plan or plans of reorganization that does not contain a provision for termination of the Commitment and repayment in full in cash of all the Obligations under this Credit Agreement on or before the effective date of such plan or plans;

(iv)    the entry of an order amending, supplementing, staying, vacating or otherwise modifying the Loan Documents, the Interim Order or the Final Order without the written consent of the Administrative Agent and the Required Lenders or the filing of a motion by Debtors for reconsideration with respect to the Interim Order or the Final Order;

(v)    the Final Order is not entered on or before a date that is 45 days after the Petition Date, or prior to or immediately following the expiration of the Interim Order;

(vi)    the payment by the Borrower or any Guarantor of, or application by the Borrower or any Guarantor for authority to pay, any Pre-Petition claim without the Administrative Agent's and the Required Lenders' prior written consent unless such payment is otherwise permitted under this Credit Agreement or provided pursuant to the First Day Orders;

- 85 -

(vii)    the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against any Agent, the Issuing Lender, any Lender or any of the Collateral or against the Prior Agents, any Prior Lender or any Collateral (as defined in the Pre-Petition Credit Agreement);

(viii)    the appointment of an interim or permanent trustee in the Chapter 11 Cases or the appointment of a receiver or an examiner in the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business, the reorganization of the Borrower or any Guarantor (or the Borrower or any Guarantor seeks or acquiesces in such relief), and the order appointing such trustee, receiver or examiner shall not be reversed or vacated within 60 days after the entry thereof;

(ix)    the sale without the Administrative Agent's and the Required Lenders' consent, of all or substantially all of the assets of the Loan Parties through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Cases, or otherwise, that does not in any such case provide for payment in full in cash of the Obligations and termination of Lenders' Commitment (or the Borrower or any Guarantor seeks or acquiesces in such relief);

(x)    the dismissal of the Chapter 11 Cases, or the conversion of the Chapter 11 Cases from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code (except as consented to by the Administrative Agent and the Required Lenders) or the Borrower or any Guarantor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code, conversion of the Chapter 11 Cases or otherwise;

(xi)    other than pursuant to the First Day Orders, the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral having a value in excess of $250,000, or (y) with respect to any Lien of or the granting of any Lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a Material Adverse Effect;

(xii)    the failure of the Borrower and its Subsidiaries to achieve the Milestones by the dates specified therein (or such later date as may be agreed to by the Administrative Agent in its sole discretion);

(xiii)    the entry of an order in the Chapter 11 Cases avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Credit Agreement or the other Loan Documents;

(xiv)    the failure of the Borrower or any Guarantor to perform any of its material obligations under the Interim Order or the Final Order, which adversely affects the interests of any of the Administrative Agent, the Issuing Lender and the Lenders, as reasonably determined by the Administrative Agent, the Issuing Lender and the Required Lenders, as the case may be;

(xv)    except as otherwise provided by the Financing Orders, the entry of an order in the Chapter 11 Cases granting any other super priority administrative claim or Lien equal or superior to that granted to Administrative Agent, on behalf of itself and/or the Lenders, the Issuing Lender and the Bank Product Providers (exclusive of the Carve-Out);

(xvi)    termination of the exclusive period for the Loan Parties to file a plan of reorganization in the Chapter 11 Cases; or

(xvii)    any of the Loan Parties' return of goods constituting Collateral pursuant to Section 546(g) of the Bankruptcy Code other than in accordance with any such program (a) approved pursuant to a First Day Order, or (b) otherwise approved by the Bankruptcy Court and consented to by the Required Lenders in writing;

then, and in any such event, so long as the same may be continuing, the Administrative Agent may, and upon the request of the Required Lenders shall, notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion or notice to, or hearing before, or order from the Bankruptcy Court (but subject to any applicable provisions of the Financing Orders) and without limitation of §13.2, by notice in writing to the Borrower (with a copy to the Committee and the United States Trustee) (i) declare all amounts owing with respect to this Credit Agreement, the Revolving Credit Loans and the other Loan Documents and all Reimbursement Obligations to be, and they shall thereupon forthwith become, immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower, (ii) direct any or all of the Borrower or any Guarantor to sell or otherwise dispose of any or all of the Collateral on terms and conditions reasonably acceptable to the Agents and the Required Lenders pursuant to Sections 363, 365 and other applicable provisions of the Bankruptcy Code (and, without limiting the foregoing, direct any of the Borrower or any Guarantor to assume and assign any lease or executory contract included in the Collateral to Administrative Agent's designees in accordance with and subject to Section 365 of the Bankruptcy Code), (iii) enter onto the premises of any of the Borrower or any Guarantor in connection with an orderly liquidation of the Collateral, and/or (iv) exercise any rights and remedies provided to the Administrative Agent under the Loan Documents or at law or equity, including all remedies provided for under the Code and, pursuant to the Interim Order and the Final Order, the automatic stay of Section 362 of the Bankruptcy Code shall be modified and vacated to permit the Administrative Agents and Lenders to exercise their remedies under this Credit Agreement and the Loan Documents (including, without limitation as contemplated by §8.13.2), without further notice, application or motion to, or hearing before, or order from, the Bankruptcy Court; provided, however, notwithstanding anything to the contrary herein, the Administrative Agent shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of any of the Borrower or any Guarantor in the Collateral only upon five (5) Business Days' prior written notice to such Person, counsel approved by the Bankruptcy Court for the Committee and the United States Trustee.

Upon the occurrence and during the continuance of an Event of Default and the exercise by the Administrative Agent, on behalf of the Lenders, of their rights and remedies under this Credit Agreement and the other Loan Documents, the Borrower shall, and shall cause the Guarantors to, use commercially reasonably efforts to assist the Administrative Agent and the

Lenders in effecting a sale or other disposition of the Collateral upon such terms as are reasonably acceptable to the Administrative Agent and the Required Lenders.

**13.2    Termination of Commitments**.  If any Event of Default shall have occurred and be continuing, the Administrative Agent may and, upon the request of the Required Lenders, shall, notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion or notice to, or hearing before, or order from the Bankruptcy Court (but subject to any applicable provisions of the Financing Orders), by notice to the Borrower (with a copy to the Committee and the United States Trustee), terminate the unused portion of the credit hereunder, and upon such notice being given such unused portion of the credit hereunder shall terminate immediately and each of the Lenders shall be relieved of all further obligations to make Loans and the Issuing Lender shall be relieved of all further obligations to issue, extend or renew Letters of Credit.  No termination of the credit hereunder shall relieve the Borrower or any of its Subsidiaries of any of the Obligations.

**13.3    Remedies**.  In case any one or more of the Events of Default shall have occurred and be continuing, and whether or not the Lenders shall have accelerated the maturity of the Loans pursuant to §13.1, each Lender, if owed any amount with respect to the Loans or the Reimbursement Obligations, may, with the consent of the Required Lenders but not otherwise, proceed to protect and enforce its rights by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in this Credit Agreement and the other Loan Documents or any instrument pursuant to which the Obligations to such Lender are evidenced, including as permitted by applicable law the obtaining of the ex parte appointment of a receiver, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of such Lender.  No remedy herein conferred upon any Lender or the Administrative Agent or the holder of any Revolving Credit Note or purchaser of any Letter of Credit Participation is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or any other provision of law.

