**Exhibit B**

**Transcript of Deposition of Joshua Benn**

1
2
3      IN THE UNITED STATES BANKRUPTCY COURT
4         FOR THE DISTRICT OF DELAWARE
5  ---------------------------------X
6  In re:
7  FRIENDLY ICE CREAM
8  CORPORATION,
9  et al.,                           Chapter 11
10             Debtors,              Case No. 11-13167
11                                   (KG)
12 ---------------------------------X
13
14
15         DEPOSITION OF JOSHUA BENN
16              New York, New York
17              November 17, 2011
18
19
20
21
22
23
24 Reported by:
   Bonnie Pruszynski, RMR
25 JOB NO. 43945

## Page 2

November 17, 2011
2:33 p.m.

Deposition of JOSHUA BENN, held at the offices of Akin Gump Strauss Hauer & Feld, One Byan Park, New York, New York, before Bonnie Pruszynski, a Registered Professional Reporter, Registered Merit Reporter, Certified LiveNote Reporter and Notary Public of the State of New York.

## Page 3

APPEARANCES:

KIRKLAND & ELLIS
Attorneys for Debtor
    300 North LaSalle Street
    Chicago, Illinois 60654
BY:  JEFFREY D. PAWLITZ,

AKIN GUMP STRAUSS HAUER & FELD
Attorneys for Official Committee of Unsecured Creditors
    One Bryant Park
    New York, New York
BY:  ABID QURESHI, ESQ.

SCHULTE ROTH & ZABEL
Attorneys for Duff & Phelps Securities LLC
    919 Third Avenue
    New York, New York 10022
BY: MICHAEL L. COOK, ESQ.
ALSO PRESENT:   Jonathan Kurlak
        Ryan S. Bouley, Duff & Phelps

## Page 4

J. Benn
        (D&P Exhibit 1 marked for
        identification as of this date.)
JOSHUA BENN,
        called as a witness, having been first
        duly sworn, was examined and testified
        as follows:
EXAMINATION
BY MR. QURESHI:
    Q    Good afternoon.
        For the record, my name is Abid Qureshi of Akin Gump Strauss Hauer & Feld on behalf of the Official Committee.
        Before we jump into the substance, have you had your deposition taken before?
    A    No.
    Q    Okay. This will be pretty brief, so, I won't bore you with all of the preliminaries, other than to say that, first of all, we should not talk over each other because the court reporter is trying to take down my questions and your answers.
        And, secondly, if I ask you any questions that you do not understand, just ask me to clarify or restate the question and I will;

## Page 5

J. Benn
otherwise I will assume that you understood it.
        Is that fair?
    A    Yes.
    Q    Okay. And by whom are you employed?
    A    Duff & Phelps?
    Q    Can you just quickly give me a sketch of your background? What your title is, how long you have been there?
    A    Sure. I'm a managing director. I have been at the firm since 2004.
    Q    And what is your role with respect to Friendly's?
    A    I am overseeing the transaction.
    Q    So, is fair to say that you are the head of the engagement team for Duff & Phelps?
    A    Yes.  Yes.
    Q    When did Duff & Phelps first become involved in Friendly's?
    A    The beginning of September.
    Q    And who were you first contacted by?
    A    The company.
    Q    And do you recall who at the company?
    A    I don't.
    Q    Do you recall with whom at Duff &

1  J. Benn
2  Phelps that initial contact was made?
3  A  I believe it was to myself and to
4  possibly independently to Russ Belinsky.
5  Q  Okay. And what was it that Duff &
6  Phelps was ultimately asked by the debtors to do?
7  A  To present our qualifications to
8  represent the company.
9  Q  And do you recall when you did that?
10  A  It was in -- at some point in late
11  August.
12  Q  It late August? I thought that you
13  testified that you were contacted in September,
14  the beginning of September?
15  A  I guess we were contacted before
16  then.
17  Q  Your recollection is that you
18  presented your qualifications to the company in
19  late August?
20  A  Yes.
21  Q  And did that occur in person or --
22  A  No.
23  Q  -- or telephonically?
24  A  It was telephonic.
25  Q  Okay. And do you recall at what