**13.4    Distribution of Payments and Collateral Proceeds**.  In the event that, following the occurrence or during the continuance of any Event of Default, any monies are received by the Administrative Agent or any Lender, as the case may be (including, without limitation, any monies in connection with the enforcement of any of the Security Documents, or otherwise with respect to the realization upon any of the Collateral), such monies shall be distributed for application to all amounts owing under the Pre-Petition Credit Agreement and Pre-Petition Loan Documents until repaid in full and, upon satisfaction of all such amounts, as follows and except as otherwise provided herein with respect to Defaulting Lenders:

(a)    First, to the payment of, or (as the case may be) the reimbursement of the Administrative Agent for or in respect of all reasonable costs, expenses, disbursements and losses which shall have been incurred or sustained by the Administrative Agent in connection with the collection of such monies by the Administrative Agent, for the exercise, protection or enforcement by the Administrative Agent of all or any of the rights, remedies, powers and privileges of the Administrative Agent under this Credit Agreement or any of the other Loan Documents or in respect of the

- 88 -

Collateral or in support of any provision of adequate indemnity to the Administrative Agent against any taxes or liens which by law shall have, or may have, priority over the rights of the Administrative Agent to such monies;

(b)     Second, to ratably to pay the Obligations in respect of any fees, expense reimbursements, indemnities and other amounts then due to the Administrative Agent;

(c)     Third, ratably to pay the Obligations in respect of any fees, expense reimbursements, indemnities and other amounts (other than any fees in respect of Letters of Credit) then due to the Lenders;

(d)     Fourth, ratably to pay interest due in respect of the Revolving Credit Loans and the Swing Line Loans until paid in full;

(e)     Fifth, ratably (i) to pay the principal of all Revolving Credit Loans until paid in full, and (ii) to pay the principal of all Swing Line Loans until paid in full;

(f)     Sixth, to the Administrative Agent, to be held by the Administrative Agent, for the benefit of the Bank Product Providers, as cash collateral in an amount up to the amount the Administrative Agent in its Permitted Discretion, in consultation with the Bank Product Providers, determines to be the credit exposure of the Borrower and its Subsidiaries in respect of Bank Products,

(g)     Seventh, ratably to pay any fees in respect of Letters of Credit then due to Issuing Lender or any of the Lenders under the Loan Documents until paid in full,

(h)     Eighth, ratably to pay the principal of all amounts advanced under Letters of Credit that have not been reimbursed pursuant hereto;

(i)     Ninth, to the Administrative Agent, to be held by the Administrative Agent, for the benefit of Issuing Lender and those Lenders having a portion of the Risk Participation Liability, as cash collateral in an amount up to 105% of the Aggregate Letter of Credit Usage;

(j)     Tenth, to pay any other Obligations other than Obligations owed to Defaulting Lenders;

(k)     Eleventh, to pay any Obligations owed to Defaulting Lenders;

(l)     Twelfth, upon payment and satisfaction in full or other provisions for payment in full satisfactory to the Lenders and the Administrative Agent of all of the Obligations, to the payment of any obligations required to be paid pursuant to §9-608(a)(1)(C) or 9-615(a)(3) of the Uniform Commercial Code of the Commonwealth of Massachusetts; and

(m)     Thirteenth, the excess, if any, shall be returned to the Borrower or to such other Persons as are entitled thereto.

## 14.    THE ADMINISTRATIVE AGENT.

### 14.1    Authorization.

(a)     The Administrative Agent is authorized to take such action on behalf of each of the Lenders and to exercise all such powers as are hereunder and under any of the other Loan Documents and any related documents delegated to the Administrative Agent, together with such powers as are reasonably incident thereto, including the authority, without the necessity of any notice to or further consent of the Lenders, from time to time to take any action with respect to any Collateral or the Security Documents which may be necessary to perfect, maintain perfected or insure the priority of the security interest in and liens upon the Collateral granted pursuant to the Security Documents, provided that no duties or responsibilities not expressly assumed herein or therein shall be implied to have been assumed by the Administrative Agent.

(b)     The relationship between the Administrative Agent and each of the Lenders is that of an independent contractor. The use of the term "Administrative Agent" is for convenience only and is used to describe, as a form of convention, the independent contractual relationship between the Administrative Agent and each of the Lenders. Nothing contained in this Credit Agreement nor the other Loan Documents shall be construed to create an agency, trust or other fiduciary relationship between the Administrative Agent and any of the Lenders.

(c)     As an independent contractor empowered by the Lenders to exercise certain rights and perform certain duties and responsibilities hereunder and under the other Loan Documents, the Administrative Agent is nevertheless a "representative" of the Lenders, as that term is defined in Article 1 of the Uniform Commercial Code, for purposes of actions for the benefit of the Lenders and the Administrative Agent with respect to all collateral security and guaranties contemplated by the Loan Documents. Such actions include the designation of the Administrative Agent as "secured party," "mortgagee" or the like on all financing statements and other documents and instruments, whether recorded or otherwise, relating to the attachment, perfection, priority or enforcement of any security interests, mortgages or deeds of trust in collateral security intended to secure the payment or performance of any of the Obligations, all for the benefit of the Lenders and the Administrative Agent.

(d)     Without limiting the generality of the foregoing, each Lender hereby authorizes the Administrative Agent to consent, on behalf of each Lender, to the Interim Order and the Final Order.

### 14.2    Employees and Administrative Agents. The Administrative Agent may exercise its powers and execute its duties by or through employees or agents and shall be entitled to take, and to rely on, advice of counsel concerning all matters pertaining to its rights and duties under this Credit Agreement and the other Loan Documents. The Administrative Agent may

- 90 -

utilize the services of such Persons as the Administrative Agent in its sole discretion may reasonably determine, and all reasonable fees and expenses of any such Persons shall be paid by the Borrower.

**14.3    No Liability**. Neither the Administrative Agent nor any of its shareholders, directors, officers or employees nor any other Person assisting them in their duties nor any agent or employee thereof, shall be liable for any waiver, consent or approval given or any action taken, or omitted to be taken, in good faith by it or them hereunder or under any of the other Loan Documents, or in connection herewith or therewith, or be responsible for the consequences of any oversight or error of judgment whatsoever, except that the Administrative Agent or such other Person, as the case may be, may be liable for losses due to its willful misconduct or gross negligence.

**14.4    No Representations**.

**14.4.1    General**. The Administrative Agent shall not be responsible for the execution or validity or enforceability of this Credit Agreement, the Revolving Credit Notes, the Letters of Credit, any of the other Loan Documents or any instrument at any time constituting, or intended to constitute, collateral security for the Revolving Credit Notes, or for the value of any such collateral security or for the validity, enforceability or collectability of any such amounts owing with respect to the Revolving Credit Notes, or for any recitals or statements, warranties or representations made herein or in any of the other Loan Documents or in any certificate or instrument hereafter furnished to it by or on behalf of the Borrower or any of its Subsidiaries, or be bound to ascertain or inquire as to the performance or observance of any of the terms, conditions, covenants or agreements herein or in any instrument at any time constituting, or intended to constitute, collateral security for the Revolving Credit Notes or to inspect any of the properties, books or records of the Borrower or any of its Subsidiaries. The Administrative Agent shall not be bound to ascertain whether any notice, consent, waiver or request delivered to it by the Borrower or any holder of any of the Revolving Credit Notes shall have been duly authorized or is true, accurate and complete. The Administrative Agent has not made nor does it now make any representations or warranties, express or implied, nor does it assume any liability to the Lenders, with respect to the creditworthiness or financial conditions of the Borrower or any of its Subsidiaries. Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender, and based upon such information and documents as it has deemed appropriate, made its own credit analysis and decision to enter into this Credit Agreement.

**14.4.2    Closing Documentation, etc**. For purposes of determining compliance with the conditions set forth in §11, each Lender that has executed this Credit Agreement shall be deemed to have consented to, approved or accepted, or to be satisfied with, each document and matter either sent, or made available, by the Administrative Agent to such Lender for consent, approval, acceptance or satisfaction, or required thereunder to be consented to or approved by or acceptable or satisfactory to such Lender.