1  J. Benn
2  point you were -- you, or others at Duff & Phelps,
3  were first told that you would be retained by the
4  debtors?
5  A  It was --
6  MR. COOK: Objection. No foundation,
7  but you can answer if you can.
8  A  It was -- it was in late August.
9  Q  Okay.
10  A  So, I think we were contacted
11  mid-August or so, and then pitched, and then
12  became engaged in late August.
13  Q  Okay. Now, I gather, sir, that you
14  are aware that Sun Capital, or entities controlled
15  by Sun, are serving as a stalking horse bidder in
16  this case?
17  A  Yes.
18  Q  Did Duff & Phelps have any role in
19  securing Sun's agreement to serve as a stalking
20  horse bidder?
21  A  No.
22  Q  Was Duff & Phelps -- strike that.
23  Was Sun's role as a stalking horse
24  bidder something that was in place already at the
25  time Duff & Phelps was retained?

1  J. Benn
2  A  No.
3  Q  And Duff & Phelps has entered into an
4  engagement letter with the debtor; correct?
5  A  Yes.
6  Q  Okay. And were you, personally,
7  involved in the negotiations concerning the terms
8  of Duff & Phelps engagement by the debtors?
9  A  Yes.
10  Q  Okay. And please describe for me
11  what your role was on Duff & Phelps behalf in
12  those negotiations.
13  A  I was part of the two-person team
14  that negotiated the terms of that engagement.
15  Q  And the other person being
16  Mr. Belinksy?
17  A  Correct.
18  Q  And with whom, on behalf of the
19  debtors, were those negotiations conducted?
20  A  With Harsha Agadi, Steve Sanchioni
21  was involved. Ultimately the outside director was
22  involved, as well as other directors.
23  Q  Okay. And can you please describe
24  for me, to the best of your recollection, what the
25  back and forth was, if any, with respect to Duff &

1  J. Benn
2  Phelps' fees for this engagement?
3  A  There was -- there was -- there
4  definitely was back and forth. We originally, to
5  the best of my recollection, proposed a back-end
6  fee, I believe it was of 1.5 million dollars, and
7  a credit -- and 125,000 per month, with the third
8  through the fifth month credited, I believe, or it
9  may have been the fourth through the sixth month
10  credited.
11  Q  Okay. And do you recall, at the time
12  of that proposal, that is to say the 1.5 million
13  back-end, plus the monthly structure you
14  described, do you recall whether at that point a
15  stalking horse agreement was already in place with
16  Sun?
17  A  I don't -- I don't recall, but I
18  don't believe it was. I mean, I don't -- I don't
19  recall definitively, but I don't believe it was.
20  Q  Okay. Well, did you have any sense,
21  at the time of that proposal, the 1.5 million
22  dollar back-end fee, of what the stalking horse
23  purchase price would be?
24  A  Not to my recollection.
25  Q  Okay. Do you recall what the debtors

J. Benn
counteroffer, if any, was to the 1.5 million
dollar back-end proposal made by Duff & Phelps?
 A  I believe it was in the neighborhood
of $1.25 million back-end fee and $100,000 a month
with the first three months credited, although I
am not 100 percent certain.
 Q  Okay. And do you recall any other
offers going back and forth between Duff & Phelps
and the debtors?
 A  We had -- there was at the point
of -- slightly later than that, we proposed a
one percent financing fee at well that was
stricken -- that was struck.
 Q  Now, I gather, sir, that you are
aware that in the reply that Duff & Phelps filed
with the Bankruptcy Court, that is a reply to a
limited objection filed by the committee, that
Duff & Phelps included certain what are described
as "comparable transactions"?
 A  Yes.
 Q  And did you have any role in
selecting those transactions?
 A  Tangentially.
 Q  Can you describe what your role was?