**14.5    Payments**.

**14.5.1** **Payments to Administrative Agent**. A payment by the Borrower to the Administrative Agent hereunder or any of the other Loan Documents for the account of any Lender shall constitute a payment to such Lender. The Administrative Agent agrees promptly to distribute to each Lender such Lender's pro rata share of payments received by the Administrative Agent for the account of the Lenders except as otherwise expressly provided herein or in any of the other Loan Documents.

**14.5.2** **Distribution by Administrative Agent**. If in the opinion of the Administrative Agent the distribution of any amount received by it in such capacity hereunder, under the Revolving Credit Notes or under any of the other Loan Documents might involve it in liability, it may refrain from making distribution until its right to make distribution shall have been adjudicated by a court of competent jurisdiction. If a court of competent jurisdiction shall adjudge that any amount received and distributed by the Administrative Agent is to be repaid, each Person to whom any such distribution shall have been made shall either repay to the Administrative Agent its proportionate share of the amount so adjudged to be repaid or shall pay over the same in such manner and to such Persons as shall be determined by such court.

**14.6** **Holders of Revolving Credit Notes**. The Administrative Agent may deem and treat the payee of any Revolving Credit Note or the purchaser of any Letter of Credit Participation as the absolute owner or purchaser thereof for all purposes hereof until it shall have been furnished in writing with a different name by such payee or by a subsequent holder, assignee or transferee.

**14.7** **Indemnity**. The Lenders ratably agree hereby to indemnify and hold harmless the Administrative Agent and its affiliates from and against any and all claims, actions and suits (whether groundless or otherwise), losses, damages, costs, expenses (including any expenses for which the Administrative Agent or such affiliate has not been reimbursed by the Borrower as required by §16.2), liabilities and payments of every nature and character (collectively, the "Indemnified Liabilities") arising out of or related to this Credit Agreement, the Revolving Credit Loans, or any of the other Loan Documents or the transactions contemplated or evidenced hereby or thereby, or the Administrative Agent's actions taken hereunder or thereunder, except to the extent that any of the same shall be directly caused by the Administrative Agent's willful misconduct or gross negligence. Without limitation of the foregoing, each Lender shall pay to Administrative Agent promptly upon demand an amount equal to such Lender's Commitment Percentage of any Indemnified Liabilities incurred by Administrative Agent.

**14.8** **Administrative Agent as Lender**. In its individual capacity, WFCF shall have the same obligations and the same rights, powers and privileges in respect to its Commitment and the Loans made by it, and as the holder of any of the Revolving Credit Notes and as the purchaser of any Letter of Credit Participations, as it would have were it not also the Administrative Agent.

**14.9** **Resignation**. The Administrative Agent may resign at any time by giving sixty (60) days' prior written notice thereof to the Lenders and the Borrower. Upon any such resignation, the Required Lenders shall have the right to appoint a successor Administrative Agent. Unless an Event of Default shall have occurred and be continuing, such successor

- 92 -

Administrative Agent shall be reasonably acceptable to the Borrower. If no successor Administrative Agent shall have been so appointed by the Required Lenders and shall have accepted such appointment within thirty (30) days after the retiring Administrative Agent's giving of notice of resignation, then the retiring Administrative Agent may, on behalf of the Lenders, appoint a successor Administrative Agent, which shall be a financial institution having a rating of not less than A or its equivalent by S&P. Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations hereunder. After any retiring Administrative Agent's resignation, the provisions of this Credit Agreement and the other Loan Documents shall continue in effect for its benefit in respect of any actions taken or omitted to be taken by it while it was acting as Administrative Agent.

**14.10  Notification of Defaults and Events of Default**. The Administrative Agent shall not be deemed to have knowledge or notice of the occurrence of a Default unless the Administrative Agent has received a written notice from a Lender or the Borrower specifying such Default and stating that such notice is a "Notice of Default." In the event that the Administrative Agent receives such a notice of the occurrence of a Default, the Administrative Agent shall give prompt notice thereof to the Lenders. Each Lender hereby agrees that, upon learning of the existence of a Default or an Event of Default, it shall promptly notify the Administrative Agent thereof.

**14.11  Duties in the Case of Enforcement**. In case one or more Events of Default have occurred and shall be continuing, and whether or not acceleration of the Obligations shall have occurred, the Administrative Agent shall, if (a) so requested by the Required Lenders and (b) the Lenders have provided to the Administrative Agent such additional indemnities and assurances against expenses and liabilities as the Administrative Agent may reasonably request, proceed to enforce the provisions of the Security Documents authorizing the sale or other disposition of all or any part of the Collateral and exercise all or any such other legal and equitable and other rights or remedies as it may have in respect of such Collateral. The Required Lenders may direct the Administrative Agent in writing as to the method and the extent of any such sale or other disposition, the Lenders hereby agreeing to indemnify and hold the Administrative Agent, harmless from all liabilities incurred in respect of all actions taken or omitted in accordance with such directions; provided that the Administrative Agent need not comply with any such direction to the extent that the Administrative Agent reasonably believes the Administrative Agent's compliance with such direction to be unlawful or commercially unreasonable in any applicable jurisdiction.

**14.12  Release of Collateral**. The Lenders irrevocably authorize the Administrative Agent, at its option and in its discretion, to release any Lien granted to or held by the Administrative Agent upon any Collateral: (a) upon termination of the Commitments and payment in full of all Loans and all other obligations known to the Administrative Agent and payable under this Credit Agreement or any other Loan Document; (b) constituting property sold or to be sold or disposed of as part of or in connection with any disposition permitted hereunder; (c) constituting property in which the Borrower or any Restricted Subsidiary owned no interest at the time the Lien was granted or at any time thereafter; (d) constituting property leased to the

Borrower or any Restricted Subsidiary under a lease which has expired or been terminated in a transaction permitted under this Credit Agreement or is about to expire and which has not been, and is not intended by the Borrower or such Restricted Subsidiary to be, renewed or extended; (e) consisting of an instrument evidencing Indebtedness or other debt instrument, if the indebtedness thereby has been paid in full in cash; or (f) if approved, authorized or ratified in writing by the Required Lenders or, if required by §16.12, all the Lenders. Upon request by the Administrative Agent at any time, the Lenders will confirm in writing the Administrative Agent's authority to release particular types or items of Collateral pursuant to this §14.12.

**14.13 Actions in Concert.** Anything in this Credit Agreement to the contrary notwithstanding, each Lender hereby agrees with each other Lender that no Lender shall take any action to protect or enforce its rights arising out of this Credit Agreement (including exercising any rights of setoff) without first obtaining the prior written consent of the Administrative Agent and the Required Lenders, it being the intent of the Lenders that any such action to protect or enforce rights under this Credit Agreement shall be taken in concert and at the direction or with the consent of the Administrative Agent or the Required Lenders and as provided in §13.1 though §13.4.

**14.14 Enforcement.** Notwithstanding anything to the contrary contained herein or in any other Loan Document, the authority to enforce rights and remedies hereunder and under the Loan Documents against the Borrower and Guarantors, or any of them, shall be vested exclusively in, and all actions and proceedings at law in connection with such enforcement shall be instituted and maintained exclusively by, the Administrative Agent or as the Required Lenders may require or otherwise direct the Administrative Agent, as applicable, for the benefit of all Lenders and the Issuing Lender; provided, however, that the foregoing shall not prohibit (a) the Administrative from exercising on its own behalf the rights and remedies that inure to its benefit (solely in its capacity as Administrative Agent) hereunder and under the other Loan Documents, (b) the Issuing Lender from exercising the rights and remedies that inure to its benefit (solely in its capacity as Issuing Lender), (c) any Lender from exercising setoff rights in accordance with, and subject to, the terms of this Credit Agreement, or (d) any Lender from filing proofs of claim or appearing and filing pleadings on its own behalf during the pendency of a proceeding relative to the Borrower and Guarantors, or any of them, under any bankruptcy or insolvency law.