J. Benn
 A  They were aggregated by our team and
they were obviously from a database of
information.
 Q  Okay. And do you recall that in
comparing the transaction fee as a percentage of
transaction value, that what you were using was a
transaction value of 120 million-dollars for the
stalking horse bid?
 A  Yes.
 Q  And I gather you concluded, on the
basis of that analysis, that your proposed
back-end fee as a percentage of that transaction
value was reasonable; correct?
 A  Yes.
 Q  And would you agree with me that, as
things stand today, the stalking horse purchase
price has been reduced to $75 million?
 A  Yes.
 Q  And is it your view that,
nonetheless, the same transaction fee remains
reasonable?
 A  Yes.
 Q  Okay. Can you please explain to me
how it is that, given that reduction in purchase

J. Benn
price, that when viewed as a percentage of the
purchase price, your view is that that transaction
fee is reasonable?
 A  Well, I mean, looking at the -- the
modified comparables you present, it's still
within, you know, the -- the -- on the stalking
horse proposal or at the stalking horse value, it
is still with in the range of the comps that we
have presented here.
 Q  Let me back up and just for the
record introduce what I have marked as D&P Exhibit
one, which is a chart of comparable companies.
   First let me ask you, have you seen
it before?
 A  No.
 Q  Okay. Well, I will represent to you
that this was a chart, this is a chart that was
prepared by the committee's advisor, FTI, and was
presented to your counsel, I believe, on Tuesday.
And I can have copies made, if you would like, of
your reply, but from recollection and looking at
this, does that appear to be the same set of
transactions that Duff & Phelps included as
comparable transactions in its reply that was

J. Benn
filed with the bankruptcy court?
 A  It does.
 Q  Okay. What I would like you to do,
and you should take your time, take as much as you
need, and we can get you a copy of the reply if
you need to, I would like you to take a close look
at this chart and tell me if you disagree with
anything that is on it, if you believe there are
any errors contained in this chart.
   And, again, if getting a copy of your
chart would be helpful -- I don't have one handy,
but I can certainly --
   MR. COOK: I think we have it here.
   MR. QURESHI: Okay.
 A  Based on a quick review, I don't see
any errors in the math.
 Q  Okay. And would you agree that for
each of these comparable transactions, that the
stalking horse agreement was entered into after
the financial advisor was engaged?
   MR. COOK: If you know.
 Q  If you know.
 A  Based on the data that is included
here, it would appear that they are.

1  J. Benn
2  Q  Okay. Well, let me ask you a
3  slightly different question.
4      Are you aware of any case in which a
5  financial advisor has been paid a back-end fee or
6  a transaction fee in circumstances where a
7  stalking horse bidder, which that financial
8  advisor had no role in bringing to the table, was
9  the successful bidder at the stalking horse price?
10     MR. COOK: Could you read that
11  question back please?
12     (Record read.)
13     MR. COOK: I think I -- I think I
14  know where you are going, but the reason I
15  had it read back --
16     MR. QURESHI: Sure.
17     MR. COOK: -- my suggestion is if you
18  could break that down.
19     MR. QURESHI: Okay. Let me try it
20  again.
21     MR. COOK: Yes.
22     MR. QURESHI: See if I can break this
23  up into pieces.
24  Q  So, are you -- well, are you aware of
25  any prior cases in which a financial advisor,

1  J. Benn
2  obviously to the debtor, has been paid a back-end
3  or transaction fee in circumstances where there
4  was no second qualified bidder; in other words,
5  there was no auction, the stalking horse bidder
6  prevailed at the stalking horse price, and the
7  financial advisor to whom the fee was paid had no
8  role in bringing that stalking horse bidder to the
9  table?
10     Do you understand the question?
11  A  I do.
12     Can I confer with you?
13     MR. COOK: You can't confer when
14  there is a question pending.
15  A  Well, in the Anchor Blue case --
16  Q  Okay.
17  A  -- that we worked on, I don't recall
18  exactly when the stalking horse bid was entered
19  into --
20  Q  Okay.
21  A  -- but I do recall that we were paid
22  a back-end fee that was -- based on the stalking
23  horse prevailing.
24  Q  And was that a case in which you
25  advised the debtor?