## 15. ASSIGNMENT AND PARTICIPATION.

**15.1 Conditions to Assignment by Lenders.** Except as provided herein, each Lender may assign to one or more commercial banks, other financial institutions or other Persons, all or a portion of its interests, rights and obligations under this Credit Agreement (including all or a portion of its Commitment Percentage, Letter of Credit Commitment Percentage, Commitment and Letter of Credit Commitment Percentage and the same portion of the Loans at the time owing to it, the Revolving Credit Notes held by it and its participating interest in the risk relating to any Letters of Credit); provided that (a) each of the Administrative Agent and, unless a Default or Event of Default shall have occurred and be continuing, the Borrower shall have given its prior written consent to such assignment, which consent, in the case of the Administrative Agent and the Borrower, will not be unreasonably withheld; except that the consent of the Borrower or the Administrative Agent shall not be required in connection

with any assignment by a Lender to (i) an existing Lender or (ii) a Lender Affiliate of such Lender, (b) each assignment (or, in the case of assignments by a Lender to its Lender Affiliates, the aggregate holdings of such Lender and its Lender Affiliates after giving effect to such assignments), shall be in an amount not less than $2,500,000 and in whole multiple increments of $500,000 in excess thereof (or such lesser amount as shall constitute the aggregate holdings of such Lender), and (c) the parties to such assignment shall execute and deliver to the Administrative Agent, for recording in the Register (as hereinafter defined), an Assignment and Acceptance, together with any Revolving Credit Notes subject to such assignment. Upon such execution, delivery, acceptance and recording, from and after the effective date specified in each Assignment and Acceptance, which effective date shall be at least five (5) Business Days after the execution thereof, (y) the assignee thereunder shall be a party hereto and, to the extent provided in such Assignment and Acceptance, have the rights and obligations of a Lender hereunder, and shall deliver to the Administrative Agent and the Borrower any certificates, documents or other evidence required pursuant to §§ 5.2.3 and 5.2.4, and (z) the assigning Lender shall, to the extent provided in such assignment and upon payment to the Administrative Agent of the assignment fee referred to in §15.3, be released from its obligations under this Credit Agreement.

**15.2 Certain Representations and Warranties; Limitations; Covenants.** By executing and delivering an Assignment and Acceptance, the parties to the assignment thereunder confirm to and agree with each other and the other parties hereto as follows:

(a) other than the representation and warranty that it is the legal and beneficial owner of the interest being assigned thereby free and clear of any adverse claim, the assigning Lender makes no representation or warranty, express or implied, and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Credit Agreement or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or the attachment, perfection or priority of any security interest or mortgage;

(b) the assigning Lender makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower and its Subsidiaries or any other Person primarily or secondarily liable in respect of any of the Obligations, or the performance or observance by the Borrower and its Subsidiaries or any other Person primarily or secondarily liable in respect of any of the Obligations of any of their obligations under this Credit Agreement or any of the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto;

(c) such assignee confirms that it has received a copy of this Credit Agreement, together with copies of the most recent financial statements referred to in §§7.4 and 8.4 and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance;

(d) such assignee will, independently and without reliance upon the assigning Lender, the Administrative Agent or any other Lender and based on such

documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Credit Agreement;

(e)       such assignee appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers under this Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent by the terms hereof or thereof, together with such powers as are reasonably incidental thereto;

(f)       such assignee agrees that it will perform in accordance with their terms all of the obligations that by the terms of this Credit Agreement are required to be performed by it as a Lender;

(g)       such assignee represents and warrants that it is legally authorized to enter into such Assignment and Acceptance;

(h)       such assignee acknowledges that it has made arrangements with the assigning Lender satisfactory to such assignee with respect to its pro rata share of Letter of Credit Fees in respect of outstanding Letters of Credit; and

(i)       such assignee acknowledges that it has complied with the provisions of §5.2.3 to the extent applicable;

provided, that no assignment and delegation may be made to any Person if, at the time of such assignment and delegation, the Borrower would be obligated to pay any greater amount under §§5.2.2, 5.6 or 5.7 to the assignee than the Borrower is then obligated to pay to the assigning Lender under such Sections (and if any assignment is made in violation of the foregoing, the Borrower will not be required to pay the incremental amounts).

15.3    **Register**.  The Administrative Agent shall maintain a copy of each Assignment and Acceptance delivered to it and a register or similar list (the "Register") for the recordation of the names and addresses of the Lenders and the Commitment Percentage of, and principal amount of the Revolving Credit Loans owing to and Letter of Credit Participations purchased by, the Lenders from time to time.  The entries in the Register shall be conclusive, in the absence of manifest error, and the Borrower, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Credit Agreement.  The Register shall be available for inspection by the Borrower and the Lenders at any reasonable time and from time to time upon reasonable prior notice.  Upon each such recordation, the assigning Lender agrees to pay to the Administrative Agent an assignment fee in the sum of $3,500.

15.4    **New Revolving Credit Notes**.  Upon its receipt of an Assignment and Acceptance executed by the parties to such assignment, together with any Revolving Credit Note subject to such assignment, the Administrative Agent shall (a) record the information contained therein in the Register, and (b) give prompt notice thereof to the Borrower and the Lenders (other than the assigning Lender).  Upon the request of the assignee Lender, within five (5) Business Days after receipt of such notice, the Borrower, at its own expense, shall execute and deliver to the Administrative Agent a Revolving Credit Note to the order of such assignee Lender in an

- 96 -

amount equal to the amount assumed by such assignee Lender pursuant to such Assignment and Acceptance and, upon the request of the assigning Lender if such assigning Lender has retained some portion of its obligations hereunder, a new Revolving Credit Note to the order of such assigning Lender in an amount equal to the amount retained by it hereunder. If applicable, such new Revolving Credit Notes shall provide that they are replacements for the surrendered Revolving Credit Notes, shall be in an aggregate principal amount equal to the aggregate principal amount of the surrendered Revolving Credit Notes, and shall otherwise be in substantially the form of the assigned Revolving Credit Notes. Any new Revolving Credit Notes executed pursuant to this §15.4 shall be dated the effective date of such Assignment and Acceptance and any surrendered Revolving Credit Notes shall be cancelled and returned to the Borrower.

**15.5 Participations.** Each Lender may sell participations to one or more Lenders or other entities in all or a portion of such Lender's rights and obligations under this Credit Agreement and the other Loan Documents; provided that (a) each such participation shall be in an amount of not less than $2,500,000, (b) any such sale or participation shall not affect the rights and duties of the selling Lender hereunder to the Borrower, (c) the Borrower and the Administrative Agent shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under each Loan Document, (d) the only rights granted to the participant pursuant to such participation arrangements with respect to waivers, amendments or modifications of the Loan Documents shall be the rights to approve waivers, amendments or modifications that would reduce the principal of or the interest rate on any Loans, extend the term or increase the amount of the Commitment or Letter of Credit Commitment of such Lender as it relates to such participant, reduce the amount of any Commitment Fee or Letter of Credit Fees to which such participant is entitled, extend any regularly scheduled payment date for principal or interest, release all or substantially all of the Collateral or release all or substantially all of the Guarantors from their guaranty obligations under the Guaranties or the Sun Guarantor under the Sun Guaranty, and (e) in connection with such participation, each participant shall agree to comply with the provisions of §§5.2.3 and 5.2.4 to the same extent as if it were a Lender. The Borrower and the Guarantors each hereby acknowledge and accept the DIP Participation and the participation of the amounts set forth therein, on the terms and conditions thereof.