1  J. Benn
2  A  It was.
3  Q  And was that a case in which you had,
4  you meaning Duff & Phelps, had no role in bringing
5  the stalking horse bidder to the table?
6  A  I don't recall to be honest.
7  Q  Okay. When was that case?
8  A  2009.
9  Q  Where was it pending?
10 A  Delaware.
11 Q  Do you recall which judge?
12 A  Walsh.
13 Q  So, as you sit here today, you can't
14 recall whether Duff & Phelps had some involvement
15 in bringing that stalking horse bidder to the
16 table?
17 A  I cannot recall.
18 Q  Cannot?
19 A  I cannot recall.
20 Q  Okay. And that is not a transaction,
21 the Anchor Blue case, which you list as a
22 comparable in your reply; is that right?
23 A  Correct.
24 Q  Other than Anchor Blue, are you aware
25 of any other case -- strike that.

1  J. Benn
2      So, you have testified that in the
3  Anchor Blue case you can't recall if Duff & Phelps
4  had any role in procuring the stalking horse bid.
5  So, let me ask again whether, other than that
6  situation, you are aware of any case in which the
7  debtors' financial advisor had been paid a
8  back-end or a transaction fee in circumstances
9  where the stalking horse prevailed without any
10 other qualifying bid and the financial advisor had
11 no role in procuring that stalking horse bid?
12 A  I'm not aware.
13     MR. QURESHI: Okay. Thanks for your
14 time. That is all I have.
15    (Continued on next page with witness
16 jurat.)

## Page 18

1  J. Benn
2  MR. COOK: And I would like a copy of
3  the transcript as soon as possible so
4  witness can review it and make corrections.
5  oOo
6  I, JOSHUA BENN, the witness herein, do
7  hereby certify that the foregoing testimony of the
8  pages of this deposition to be a true and correct
9  transcript, subject to the corrections, if any,
10 shown on the attached page.
11 _____
12
13 Subscribed and sworn to before me this
14 _____day of _____,_____.
15 _____
16       NOTARY PUBLIC

## Page 19

2  STATE OF NEW YORK )    Pg.  of Pgs.
3  COUNTY OF NEW YORK )
4     I wish to make the following changes
5  for the following reasons:
6  PAGE  LINE
7  ____  ____  CHANGE:_____
8              REASON:_____
9  ____  ____  CHANGE:_____
10             REASON:_____
11 ____  ____  CHANGE:_____
12             REASON:_____
13 ____  ____  CHANGE:_____
14             REASON:_____
15 ____  ____  CHANGE:_____
16             REASON:_____
17 ____  ____  CHANGE:_____
18             REASON:_____
19 ____  ____  CHANGE:_____
20             REASON:_____
21 ____  ____  CHANGE:_____
22             REASON:_____
23 ____  ____  CHANGE:_____
24             REASON:_____
25      _____

## Page 20

2       C E R T I F I C A T E
3  STATE OF NEW YORK   )
4         : SS.
5  COUNTY OF NEW YORK  )
6
7      I, BONNIE PRUSZYNSKI, a Notary
8  Public with and for the State of New York,
9  do hereby certify:
10     That JOSHUA BENN, the witness
11 whose deposition is hereinbefore set forth,
12 was duly sworn by me and that such deposition
13 is a true record of the testimony given by
14 the witness.
15    I further certify that I am not related
16 to any of the parties to this action by
17 blood or marriage, and that I am in no way
18 interested in the outcome of this matter.
19    IN WITNESS WHEREOF, I have hereunto
20 set my hand this 17th of November, 2011.
21
22       _____
23          Bonnie Pruszynski