**15.6 Assignee or Participant Affiliated with the Borrower.** If any assignee Lender is an Affiliate of the Borrower, then any such assignee Lender shall have no right to vote as a Lender hereunder or under any of the other Loan Documents for purposes of granting consents or waivers or for purposes of agreeing to amendments or other modifications to any of the Loan Documents or for purposes of making requests to the Administrative Agent pursuant to §13.1 or §13.2, and the determination of the Required Lenders shall for all purposes of this Credit Agreement and the other Loan Documents be made without regard to such assignee Lender's interest in any of the Loans or Reimbursement Obligations. If any Lender sells a participating interest in any of the Loans or Reimbursement Obligations to a participant, and such participant is the Borrower or an Affiliate of the Borrower, then such transferor Lender shall promptly notify the Administrative Agent of the sale of such participation. A transferor Lender shall have no right to vote as a Lender hereunder or under any of the other Loan Documents for purposes of granting consents or waivers or for purposes of agreeing to amendments or modifications to any of the Loan Documents or for purposes of making requests

to the Administrative Agent pursuant to §13.1 or §13.2 to the extent that such participation is beneficially owned by the Borrower or any Affiliate of the Borrower, and the determination of the Required Lenders shall for all purposes of this Credit Agreement and the other Loan Documents be made without regard to the interest of such transferor Lender in the Loans or Reimbursement Obligations to the extent of such participation.

15.7 **Miscellaneous Assignment Provisions**. Any assigning Lender shall retain its rights to be indemnified pursuant to §16.3 with respect to any claims or actions arising prior to the date of such assignment. Anything contained in this §15 to the contrary notwithstanding, any Lender may at any time pledge or assign a security interest in all or any portion of its interest and rights under this Credit Agreement (including all or any portion of its Revolving Credit Loans) to secure obligations of such Lender, including any pledge or assignment to secure obligations to (a) any of the twelve Federal Reserve Banks organized under §4 of the Federal Reserve Act, 12 U.S.C. §341 and (b) with respect to any Lender that is a fund that invests in bank loans, to any lender or any trustee for, or any other representative of, holders of obligations owed or securities issued by such fund as security for such obligations or securities or any institutional custodian for such fund or for such lender. Any foreclosure or similar action by any Person in respect of such pledge or assignment shall be subject to the other provisions of this §15. No such pledge or the enforcement thereof shall release the pledgor Lender from its obligations hereunder or under any of the other Loan Documents, provide any voting rights hereunder to the pledgee thereof, or affect any rights or obligations of the Borrower or Administrative Agent hereunder.

15.8 **Assignment by Borrower**. The Borrower shall not assign or transfer any of its rights or obligations under any of the Loan Documents without the prior written consent of each of the Lenders.

## 16. PROVISIONS OF GENERAL APPLICATIONS.

16.1 **Setoff**. The Borrower hereby grants to the Administrative Agent and each of the Lenders a continuing lien, security interest and right of setoff as security for all liabilities and obligations to the Administrative Agent and each Lender, whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Administrative Agent or such Lender or any Lender Affiliate and their successors and assigns or in transit to any of them, in each case notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion to, hearing before, or order from, the Bankruptcy Court (but subject in all cases to the provisions of the Financing Orders). Regardless of the adequacy of any collateral, if any of the Obligations are due and payable and have not been paid or any Event of Default shall have occurred, any deposits or other sums credited by or due from any of the Lenders to the Borrower and any securities or other property of the Borrower in the possession of such Lender may, after giving prior written notice thereof to the Borrower, be applied to or set off by such Lender against the payment of Obligations and any and all other liabilities, direct, or indirect, absolute or contingent, due and owing, now existing or hereafter arising, of the Borrower to such Lender. ANY AND ALL RIGHTS TO REQUIRE ANY LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO

SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF BORROWER ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED. Each of the Lenders agree with each other Lender that (a) if an amount to be set off is to be applied to Indebtedness of the Borrower to such Lender, other than the Obligations owed to such Lender, such amount shall be applied ratably to such other Indebtedness and to the Obligations owed to such Lender, and (b) if such Lender shall receive from the Borrower, whether by voluntary payment, exercise of the right of setoff, counterclaim, cross action, enforcement of the Obligations owed to such Lender by proceedings against the Borrower at law or in equity or by proof thereof in bankruptcy, reorganization, liquidation, receivership or similar proceedings, or otherwise, and shall retain and apply to the payment of the Obligations owed to, such Lender any amount in excess of its ratable portion of the payments received by all of the Lenders with respect to the Obligations owed to all of the Lenders, such Lender will make such disposition and arrangements with the other Lenders with respect to such excess, either by way of distribution, pro tanto assignment of claims, subrogation or otherwise as shall result in each Lender receiving in respect of the Obligations owed to it, its proportionate payment as contemplated by this Credit Agreement; provided that if all or any part of such excess payment is thereafter recovered from such Lender, such disposition and arrangements shall be rescinded and the amount restored to the extent of such recovery, but without interest.

16.2 **Expenses**. The Borrower agrees to pay (a) any taxes (including any interest and penalties in respect thereto) payable by the Administrative Agent or any of the Lenders (other than franchise taxes and taxes based upon the Administrative Agent's or any Lender's net income, profits or receipts) on or with respect to the transactions contemplated by this Credit Agreement (the Borrower hereby agreeing to indemnify the Administrative Agent and each Lender with respect thereto), (b) the reasonable fees, expenses and disbursements of the Administrative Agent's Special Counsel or one (1) local counsel in any relevant jurisdiction to the Administrative Agent incurred in connection with the preparation, syndication, review, administration or interpretation of the Loan Documents, the Financing Orders, and other instruments mentioned herein, each closing hereunder, any amendments, modifications, approvals, consents or waivers hereto or hereunder, or the cancellation of any Loan Document upon payment in full in cash of all of the Obligations or pursuant to any terms of such Loan Document for providing for such cancellation, (c) the fees, expenses and disbursements of the Administrative Agent or any of its affiliates incurred by the Administrative Agent or such affiliate in connection with the preparation, syndication, administration or interpretation of the Loan Documents and other instruments mentioned herein, including all title insurance premiums and surveyor, engineering, appraisal, environmental reports to the extent required by this Credit Agreement and examination charges, (d) any fees, costs, expenses and bank charges, including bank charges for returned checks, incurred by the Administrative Agent in establishing, maintaining or handling agency accounts, lock box accounts and other accounts for the collection of any of the Collateral, (e) all reasonable out-of-pocket expenses (including without limitation reasonable attorneys' fees and costs, which attorneys may be employees of any Lender (provided, that there is no duplication of effort in respect of the expenses which are charged to the Borrower) or the Administrative Agent, and reasonable consulting, accounting, appraisal, investment bankruptcy and similar professional fees and charges) incurred by any Lender or the Administrative Agent in connection with (i) the enforcement of or preservation of rights under any of the Loan Documents against the Borrower or any of its Subsidiaries or the administration thereof after a Default or an Event of Default has occurred and is continuing (including the