## Page 21

3          I N D E X
4  WITNESS                     PAGE
5  JOSHUA BENN
6  BY MR. QURESHI                4
7
8          E X H I B I T
9  D&P Exhibit 1 M&A Fee Analysis    4

### A
**Abid** 3:15 4:11
**action** 20:16
**advised** 15:25
**advisor** 12:19 13:21 14:5,8,25 15:7 17:7,10
**afternoon** 4:10
**Agadi** 8:20
**aggregated** 11:2
**agree** 11:16 13:18
**agreement** 7:19 9:15 13:20
**Akin** 2:10 3:10 4:12
**al** 1:9
**analysis** 11:12 21:9
**Anchor** 15:15 16:21,24 17:3
**answer** 7:7
**answers** 4:22
**appear** 12:23 13:25
**asked** 6:6
**assume** 5:2
**attached** 18:10
**Attorneys** 3:5,11 3:18
**auction** 15:5
**August** 6:11,12,19 7:8,12
**Avenue** 3:19
**aware** 7:14 10:16 14:4,24 16:24 17:6,12

### B
**B** 21:8
**back** 8:25 9:4 10:9 12:11 14:11,15
**background** 5:8
**back-end** 9:5,13,22 10:3,5 11:13 14:5 15:2,22 17:8
**bankruptcy** 1:3 10:17 13:2
**based** 13:16,24 15:22
**basis** 11:12

**beginning** 5:20 6:14
**behalf** 4:13 8:11,18
**believe** 6:3 9:6,8,18 9:19 10:4 12:20 13:9
**Belinksy** 8:16
**Belinsky** 6:4
**Benn** 1:15 2:9 4:1,4 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1,6 20:10 21:5
**best** 8:24 9:5
**bid** 11:9 15:18 17:4 17:10,11
**bidder** 7:15,20,24 14:7,9 15:4,5,8 16:5,15
**blood** 20:17
**Blue** 15:15 16:21 16:24 17:3
**Bonnie** 1:24 2:11 20:7,23
**bore** 4:18
**Bouley** 3:23
**break** 14:18,22
**brief** 4:17
**bringing** 14:8 15:8 16:4,15
**Bryant** 3:13
**Byan** 2:11

### C
**C** 3:3 20:2,2
**called** 4:5
**Capital** 7:14
**case** 1:10 7:16 14:4 15:15,24 16:3,7 16:21,25 17:3,6
**cases** 14:25
**certain** 10:7,19
**certainly** 13:13
**Certified** 2:13
**certify** 18:7 20:9,15
**CHANGE** 19:7,9 19:11,13,15,17,19

19:21,23
**changes** 19:4
**Chapter** 1:9
**chart** 12:13,18,18 13:8,10,12
**Chicago** 3:7
**circumstances** 14:6 15:3 17:8
**clarify** 4:25
**close** 13:7
**committee** 3:11 4:13 10:18
**committee's** 12:19
**companies** 12:13
**company** 5:22,23 6:8,18
**comparable** 10:20 12:13,25 13:19 16:22
**comparables** 12:6
**comparing** 11:6
**comps** 12:9
**concerning** 8:7
**concluded** 11:11
**conducted** 8:19
**confer** 15:12,13
**contact** 6:2
**contacted** 5:21 6:13,15 7:10
**contained** 13:10
**Continued** 17:15
**controlled** 7:14
**COOK** 3:21 7:6 13:14,22 14:10,13 14:17,21 15:13 18:2
**copies** 12:21
**copy** 13:6,11 18:2
**CORPORATION** 1:8
**correct** 8:4,17 11:14 16:23 18:8
**corrections** 18:4,9
**counsel** 12:20
**counteroffer** 10:2
**COUNTY** 19:3 20:5
**court** 1:3 4:20

10:17 13:2
**CREAM** 1:7
**credit** 9:7
**credited** 9:8,10 10:6
**Creditors** 3:12