negotiation of any restructuring or "work-out" with the Borrower, whether or not consummated) and (ii) any litigation, proceeding or dispute whether arising hereunder or otherwise, in any way related to any Lender's or the Administrative Agent's relationship with the Borrower or any of its Subsidiaries, (f) all reasonable fees, expenses and disbursements of the Administrative Agent incurred in connection with UCC searches, UCC filings, intellectual property searches, intellectual property filings or mortgage recordings and (g) the reasonable fees, expenses and disbursements of the Administrative Agent and the Administrative Agent's Special Counsel and Advisors in connection with the preparation, reproduction, delivery and review of pleadings, documents and reports related to the Chapter 11 Cases and any subsequent case under Chapter 7 of the Bankruptcy Code, attendance at meetings, court hearings or conferences related to the Chapter 11 Cases and any subsequent case under Chapter 7 of the Bankruptcy Code, and the general monitoring of the Chapter 11 Cases and any subsequent case under Chapter 7 of the Bankruptcy Code. The covenants contained in this §16.2 shall survive payment or satisfaction in full of all other obligations. In respect of §16.2(e), prior to the occurrence and continuance of a Default, the Administrative Agent will notify (telephonically or otherwise, as determined by the Administrative Agent in its reasonable discretion) the Borrower prior to the engagement of any outside business consulting or audit services. The Borrower acknowledges that Administrative Agent has engaged CTS Capital Advisors, LLC for consulting services.

      **16.3   Indemnification**. The Borrower agrees to indemnify and hold harmless the Administrative Agent, its affiliates and the Lenders (collectively, the "Indemnitees") from and against any and all claims, actions and suits whether groundless or otherwise, and from and against any and all liabilities, losses, damages and expenses of every nature and character arising out of this Credit Agreement or any of the other Loan Documents or the transactions contemplated hereby and incurred by or imposed on the Indemnitees including, without limitation, (a) any actual or proposed use by the Borrower or any of its Subsidiaries of the proceeds of any of the Loans or Letters of Credit, (b) (intentionally omitted), (c) the reversal or withdrawal of any provisional credits granted by the Administrative Agent upon the transfer of funds from lock box, bank agency, concentration accounts or otherwise under any cash management arrangements with the Parent or any Subsidiary or in connection with the provisional honoring of funds transfers, checks or other items, (d) any actual or alleged infringement of any patent, copyright, trademark, service mark or similar right of the Parent or any of its Subsidiaries comprised in the Collateral, (e) the Parent or any of its Subsidiaries entering into or performing this Credit Agreement or any of the other Loan Documents or (f) with respect to the Parent and its Subsidiaries and their respective properties and assets, the violation of any Environmental Law, the handling, disposal, escape, seepage, leakage, spillage, discharge, emission, release or threatened release of any Hazardous Substances or any action, suit, proceeding or investigation brought or threatened with respect to any Hazardous Substances (including, but not limited to, claims with respect to wrongful death, personal injury or damage to property) (all of the foregoing, the "Indemnified Liabilities"), in each case including, without limitation, the reasonable fees and disbursements of counsel and, without duplication of effort, allocated costs of internal counsel incurred in connection with any such investigation, litigation or other proceeding; provided, that the Borrower shall have no obligation hereunder to any Indemnitee with respect to any Indemnified Liabilities to the extent such Indemnitee's liabilities result from the gross negligence or willful misconduct of such Indemnitee as determined by a final non-appealable adjudication by a court of competent jurisdiction. In litigation, or the preparation therefor, the Lenders and the Administrative Agent and its affiliates shall be entitled

to select their own counsel and, in addition to the foregoing indemnity, the Borrower agrees to pay promptly the reasonable fees and expenses of such counsel. If, and to the extent that the obligations of the Borrower under the first sentence of this §16.3 are unenforceable for any reason (other than due to the operation of the proviso to such first sentence), the Borrower hereby agrees to make the maximum contribution to the payment in satisfaction of such obligations which is permissible under applicable law. The covenants contained in this §16.3 shall survive payment or satisfaction in full of all other Obligations.

### 16.4    Treatment of Certain Confidential Information.

      **16.4.1    Confidentiality.** Each of the Lenders and the Administrative Agent agrees, on behalf of itself and each of its affiliates, directors, officers, employees and representatives, to use reasonable precautions to keep confidential, in accordance with their customary procedures for handling confidential information of the same nature and in accordance with safe and sound banking practices, any non-public information supplied to it by the Borrower or any of its Subsidiaries pursuant to this Credit Agreement that is identified by such Person as being confidential at the time the same is delivered to the Lenders or the Administrative Agent, provided that nothing herein shall limit the disclosure of any such information (a) after such information shall have become public other than through a violation of this §16.4, or becomes available to any of the Lenders or the Administrative Agent on a nonconfidential basis from a source other than the Borrower, (b) to the extent required by statute, rule, regulation or judicial process, (c) to counsel for any of the Lenders or the Administrative Agent, (d) to bank examiners or any other regulatory authority having jurisdiction over any Lender or the Administrative Agent, or to auditors or accountants, (e) to the Administrative Agent, any Lender or any Financial Affiliate, (f) in connection with any litigation to which any one or more of the Lenders, the Administrative Agent or any Financial Affiliate is a party, or in connection with the enforcement of rights or remedies hereunder or under any other Loan Document, (g) to a Lender Affiliate or a Subsidiary or affiliate of the Administrative Agent, (h) to any actual or prospective assignee or participant or any actual or prospective counterparty (or its advisors) to any swap or derivative transactions referenced to credit or other risks or events arising under this Credit Agreement or any other Loan Document so long as such assignee, participant or counterparty, as the case may be, agrees to be bound by the provisions of §16.4 or (i) with the consent of the Borrower. Moreover, each of the Administrative Agent, the Lenders and any Financial Affiliate is hereby expressly permitted by the Borrower to refer to any of the Borrower and its Subsidiaries in connection with any advertising, promotion or marketing undertaken by the Administrative Agent, such Lender or such Financial Affiliate and, for such purpose, the Administrative Agent, such Lender or such Financial Affiliate may utilize any trade name, trademark, logo or other distinctive symbol associated with the Borrower or any of its Subsidiaries or any of their businesses.

      **16.4.2    Prior Notification.** Unless specifically prohibited by applicable law or court order, each of the Lenders and the Administrative Agent shall, prior to disclosure thereof, notify the Borrower of any request for disclosure of any such non-public information by any governmental agency or representative thereof (other than any such request in connection with an examination of the financial condition of such Lender by such governmental agency) or pursuant to legal process.

- 101 -

**16.4.3** **Other.** In no event shall any Lender or the Administrative Agent be obligated or required to return any materials furnished to it or any Financial Affiliate by the Borrower or any of its Subsidiaries. The obligations of each Lender under this §16.4 shall supersede and replace the obligations of such Lender under any confidentiality letter in respect of this financing signed and delivered by such Lender to the Borrower prior to the date hereof and shall be binding upon any assignee of, or purchaser of any participation in, any interest in any of the Loans or Reimbursement Obligations from any Lender.

**16.5** **Survival of Covenants, etc.** All covenants, agreements, representations and warranties made herein, in the Revolving Credit Notes, in any of the other Loan Documents or in any documents or other papers delivered by or on behalf of the Borrower or any of its Subsidiaries pursuant hereto shall be deemed to have been relied upon by the Lenders and the Administrative Agent, notwithstanding any investigation heretofore or hereafter made by any of them, and shall survive the making by the Lenders of any of the Loans and the issuance, extension or renewal of any Letters of Credit, as herein contemplated, and shall continue in full force and effect so long as any Letter of Credit or any amount due under this Credit Agreement or the Revolving Credit Notes or any of the other Loan Documents remains outstanding or any Lender has any obligation to make any Loans or the Administrative Agent has any obligation to issue, extend or renew any Letter of Credit, and for such further time as may be otherwise expressly specified in this Credit Agreement. All statements contained in any certificate or other paper delivered to any Lender or the Administrative Agent at any time by or on behalf of the Borrower or any of its Subsidiaries pursuant hereto or in connection with the transactions contemplated hereby shall constitute representations and warranties by the Borrower or such Subsidiary hereunder.