### D
**D** 3:8 21:3
**data** 13:24
**database** 11:3
**date** 4:3
**day** 18:14
**debtor** 3:5 8:4 15:2 15:25
**debtors** 1:10 6:6 7:4 8:8,19 9:25 10:10 17:7
**definitely** 9:4
**definitively** 9:19
**Delaware** 1:4 16:10
**deposition** 1:15 2:9 4:15 18:8 20:11 20:12
**describe** 8:10,23 10:25
**described** 9:14 10:19
**different** 14:3
**director** 5:10 8:21
**directors** 8:22
**disagree** 13:8
**DISTRICT** 1:4
**dollar** 9:22 10:3
**dollars** 9:6
**Duff** 3:18,23 5:6,16 5:18,25 6:5 7:2,18 7:22,25 8:3,8,11 8:25 10:3,9,16,19 12:24 16:4,14 17:3
**duly** 4:6 20:12
**D&P** 4:2 12:12 21:9

### E
**E** 3:3,3 20:2,2 21:3 21:8
**ELLIS** 3:4

**employed** 5:5
**engaged** 7:12 13:21
**engagement** 5:16 8:4,8,14 9:2
**entered** 8:3 13:20 15:18
**entities** 7:14
**errors** 13:10,17
**ESQ** 3:15,21
**et** 1:9
**exactly** 15:18
**EXAMINATION** 4:8
**examined** 4:6
**Exhibit** 4:2 12:12 21:9
**explain** 11:24

### F
**F** 20:2
**fair** 5:3,15
**fee** 9:6,22 10:5,13 11:6,13,21 12:4 14:5,6 15:3,7,22 17:8 21:9
**fees** 9:2
**Feld** 2:10 3:10 4:12
**fifth** 9:8
**filed** 10:16,18 13:2
**financial** 13:21 14:5,7,25 15:7 17:7,10
**financing** 10:13
**firm** 5:11
**first** 4:5,19 5:18,21 7:3 10:6 12:14
**following** 19:4,5
**follows** 4:7
**foregoing** 18:7
**forth** 8:25 9:4 10:9 20:11
**foundation** 7:6
**fourth** 9:9
**FRIENDLY** 1:7
**Friendly's** 5:13,19
**FTI** 12:19
**further** 20:15

### G

gather 7:13 10:15 11:11
getting 13:11
give 5:7
given 11:25 20:13
going 10:9 14:14
Good 4:10
guess 6:15
Gump 2:10 3:10 4:12

**H**
H 21:8
hand 20:20
handy 13:12
Harsha 8:20
Hauer 2:10 3:10 4:12
head 5:16
held 2:9
helpful 13:12
hereinbefore 20:11
hereunto 20:19
honest 16:6
horse 7:15,20,23 9:15,22 11:9,17 12:8,8 13:20 14:7 14:9 15:5,6,8,18 15:23 16:5,15 17:4,9,11

**I**
ICE 1:7
identification 4:3
Illinois 3:7
included 10:19 12:24 13:24
independently 6:4
information 11:4
initial 6:2
interested 20:18
introduce 12:12
involved 5:19 8:7 8:21,22
involvement 16:14

**J**
J 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1
JEFFREY 3:8
JOB 1:25
Jonathan 3:22
JOSHUA 1:15 2:9 4:4 18:6 20:10 21:5
judge 16:11
jump 4:14
jurat 17:16

**K**
KG 1:11
KIRKLAND 3:4
know 12:7 13:22,23 14:14
Kurlak 3:22

**L**
L 3:21
LaSalle 3:6
late 6:10,12,19 7:8 7:12
letter 8:4
limited 10:18
LINE 19:6
list 16:21
LiveNote 2:13
LLC 3:18
long 5:8
look 13:7
looking 12:5,22