**16.6** **Notices.** Except as otherwise expressly provided in this Credit Agreement, all notices and other communications made or required to be given pursuant to this Credit Agreement or the Revolving Credit Notes or any Letter of Credit Applications shall be in writing and shall be delivered in hand, mailed by United States registered or certified first-class mail, postage prepaid, sent by overnight courier, or sent by telegraph, telecopy or facsimile and confirmed by delivery via courier or postal service, addressed as follows:

(a) if to the Borrower, at 1855 Boston Road, Wilbraham, Massachusetts 01095, Attention: Paul Hoagland, with a mandatory copy to each of (i) Aaron Parker at the same address and (ii) Kirkland & Ellis LLP at 601 Lexington Avenue, New York, New York 10022, Attention: Leonard Klingbaum, or, in each case, at such other address for notice as the Borrower shall last have furnished in writing to the Person giving the notice;

(b) if to the Administrative Agent, at: Wells Fargo Capital Finance, Inc., 2450 Colorado Avenue, Suite 3000 West, Santa Monica, California 90404, Attn: Business Finance Division Manager, with a mandatory copy to each of (i) Paul Hastings LLP, 600 Peachtree Street NE, Suite 2400, Atlanta, Georgia 30308, Attention: Jesse H. Austin, III and (ii) Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, California 90071-2371, Attention: Peter S. Burke or, in each case, at such other address for notice as the Administrative Agent shall last have furnished in writing to the Person giving the notice; and

- 102 -

(c)     if to any Lender, at such Lender's address set forth on Schedule 1 hereto, or such other address for notice as such Lender shall have last furnished in writing to the Person giving the notice.

Any such notice or demand shall be deemed to have been duly given or made and to have become effective (i) if delivered by hand, overnight courier or facsimile to a responsible officer of the party to which it is directed, at the time of the receipt thereof by such officer or the sending of such facsimile, and (ii) if sent by registered or certified first-class mail, postage prepaid, on the third Business Day following the mailing thereof.

**16.7**   **Governing Law; Etc.**

**16.7.1**   THE VALIDITY OF THIS CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS (UNLESS EXPRESSLY PROVIDED TO THE CONTRARY IN ANOTHER LOAN DOCUMENT IN RESPECT OF SUCH OTHER LOAN DOCUMENT), THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF AND THEREOF, AND THE RIGHTS OF THE PARTIES HERETO AND THERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR THEREUNDER OR RELATED HERETO OR THERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

**16.7.2**   THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE TRIED AND LITIGATED ONLY IN, TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE BANKRUPTCY COURT (AND IF NOT PERMITTED BY APPLICABLE LAW, THE FEDERAL COURTS LOCATED IN THE COUNTY OF NEW CASTLE, STATE OF DELAWARE); PROVIDED, HOWEVER, THAT EACH PARTY HERETO ACKNOWLEDGES THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT AND OTHER THAN A FEDERAL COURT LOCATED IN THE COUNTY OF NEW YORK, STATE OF NEW YORK; PROVIDED FURTHER, HOWEVER, THAT ANY SUIT SEEKING ENFORCEMENT AGAINST ANY COLLATERAL OR OTHER PROPERTY MAY BE BROUGHT, AT THE ADMINISTRATIVE AGENT'S OPTION, IN THE COURTS OF ANY JURISDICTION WHERE THE ADMINISTRATIVE AGENT ELECTS TO BRING SUCH ACTION OR WHERE SUCH COLLATERAL OR OTHER PROPERTY MAY BE FOUND. THE BORROWER AND EACH MEMBER OF THE LENDER GROUP WAIVE, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO VENUE OR PERSONAL JURISDICTION TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS §16.7.2.

**16.8**   **Headings**. The captions in this Credit Agreement are for convenience of reference only and shall not define or limit the provisions hereof.

**16.9**   **Counterparts**. This Credit Agreement and any amendment hereof may be executed in several counterparts and by each party on a separate counterpart, each of which when executed and delivered shall be an original, and all of which together shall constitute one

- 103 -

instrument. In proving this Credit Agreement it shall not be necessary to produce or account for more than one such counterpart signed by the party against whom enforcement is sought. Delivery by facsimile by any of the parties hereto of an executed counterpart hereof or of any amendment or waiver hereto shall be as effective as an original executed counterpart hereof or of such amendment or waiver and shall be considered a representation that an original executed counterpart hereof or such amendment or waiver, as the case may be, will be delivered.

**16.10 Entire Agreement, etc.** The Loan Documents and any other documents executed in connection herewith or therewith express the entire understanding of the parties with respect to the transactions contemplated hereby. Neither this Credit Agreement nor any term hereof may be changed, waived, discharged or terminated, except as provided in §16.12. The recitals to this Credit Agreement shall be deemed an integral part of this Credit Agreement and are incorporated herein by reference.

**16.11 Waiver of Jury Trial.** EACH OF THE BORROWER, THE ADMINISTRATIVE AGENT AND EACH LENDER HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS CREDIT AGREEMENT, THE REVOLVING CREDIT NOTES OR ANY OF THE OTHER LOAN DOCUMENTS, ANY RIGHTS OR OBLIGATIONS HEREUNDER OR THEREUNDER OR THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF THE ADMINISTRATIVE AGENT OR ANY LENDER RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS AND AGREES THAT IT WILL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. Except as prohibited by law, the Borrower hereby waives any right it may have to claim or recover in any litigation referred to in the preceding sentence any special, exemplary, punitive or consequential damages or any damages other than, or in addition to, actual damages. The Borrower (a) certifies that no representative, agent or attorney of any Lender or the Administrative Agent has represented, expressly or otherwise, that such Lender or the Administrative Agent would not, in the event of litigation, seek to enforce the foregoing waivers and (b) acknowledges that the Administrative Agent and the Lenders have been induced to enter into this Credit Agreement, the other Loan Documents to which it is a party by, among other things, the waivers and certifications contained herein.

**16.12 Consents, Amendments, Waivers, etc.** Any consent or approval required or permitted by this Credit Agreement to be given by the Lenders may be given, and any term of this Credit Agreement, the other Loan Documents (other than the Bank Product Agreements) or any other instrument related hereto or mentioned herein may be amended, and the performance or observance by the Borrower or any of its Subsidiaries of any terms of this Credit Agreement, the other Loan Documents (other than the Bank Product Agreements) or such other instrument or the continuance of any Default or Event of Default may be waived (either generally or in a particular instance and either retroactively or prospectively) with, but only with, the written consent of the Borrower and the written consent of the Required Lenders; provided, that the

Borrower may unilaterally amend Schedule 7.19 as required by §7.19. Notwithstanding the foregoing, no amendment, modification or waiver shall:

> (a) without the written consent of the Borrower, each Lender directly affected thereby, and the Issuing Lender to the extent directly affected thereby:

>> (i) reduce or forgive the principal amount of any Loans or Reimbursement Obligations, or reduce the rate of interest on the Revolving Credit Loans, the Reimbursement Obligations or the amount of the Commitment Fee or Letter of Credit Fees (other than interest accruing pursuant to §5.10 following the effective date of any waiver by the Required Lenders of the Default or Event of Default relating thereto);