**M**
managing 5:10
marked 4:2 12:12
marriage 20:17
math 13:17
matter 20:18
mean 9:18 12:5
meaning 16:4
Merit 2:13
MICHAEL 3:21
mid-August 7:11
million 9:6,12,21 10:2,5 11:18
million-dollars 11:8
modified 12:6
month 9:7,8,9 10:5
monthly 9:13
months 10:6
M&A 21:9

**N**
N 3:3 21:3
name 4:11
need 13:6,7
negotiated 8:14
negotiations 8:7,12 8:19
neighborhood 10:4
New 1:16,16 2:11 2:11,14 3:14,14 3:20,20 19:2,3 20:3,5,8
North 3:6
Notary 2:14 18:16 20:7
November 1:17 2:4 20:20

**O**
objection 7:6 10:18
obviously 11:3 15:2
occur 6:21
offers 10:9
offices 2:10
Official 3:11 4:13
Okay 4:17 5:5 6:5 6:25 7:9,13 8:6,10 8:23 9:11,20,25 10:8 11:5,24 12:17 13:4,15,18 14:2,19 15:16,20 16:7,20 17:13
oOo 18:5
originally 9:4
outcome 20:18
outside 8:21
overseeing 5:14

**P**
P 3:3,3
page 17:15 18:10 19:6 21:4
pages 18:8
paid 14:5 15:2,7,21 17:7
Park 2:11 3:13
part 8:13
parties 20:16
PAWLITZ 3:8
pending 15:14 16:9
percent 10:7,13
percentage 11:6,13 12:2
person 6:21 8:15
personally 8:6
Pg 19:2
Pgs 19:2
Phelps 3:18,23 5:6 5:16,18 6:2,6 7:2 7:18,22,25 8:3,8 8:11 9:2 10:3,9,16 10:19 12:24 16:4 16:14 17:3
pieces 14:23
pitched 7:11
place 7:24 9:15
please 8:10,23 11:24 14:11
plus 9:13
point 6:10 7:2 9:14 10:11
possible 18:3
possibly 6:4
preliminaries 4:18
prepared 12:19
present 3:22 6:7 12:6
presented 6:18 12:10,20
pretty 4:17
prevailed 15:6 17:9
prevailing 15:23
price 9:23 11:18 12:2,3 14:9 15:6
prior 14:25
procuring 17:4,11
Professional 2:12
proposal 9:12,21 10:3 12:8
proposed 9:5 10:12 11:12
Pruszynski 1:24 2:12 20:7,23
Public 2:14 18:16 20:8
purchase 9:23 11:17,25 12:3
p.m 2:5

**Q**
qualifications 6:7 6:18
qualified 15:4
qualifying 17:10
question 4:25 14:3 14:11 15:10,14
questions 4:21,24
quick 13:16
quickly 5:7
Qureshi 3:15 4:9 4:12 13:15 14:16 14:19,22 17:13 21:6

**R**
R 3:3 20:2
range 12:9
read 14:10,12,15
reason 14:14 19:8 19:10,12,14,16,18 19:20,22,24
reasonable 11:14 11:22 12:4
reasons 19:5
recall 5:23,25 6:9 6:25 9:11,14,17 9:19,25 10:8 11:5 15:17,21 16:6,11 16:14,17,19 17:3
recollection 6:17 8:24 9:5,24 12:22
record 4:11 12:12 14:12 20:13
reduced 11:18
reduction 11:25
Registered 2:12,13
related 20:15
remains 11:21
reply 10:16,17

12:22,25 13:6
   16:22
**Reported** 1:24
**reporter** 2:12,13,14
   4:21
**represent** 6:8 12:17
**respect** 5:12 8:25
**restate** 4:25
**retained** 7:3,25
**review** 13:16 18:4
**right** 16:22
**RMR** 1:24
**role** 5:12 7:18,23
   8:11 10:22,25
   14:8 15:8 16:4
   17:4,11
**ROTH** 3:17
**Russ** 6:4
**Ryan** 3:23