>> (ii) increase the amount of such Lender's Commitment or Letter of Credit Commitment or extend the expiration date of such Lender's Commitment or Letter of Credit Commitment;

>> (iii) postpone or extend the Revolving Credit Loan Maturity Date or any other regularly scheduled dates for payments of principal of, or interest on, the Loans or Reimbursement Obligations or any Fees or other amounts payable to such Lender or Issuing Lender (it being understood that (A) a waiver of the application of the default rate of interest pursuant to §5.10, and (B) any vote to rescind any acceleration made pursuant to §13.1 of amounts owing with respect to the Loans and other Obligations shall require only the approval of the Required Lenders); and

>> (iv) other than pursuant to a transaction permitted by the terms of this Credit Agreement, release all or substantially all of the Collateral or release all or substantially all of the Guarantors from their guaranty obligations under the Guaranties (excluding, if the Borrower or any Subsidiary of the Borrower becomes a debtor under the federal Bankruptcy Code, the release of "cash collateral," as defined in Section 363(a) of the federal Bankruptcy Code pursuant to a cash collateral stipulation with the debtor approved by the Required Lenders);

> (b) without the written consent of the Borrower and all of the Lenders, amend or waive this §16.12 or the definition of Required Lenders;

> (c) without the written consent of the Borrower and the Administrative Agent, amend or waive §2.6.2, §14, the Administrative Agent's Fee Letter, the amount or time of payment of the Administrative Agent's Fee or any Letter of Credit Fees payable for the Administrative Agent's account or any other provision applicable to the Administrative Agent;

> (d) without the written consent of the Borrower and the Issuing Lender, amend, modify or waive any provision of this Credit Agreement or the other Loan Documents pertaining to the Issuing Lender, or any other rights or duties of Issuing Lender under this Credit Agreement or the other Loan Documents; and

- 105 -

(e)     without the written consent of the Issuing Lender and all of the Lenders with a share in the Risk Participation Liability, release the Sun Guarantor from its obligations under the Sun Guaranty.

No waiver shall extend to or affect any obligation not expressly waived or impair any right consequent thereon. No course of dealing or delay or omission on the part of the Administrative Agent or any Lender in exercising any right shall operate as a waiver thereof or otherwise be prejudicial thereto. No notice to or demand upon the Borrower shall entitle the Borrower to other or further notice or demand in similar or other circumstances. Anything in this §16.12 to the contrary notwithstanding, (i) any amendment, modification, elimination, waiver, consent, termination, or release of, or with respect to, any provision of this Credit Agreement or any other Loan Document that relates only to the relationship of the Administrative Agent and the Lenders among themselves, and that does not affect the rights or obligations of the Borrower or Guarantors, shall not require consent by or the agreement of any of the Borrower or Guarantors, and (ii) any amendment, waiver, modification, elimination, or consent of or with respect to any provision of this Credit Agreement or any other Loan Document may be entered into without the consent of, or over the objection of, any Defaulting Lender, other than any of the matters governed by §16.12(a)(i) through (iii).

16.13  **Severability**. The provisions of this Credit Agreement are severable and if any one clause or provision hereof shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Credit Agreement in any jurisdiction.

16.14  **Bank Product Providers**. Each Bank Product Provider shall be deemed a third party beneficiary hereof and of the provisions of the other Loan Documents for purposes of any reference in a Loan Document to the parties for whom Administrative Agent is acting; it being understood and agreed that the rights and benefits of such Bank Product Provider under the Loan Documents consist exclusively of such Bank Product Provider's right to share in payments and collections out of the Collateral as more fully set forth herein. In connection with any such distribution of payments and collections, Administrative Agent shall be entitled to assume no amounts are due to any Bank Product Provider unless such Bank Product Provider has notified Administrative Agent in writing of the amount of any such liability owed to it prior to such distribution.

16.15  **Patriot Act**. Each Lender that is subject to the requirements of the Patriot Act hereby notifies Borrower that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow such Lender to identify Borrower in accordance with the Patriot Act. In addition, if the Administrative Agent or any Lender is required by law or regulation or internal policies to do so, it shall have the right to periodically conduct (a) Patriot Act searches, OFAC/PEP searches, and customary individual background checks for Borrower and the Guarantors and (b) OFAC/PEP searches and customary individual background checks for Borrower's and Guarantors' senior management and key principals, and Borrower agrees to cooperate in respect of the conduct of such searches and

further agrees that the reasonable costs and charges for such searches shall constitute reimbursable expenses hereunder and be for the account of Borrower.

**16.16** **Pre-Petition Loan Documents**. Borrower hereby agrees that (i) this Credit Agreement is separate and distinct from the Pre-Petition Credit Agreement and (ii) the Pre-Petition Credit Agreement is in full force and effect. Borrower further agrees that by entering into this Credit Agreement, Lenders do not waive any Default or Event of Default under and as defined in the Pre-Petition Loan Documents or any of their liens, claims, priorities, rights and remedies thereunder.

**16.17** **Parties including the Trustees; Bankruptcy Court Proceedings**. This Credit Agreement, the other Loan Documents, and all Liens and other rights and privileges created hereby or pursuant hereto or to any other Loan Document shall be binding upon the Borrower and each Guarantor, each of their respective bankruptcy estates, and any trustee, other bankruptcy estate representative or any successor-in-interest of any such Person in the Chapter 11 Cases or any subsequent case commenced under Chapter 7 of the Bankruptcy Code, and shall not be subject to Section 365 of the Bankruptcy Code. This Credit Agreement and the other Loan Documents shall be binding upon, and inure to the benefit of, the successors of the Administrative Agent and Lenders and their respective assigns, transferees and endorsees. The Liens created by this Credit Agreement and the other Loan Documents shall be and remain valid and perfected in the event of the substantive consolidation or conversion of the Chapter 11 Cases or any other bankruptcy case of the Borrower or any Guarantor to a case under Chapter 7 of the Bankruptcy Code or in the event of dismissal of the Chapter 11 Cases or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that the Administrative Agent file financing statements or otherwise perfect its Liens under applicable law. Neither the Borrower nor any Guarantor may assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the other Loan Documents without the prior express written consent of the Administrative Agent and the Lenders and any such purported assignment, transfer, hypothecation or other conveyance by without the prior express written consent of the Administrative Agent and the Lenders shall be void. The terms and provisions of this Credit Agreement are for the purpose of defining the relative rights and obligations of the Borrower, the Guarantors, the Administrative Agent and the Lenders with respect to the transactions contemplated hereby and no person shall be a third party beneficiary of any of the terms and provisions of this Credit Agreement or any of the other Loan Documents.

[remainder of page intentionally left blank; signature pages follow]

IN WITNESS WHEREOF, the undersigned have duly executed this Credit Agreement as of the date first set forth above.

FRIENDLY ICE CREAM CORPORATION

By: _____
      Name:
      Title:

WELLS FARGO CAPITAL FINANCE, INC,
as Administrative Agent and as a Lender

By: _____
      Name:
      Title:

## SCHEDULE 1(a)

## Lenders and Commitments

| Lender | Commitment Amount | Commitment Percentage |
|---|---|---|
| Wells Fargo Capital Finance, Inc. | $56,500,000 | 100% |
| **Total:** | $56,500,000 | 100% |

| Lender | Letter of Credit Commitment Amount | Letter of Credit Commitment Percentage |
|---|---|---|
| Wells Fargo Capital Finance, Inc. | $14,878,664 | 100% |
| **Total:** | $14,878,664 | 100% |