---
**S**

**S** 3:3,23
**Sanchioni** 8:20
**SCHULTE** 3:17
**second** 15:4
**secondly** 4:23
**securing** 7:19
**Securities** 3:18
**see** 13:16 14:22
**seen** 12:14
**selecting** 10:23
**sense** 9:20
**September** 5:20
   6:13,14
**serve** 7:19
**serving** 7:15
**set** 12:23 20:11,20
**shown** 18:10
**sir** 7:13 10:15
**sit** 16:13
**situation** 17:6
**sixth** 9:9
**sketch** 5:7
**slightly** 10:12 14:3
**soon** 18:3
**SS** 20:4
**stalking** 7:15,19,23
   9:15,22 11:9,17

12:7,8 13:20 14:7
   14:9 15:5,6,8,18
   15:22 16:5,15
   17:4,9,11
**stand** 11:17
**State** 2:14 19:2
   20:3,8
**STATES** 1:3
**Steve** 8:20
**Strauss** 2:10 3:10
   4:12
**Street** 3:6
**stricken** 10:14
**strike** 7:22 16:25
**struck** 10:14
**structure** 9:13
**subject** 18:9
**Subscribed** 18:13
**substance** 4:14
**successful** 14:9
**suggestion** 14:17
**Sun** 7:14,15 9:16
**Sun's** 7:19,23
**Sure** 5:10 14:16
**sworn** 4:6 18:13
   20:12

---
**T**

**T** 20:2,2 21:8
**table** 14:8 15:9
   16:5,16
**take** 4:21 13:5,5,7
**taken** 4:15
**talk** 4:20
**Tangentially** 10:24
**team** 5:16 8:13
   11:2
**telephonic** 6:24
**telephonically** 6:23
**tell** 13:8
**terms** 8:7,14
**testified** 4:6 6:13
   17:2
**testimony** 18:7
   20:13
**Thanks** 17:13
**things** 11:17
**think** 7:10 13:14

14:13,13
**third** 3:19 9:7
**thought** 6:12
**three** 10:6
**time** 7:25 9:11,21
   13:5 17:14
**title** 5:8
**today** 11:17 16:13
**told** 7:3
**transaction** 5:14
   11:6,7,8,13,21
   12:3 14:6 15:3
   16:20 17:8
**transactions** 10:20
   10:23 12:24,25
   13:19
**transcript** 18:3,9
**true** 18:8 20:13
**try** 14:19
**trying** 4:21
**Tuesday** 12:20
**two-person** 8:13

---
**U**

**ultimately** 6:6 8:21
**understand** 4:24
   15:10
**understood** 5:2
**UNITED** 1:3
**Unsecured** 3:11

---
**V**

**value** 11:7,8,14
   12:8
**view** 11:20 12:3
**viewed** 12:2

---
**W**

**Walsh** 16:12
**way** 20:17
**WHEREOF** 20:19
**wish** 19:4
**witness** 4:5 17:15
   18:4,6 20:10,14
   20:19 21:4
**words** 15:4
**worked** 15:17

---
**X**

**X** 1:5,12 21:3,8

---
**Y**

**York** 1:16,16 2:11
   2:11,15 3:14,14
   3:20,20 19:2,3
   20:3,5,8

---
**Z**

**ZABEL** 3:17

---
**$**

**$1.25** 10:5
**$100,000** 10:5
**$75** 11:18

---
**1**

**1** 4:2 21:9
**1.5** 9:6,12,21 10:2
**100** 10:7
**10022** 3:20
**11** 1:9
**11-13167** 1:10
**120** 11:8
**125,000** 9:7
**17** 1:17 2:4
**17th** 20:20

---
**2**

**2:33** 2:5
**2004** 5:11
**2009** 16:8
**2011** 1:17 2:4 20:20

---
**3**

**300** 3:6

---
**4**

**4** 21:6,9
**43945** 1:25

---
**6**

**60654** 3:7

---
**9**

**919** 3:19