IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMICUS WIND DOWN CORPORATION, et al., | ) | Case No. 11-13167 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | *Related to Docket No. 948, 1096* |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FREEZE, LLC, et al.,[1] | ) | Case No. 11-13303 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | *Related to Docket No. 103, 122* |

Confirmation Hearing: June 5, 2012 at 12:00 Noon (prevailing Eastern time)

**DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION OF
THE DEBTORS' FIRST AMENDED PLAN OF LIQUIDATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors") respectfully file this Memorandum in Support of Confirmation of the *Debtors' First Amended Plan of Liquidation Pursuant To Chapter 11 of the Bankruptcy Code* (as modified on May 30, 2012) (the "Plan"), and in support thereof respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Amicus Wind Down Corporation, f/k/a Friendly Ice Cream Corporation (3130); Amicus Restaurants Franchise Wind Down, LLC, f/k/a Friendly's Restaurants Franchise, LLC (3693); Amicus Realty I Wind Down, LLC, f/k/a Friendly's Realty I, LLC (2580); Amicus Realty II Wind Down, LLC, f/k/a Friendly's Realty II, LLC (2581); Amicus Realty III Wind Down, LLC, f/k/a Friendly's Realty III, LLC (2583); Freeze, LLC (9643); Freeze Group Holding Corp. (3232); Freeze Holdings, LP (3099); and Freeze Operations Holding Corp. (5239). The location of the Debtors' corporate headquarters is 1855 Boston Road, Wilbraham, Massachusetts 01095. The Debtors' services addresses are: 1855 Boston Road, Wilbraham, Massachusetts 01095 and 5200 Town Center Circle, Suite 600, Boca Raton, Florida 33486.

# I.

## PRELIMINARY STATEMENT

On October 5, 2011, the Amicus Wind Down Corporation, *et al.* Debtors (the "Amicus Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in this Court.  On October 14, 2011, (collectively with October 5, 2011, the "Petition Date"), the Freeze, LLC *et al.* Debtors (the "Freeze Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  On October 12, 2012, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in the Amicus Debtors'[2] cases.

On the Petition Date, the Debtors filed a motion seeking approval of (1) certain bidding procedures; (2) the Asset Purchase Agreement; and (3) the sale of substantially all of the Debtors' assets (the "Sale Motion") to Friendly's Ice Cream, LLC (f/k/a Sundae Group Holdings II, LLC) (the "Purchaser")—an indirect affiliate of Sun Capital—or to another Successful Bidder (as defined in the Sale Motion) following an auction.  On October 28, 2012, the Committee filed an objection to, *inter alia*, the bidding procedures.  Among other things, the Committee objected to the Purchaser's ability to credit bid an alleged subordinated note claim as part of the consideration for the sale.  Also in its objection, the Committee filed an objection to the alleged note claim seeking to recharacterize such claim as equity.  As a result of the Committee's objection, the Debtors and the Purchaser amended the bidding procedures and the Asset Purchase

---

[2] Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Plan or Disclosure Statement.

Agreement to address the Committee's concerns.  On November 3, 2011, the Bankruptcy Court entered an order approving the bidding procedures as revised.

Pursuant to the terms of the Sale Motion, the Debtors engaged in a marketing process to solicit additional bidders for the Debtors' assets.  The Debtors received no bids for their assets and business other than that of the Purchaser.  Following further negotiations with the Committee regarding the terms of the sale and upon reaching a settlement (discussed further below) regarding several issues germane to the sale, including a resolution of the Committee's objection to the credit bid and the recharacterization of the alleged subordinated note claim, on December 29, 2011, the Bankruptcy Court entered the Sale Order approving (i) the Asset Purchase Agreement; (ii) the sale of substantially all of the Debtors' assets to the Purchaser; and (iii) the assumption and assignment of certain executory contracts and unexpired leases.  The sale closed on January 9, 2012.

In accordance with a global settlement (the "Settlement") by and among the Debtors, the Committee, Pension Benefit Guaranty Corporation, and the Purchaser and certain of the Purchaser's affiliates, the consideration paid by Purchaser for the Sale was comprised of: (1) cash sufficient to satisfy the Debtors' outstanding obligations under the Secured Credit Agreement (to the extent not repaid pursuant to the DIP Order and DIP Credit Agreement); (2) a credit bid of the DIP Claims; (3) cash payments to fund the Debtors' wind-down and certain recoveries to unsecured creditors; and (4) assumption of the Assumed Liabilities.  Since the Closing Date, the Debtors have focused on winding up their affairs.

On March 16, 2012, the Debtors filed the original version of the Plan and the *Disclosure Statement for the Debtors' Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*

(the "Disclosure Statement").  Following a hearing held on April 20, 2012, and the submission of amendments to the Plan and Disclosure Statement, the Court entered the *Order (I) Approving the Disclosure Statement and (II) Voting and Solicitation Procedures with Respect to Debtors' First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement Order"), approving the Disclosure Statement (as amended) as containing "adequate information" within the meaning of 11 U.S.C. § 1125, authorizing the solicitation of acceptances and rejections of the Plan (as amended), and establishing related deadlines and procedures. Mailing of solicitation materials to creditors and other parties in interest in accordance with the Disclosure Statement Order was completed on April 27, 2012.[3]

This Memorandum, together with the evidence to be adduced at the Confirmation Hearing, will establish that the Plan meets the requirements for confirmation under Bankruptcy Code section 1129. Among other things, the Plan is fair, reasonable, and economically feasible, and all creditors and interest holders will receive at least as much under the Plan as they would receive in a chapter 7 liquidation.

## II.

## PLAN CONFIRMATION

Bankruptcy Code section 1129(a) states that a court shall confirm a chapter 11 plan where each of the statute's applicable subsections is satisfied.  As set forth below, the Plan satisfies the requirements for confirmation and therefore should be confirmed.

---

[3]  The Amicus Debtors [Docket Nos. 1020, 1021] and Freeze Debtors [Docket Nos. 110, 111] have filed affidavits of service with this Court verifying the service of the solicitation materials.

A. **1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code.**

Pursuant to Bankruptcy Code section 1129(a)(1), a chapter 11 plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The legislative history of this subsection indicates that it embodies and incorporates the requirements of Bankruptcy Code sections 1122 and 1123, which govern the classification of claims and interests and the requisite mandatory contents of a plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977). As demonstrated below, the Plan complies with both sections 1122 and 1123, and with all other applicable provisions of the Bankruptcy Code, and thus satisfies the requirements of section 1129(a)(1).

1. **The Plan Satisfies the Requirements of Bankruptcy Code Section 1122.**

Bankruptcy Code section 1122 provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests in such class." 11 U.S.C. § 1122(a). By its plain language, section 1122 prohibits only the classification of dissimilar claims in the same class. *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993); *Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankruptcy Code, N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) ("Classification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason."). As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case. *See Steelcase v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy court judges must have discretionary power in classifying claims under §1122(a)"). Additionally, Bankruptcy Code section 1122(b) expressly permits separate

classification of certain claims for purposes of administrative convenience. 11 U.S.C. § 1122(b).

Article II of the Plan places Claims and Interests into ten different Classes, except for Assumed Administrative Claims, Remaining Administrative Claims, Professional Compensation Claims, DIP Claims and Priority Tax Claims, which are not classified. Each claim or interest placed in a particular class is substantially similar to the other claims or interests in that class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests. For example, the Plan properly classifies the Other Priority Claims (Class 1) separately from Other Secured Claims (Class 2), Secured Credit Agreement Claims (Class 3), Secured Promissory Note Claims (Class 4), General Unsecured Claims Against Amicus Debtors (Class 5), General Unsecured Claims Against Freeze Debtors (Class 6), PBGC General Unsecured Claims (Class 7), Section 510(b) Claims (Class 8), and Intercompany Claims (Class 9), as each may hold (or may have held) different legal rights in property of the estate or legally dissimilar from one another. Class 10 consists of Equity Interests. Equity Interests are appropriately classified separately from Claims, and all are receiving the same treatment.

No party in interest has objected to the classification of Claims or Equity Interests under the Plan. Each of the Claims or Equity Interests in each particular Class is substantially similar to other Claims or Equity Interests in such Class. The classification of Claims and Equity Interests in the Plan therefore complies with 11 U.S.C. § 1122.

### 2. The Plan Complies with the Mandatory Requirements of Section 1123(a) of the Bankruptcy Code.

Bankruptcy Code section 1123(a) sets the mandatory requirements for the contents of a

corporate debtor's chapter 11 plan.  11 U.S.C. § 1123(a).  Additionally, section 1123(b) sets

forth various provisions that may, but need not, be included within a chapter 11 plan. 11 U.S.C.

§ 1123(b).  As shown below, the Plan complies with all of these requirements.

**a.    1123(a)(1): The Plan Designates Classes of Claims and Interests.**

Bankruptcy Code section 1123(a)(1) requires that a chapter 11 plan designate classes of

claims and interests other than claims of a kind specified in section 507(a)(2) (administrative

expense claims), section 507(a)(3) (claims arising during the "gap" period in an involuntary

bankruptcy case), and in section 507(a)(8) (priority tax claims).  11 U.S.C. § 1123(a)(1).

Article II of the Plan satisfies this requirement by expressly classifying all Claims and Equity

Interests, other than Assumed Administrative Claims, Remaining Administrative Claims

Professional Compensation Claims, DIP Claims and Priority Tax Claims.

**b.    1123(a)(2): The Plan Identifies Unimpaired Classes of Claims and Interests.**

Bankruptcy Code section 1123(a)(2) requires that a plan "specify any class of claims or

interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2).  Article II of the Plan

satisfies this requirement by specifying that the Claims in Classes 1, 2, and 3 are unimpaired.

**c.    1123(a)(3): The Plan Specifies the Treatment of Impaired Classes.**

Bankruptcy Code section 1123(a)(3) requires that a plan "specify the treatment of any

class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3).  Article II of

the Plan satisfies this requirement by specifying that Classes 4 through 10 are impaired and by

specifying the treatment of the Claims and Equity Interests in each of Classes 4 through 10.

**d.    1123(a)(4): The Plan Provides for the Same Treatment of Claims Within Each Class.**

Bankruptcy Code section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest in a particular class. 11 U.S.C. § 1123(a)(4). Article II of the Plan satisfies this requirement by providing the same treatment to each Claim or Equity Interest that is classified in a particular class under the Plan.

### e.    1123(a)(5): The Plan Provides for Adequate Means of Implementation.

Bankruptcy Code section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and sets forth examples of typical means for implementing a plan. 11 U.S.C. § 1123(a)(5). The Plan satisfies this requirement by setting forth specific means for its execution and implementation, including the establishment of the Liquidating Trust, the source of funding of the Plan and the manner of making distributions of property under the Plan. *See* Article III of the Plan.

### f.    1123(a)(6): Provisions Regarding the Debtor's Charter Are Inapplicable.

Bankruptcy Code section 1123(a)(6) requires that, with respect to a corporate debtor, a chapter 11 plan provide for the inclusion in the reorganized debtor's charter of a prohibition against the issuance of non-voting equity securities and related protections for holders of preferred shares. 11 U.S.C. § 1123(a)(6). The Plan is a liquidating plan and does not provide for the issuance of equity or other securities by the Debtors. This requirement therefore is not applicable.

### g.    1123(a)(7): The Plan Only Contains Provisions that Are Consistent with the Interests of Creditors and Equity Security Holders with Respect to Officers and Directors.

Finally, Bankruptcy Code section 1123(a)(7) provides that a plan must "contain only provisions that are consistent with the interests of creditors and equity security holders and with

public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee." 11 U.S.C. § 1123(a)(7). In accordance with Article III.E. of the Plan, on the Effective Date all of the Debtors' officers and directors will be released of their duties. Article III.B of the Plan satisfies the requirement of section 1123(a)(7) by providing for the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee. The Liquidating Trustee will be Peter Kravitz of Solution Trust, who, the Debtors believe (and the Committee believes), has extensive experience in the insolvency field in general, is fully familiar with these chapter 11 cases in particular, and is a disinterested person, as that term is defined in the Bankruptcy Code. Specifically, Mr. Kravitz has served in various post-confirmation wind-down capacities, including serving as (i) Liquidating Trustee in the chapter 11 cases of Fleetwood Enterprises, (ii) Liquidating Trustee/Disbursing Agent in the chapter 11 cases of Allen Capital Partners Creditors Trust and (iii) Co-Chairman of the Trust Advisory Board in the chapter 11 cases of Circuit City Liquidating Trust. Mr. Kravitz was selected by the Creditors' Committee after interviewing several other qualified candidates, based upon, among other factors, Mr. Kravitz's extensive experience. Moreover, Mr. Kravitz and Solution Trust have run a conflicts check through their computerized client and conflicts check database and can represent that neither Mr. Kravitz nor Solution Trust have any conflict in the Debtors' chapter 11 cases that would disqualify either of them from classification as a disinterested person under the Bankruptcy Code. The establishment of the Liquidating Trust and appointment of the Liquidating Trustee are therefore consistent with the interests of creditors.

The establishment of the Liquidating Trust and appointment of the Liquidating Trustee

are therefore consistent with the interests of creditors and equity security holders.

**h.      1123(b): The Plan Includes Appropriate Permissive Provisions.**

In addition to the provisions required by Bankruptcy Code section 1123(a), Bankruptcy

Code section 1123(b) permits inclusion in a plan of "any other appropriate provision not

inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). This is a broad

grant of authority. As stated by the United States Supreme Court: "The Code . . . grants the

bankruptcy courts residual authority to approve reorganization plans including any appropriate

provision not inconsistent with the applicable provisions of this title." *United States v. Energy*

*Resources Co., Inc.*, 495 U.S. 545, 549 (1990) (internal quotations omitted).

The Plan contains a number of permissive provisions, all of which are intended to

facilitate a prompt resolution of these cases and are appropriate under the circumstances. Among

other things, the Plan provides for the preservation and retention of Causes of Action by the

Liquidating Trust, for the substantive consolidation of the Debtors, and for the rejection of

certain executory contracts and unexpired leases not previously rejected. *See* Article III.D, III.H,

and III.K of the Plan.

**B.      1129(a)(2): The Debtors Have Complied with All Applicable Provisions of the Bankruptcy Code.**

Bankruptcy Code section 1129(a)(2) requires that a plan proponent "comply with the

applicable provisions of [title 11]." The legislative history to Section 1129(a)(2) explains that

this provision incorporates the disclosure and solicitation requirements of Bankruptcy Code

sections 1125 and 1126. S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)]

requires that the proponent of the plan comply with the applicable provisions of Chapter 11, such

as Section 1125 requiring disclosure."). *See also In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr.

S.D.N.Y. 1988); *In re Johns-Mansville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *rev'd in part*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd* 843 F.2d 636 (2d Cir. 1988).    The Debtors have conducted the solicitation of acceptances and rejections of the Plan in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and believe that they have satisfied the requirements of Bankruptcy Code section 1129(a)(2).    On June 1, 2012, the Debtors filed the tabulation of ballots (the "Voting Report"), reflecting the acceptance of the Plan by Classes 5 and 7, the two classes entitled to vote upon the Plan.

C.       **1129(a)(3): The Plan Was Proposed in Good Faith.**

Pursuant to Bankruptcy Code section 1129(a)(3), a chapter 11 plan may be confirmed only if it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  Although not defined in the Bankruptcy Code, "good faith" has been described by the courts to include: (i) the debtor's "'legitimate hope of success,'" *In re Century Glove, Inc.*, Civ. A. 90-400-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) (quoting *In re Sun Country Development, Inc.*, 764 F.2d 406, 408 (5th Cir. 1985)); *see also In re Shoen*, 193 B.R. 302, 318 (Bankr. D. Ariz. 1996); (ii) a showing that the plan was proposed with "honesty and good intentions," *see Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); (iii) the existence of "'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code,'" *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984); *see Traders State Bank v. Mann Farms, Inc. (In re Mann Farms, Inc.)*, 917 F.2d 1210, 1214 (9th Cir. 1990); *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 835 (9th Cir. 1989); and (iv) whether the debtor's bankruptcy filing was designed to abuse the judicial process and the purpose of the reorganization provisions of the Bankruptcy Code.  *See In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987); *In re VIP Motor Lodge, Inc.*, 133 B.R. 41, 44 (Bankr.

D. Del. 1991) (finding of good faith where debtor did not seek to use the bankruptcy process for dilatory purposes).

A court should consider the totality of the circumstances surrounding a plan to determine if it was proposed in good faith. *See Mann Farms*, 917 F.2d at 1214. Additionally, the mere allegation of bad faith is insufficient to demonstrate lack of compliance with Bankruptcy Code section 1129(a)(3). *See Jersey City Medical Ctr.*, 817 F.2d 1055, 1059-60 (3d Cir. 1987) (creditors' objection based on lack of good faith, which was not supported by credible evidence, was properly overruled).

The primary objectives of the Bankruptcy Code that are advanced by a chapter 11 case are the reorganization of the debtor and the maximization of the value of the estate, *see In re Bonner Mall P'ship*, 2 F.3d 899, 916 (9th Cir. 1993), and "'the expeditious resolution of disputed and speedy payment to creditors.'" *In re Kemp*, 134 B.R. 413, 415 (Bankr. E.D. Cal. 1991) (quoting *In re Hoosier Hi-Reach, Inc.*, 64 B.R. 34, 38 (Bankr. S.D. Ind. 1986)). The Plan accomplishes these goals.

Through the Plan, the Debtors are seeking to maximize the value of the Debtors' assets for the benefit of their creditors. The Debtors previously sold substantially all of their assets through the bankruptcy process and by operation of the Sale Order. That transaction, and the Settlement between the Debtors, the Committee, the Pension Benefit Guaranty Corporation and the Purchaser, furnishes sufficient funding to pay administrative and priority claims in full and to provide a significant recovery for holders of general unsecured claims. (See additional discussion below at Section III). The sale transaction, the Settlement, and the Plan are all the result of extensive, arm's-length, good faith negotiations between and among the major

constituencies in these cases. The Debtors respectfully submit that the Plan was negotiated with

the objective of ensuring that economic stakeholders in the estate realize the best possible

recovery under the circumstances. Accordingly, the Plan has been proposed in good faith and

not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy

Code.

> **D.      1129(a)(4): The Plan Provides for Court Approval of All Payments for Services in Connection with these Cases.**

Bankruptcy Code section 1129(a)(4) requires that a payment "for services or for costs

and expenses in or in connection with the case, or in connection with the plan and incident to the

case, has been approved by, or is subject to approval of, the court as reasonable." 11 U.S.C.

§ 1129(a)(4). This section has been construed to require that all payments of professional fees

that are made from estate assets be subject to bankruptcy court review and approval as to their

reasonableness. *See In re Resorts Int'l, Inc.*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990); *Johns-

Manville*, 68 B.R. at 632.

Pursuant to the *Administrative Order Establishing Procedures for Interim Compensation

Pursuant to Section 331 of the Bankruptcy Code* (the "Interim Compensation Order"), the Court

authorized and approved the procedures for payment of certain fees and expenses of

professionals retained in these Cases. All such fees and expenses, as well as all other accrued

fees and expenses of professionals through the Effective Date, remain subject to final review for

reasonableness by the Court under section 330 of the Bankruptcy Code or pursuant to the Court-

approved standards pursuant to which the Debtors retained such professionals. Moreover,

pursuant to Article II.A.3 of the Plan, professionals seeking professional fees arising prior to the

Effective Date must file requests for allowance of such fees with the Court on or before 45 days

after the Effective Date, and Professional Compensation Claims ultimately are subject to approval of this Court.  As such, the Plan complies with Bankruptcy Code section 1129(a)(4). *See In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (Bankruptcy Code section 1129(a)(4) satisfied where plan provides for payment of "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses are governed by various Bankruptcy Code provisions – e.g., §§ 328, 329, 330, 331 and 503(b) – and need not be explicitly provided for in a chapter 11 plan.").

### E.   1129(a)(5): The Plan Discloses Directors and Officers.

Bankruptcy Code section 1129(a)(5) requires: (i) that the proponent of a plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the identity of any insider that will be employed by the reorganized debtor and the nature of the compensation to be provided to such insider.  11 U.S.C. § 1129(a)(5).  The Plan complies with this requirement by providing that Peter Kravitz of Solution Trust has been appointed as the Liquidating Trustee pursuant to the Liquidating Trust Agreement.   Further, Kravitz's compensation as Liquidating Trustee is reflected in Section 6.6 of the Liquidating Trust Agreement filed on May 15, 2012.

### F.   1129(a)(6): The Plan Does Not Effect Any Change in Publicly Regulated Rates.

Bankruptcy Code section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of a debtor approve any changes in rate regulations provided in a plan.

11 U.S.C. § 1129(a)(6).  The Debtors are not subject to any such regulation, and the Plan does not propose any rate changes.  Section 1129(a)(6) therefore is not applicable, and consent from a regulatory agency is not required.

### G.    1129(a)(7): The Plan Is in the "Best Interests" of Creditors.

The "best interests" test of Section 1129(a)(7) of the Bankruptcy Code requires that holders of impaired claims or interests who do not vote to accept the plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of [title 11] on such date." 11 U.S.C. § 1129(a)(7)(A)(ii).  If the Court finds that each non-consenting member of an impaired class would receive at least as much under the Plan as it would receive in a chapter 7 liquidation, the Plan satisfies the best interests test.  *See In re Century Glove, Inc., supra* at *7.

As discussed in Section V of the Disclosure Statement, the Plan satisfies the best interest test as to all impaired creditors, whether or not those creditors vote to accept the Plan.  Under the Plan and under chapter 7, the remaining assets of the Estate will be liquidated and reduced to money.  However, under the Plan, a greater recovery will inure to the holders of General Unsecured Claims Against Amicus Debtors, due to decreased costs, particularly with respect to the fees of a chapter 7 trustee that would be incurred in addition to expenses under the Plan.  As such, the Debtors respectfully submit that creditors will receive at least as much (indeed more) than they would if the Plan were not confirmed and the Case were liquidated in chapter 7.

### H.    1129(a)(8): Acceptance by Impaired Classes.

Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests established under a plan either accepts the plan or is not impaired under the plan.  11 U.S.C.

§ 1129(a)(8).  A class of claims accepts a plan if holders of at least two-thirds in dollar amount and a majority in number of voting claims in that class vote to accept the plan.  11 U.S.C. § 1126(c); *see also* 11 U.S.C. § 1126(d) (governing classes of interests).  A class of claims or interests that is not impaired is deemed to have accepted the plan.  11 U.S.C. §§ 1126(f) and 1129(a)(8).  A class of claims or interests that does not receive or retain any property under the plan is deemed to reject the plan.  11 U.S.C. § 1126(g).

Class 5 (General Unsecured Claims Against Amicus Debtors) and Class 7 (PBGC General Unsecured Claims) are impaired and entitled to vote on the Plan.  Under the Disclosure Statement Order, the deadline for returning ballots accepting or rejecting the Plan was May 25, 2012, and the deadline for the Debtors to file the Voting Report showing the results of the voting is June 1, 2012.  Class 5 has voted to accept the Plan and Class 7 has voted to accept the Plan.

Class 4 (Secured Promissory Note Claims), Class 6 (General Unsecured Claims against Freeze Debtors), Class 8 (Section 510(b) Claims), Class 9 (Intercompany Claims) and Class 10 (Equity Interests) are deemed to have rejected the Plan.  As to these Classes, Bankruptcy Code section 1129(a)(8) cannot be satisfied, and the Debtors therefore request confirmation of the Plan under section 1129(b) of the Bankruptcy Code for the reasons discussed in Section II.P. below.

I.      **1129(a)(9): The Plan Complies with the Required Treatment of Administrative Claims and Priority Claims.**

Bankruptcy Code section 1129(a)(9) requires that, unless the holder of a particular claim agrees to a different treatment of such claim, persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive cash payments under the Plan.  *See* 11 U.S.C. § 1129(a)(9).

The Plan satisfies the requirements of section 1129(a)(9).  As more specifically described

in Article II.A, the Plan generally provides that Allowed Assumed Administrative Claims, Allowed Remaining Administrative Claims, Allowed Professional Compensation Claims, and Allowed Priority Tax Claims will be paid in full upon the Effective Date or promptly thereafter, or, if they are not yet Allowed Claims, shortly after they become Allowed Claims and are due and payable by their terms.

The IRS filed an objection to the Plan [Docket No. 1082] (the "IRS Objection") objecting to the Plan asserting, among other things, that (a) the Plan fails to provide for the payment of interest on the IRS administrative expense claims; and (b) the Plan fails to comport with Section 1129(a)(9)(C) of the Bankruptcy if the IRS tax claim is not paid in full in cash on the Effective Date. The Debtors anticipate that the IRS Objection on these issues will be resolved by the inclusion of certain language in the proposed Confirmation Order.

HolyOke Mall Company, L.P. and PCK Development Company, L.L.C. filed a limited objection to the Plan [Docket No. 1083] (the "HolyOke/PCK Objection") asserting, among other things, that their administrative claims must be paid in full on the Effective Date. The HolyOke/PCK Objection has been resolved.

Dairy Marketing Services, LLC filed an objection to the Plan [Docket No. 1085] (the "DMS Objection") asserting, among other things, that their asserted Section 503(b)(9) claim must be paid in full or receive equal treatment with professional fees or other administrative claims. The DMS Objection has been resolved.

Accordingly, the Debtors respectfully submit that the relevant provisions of the Plan satisfy Bankruptcy Code section 1129(a)(9).

**J.        1129(a)(10): Acceptance of the Plan by One Impaired Class of Claims.**

Bankruptcy Code section 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan. *See* 11 U.S.C. § 1129(a)(10). As discussed above, the deadline for returning ballots accepting or rejecting the Plan was May 25, 2012. Pursuant to the Voting Declaration filed June 1, 2012, both Class 5 and Class 7—the two impaired classes entitled to vote on the Plan—have voted to accept the Plan.

**K.        1129(a)(11): The Plan Is Feasible.**

Bankruptcy Code section 1129(a)(11) provides that a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The Plan provides for the disposition of the Debtors' remaining assets and the distribution of the proceeds to holders of Allowed Claims by and through the Wind Down Budget and the Liquidating Trust. As discussed in the Declaration of Gregory A. Pastore Of The Purchaser In Support Of Confirmation of The Debtors' First Amended Plan Of Liquidation Pursuant To Chapter 11 Of The Bankruptcy Code (the "Pastore Declaration"), the Purchaser will satisfy all Allowed Assumed Administrative Claims. As discussed in the Pastore Declaration, the Debtors are setting aside a Senior Claims reserve of approximately $1.95 million, which will be sufficient to pay all Priority Tax Claims, Other Priority Claims, and Other Secured Claims in full. As discussed in the Plan, the Debtors have set aside a Professional Fee Escrow Account, which is sufficient to cover all Allowed Remaining Administrative Claims, which consist solely of Accrued Professional Compensation Claims. Because all Assumed Administrative Claims, Allowed Remaining Administrative Claims, Priority Tax Claims, Other Priority Claims, Other

Secured Claims, and other expenses will be paid in full, section 1129(1)(11) is satisfied.

**L.        1129(a)(12): The Plan Provides for Payment of All Statutory Fees.**

Bankruptcy Code section 1129(a)(12) requires that either all fees payable under 28

U.S.C. § 1930 as determined by the Court at the Confirmation Hearing have been paid or that the

plan provide for the payment of all such fees on the effective date of the plan. Article X.B of the

Plan provides for the payment in full of United State Trustee Fees arising under 28 U.S.C.

§ 1930 and that the Debtors will pay all required U.S. Trustee Fees following the Effective Date,

until the cases are closed. Accordingly, the Plan satisfies Section 1129(a)(12) of the Bankruptcy

Code.

**M.        Section 1129(a)(13) Is Inapplicable.**

Bankruptcy Code section 1129(a)(13) requires the Plan to continue all retiree benefits

within the meaning of Bankruptcy Code section 1129(a)(13). The Debtors' former pension plan

has been terminated by the PBGC and, therefore, the Debtors do not have any remaining

obligations to pay "retiree benefits" for the purposes of 11 U.S.C. § 1114 and, as such, this

requirement is inapplicable.

**N.        Sections 1129(a)(14) and (15) Do Not Apply to Corporate Debtors.**

Bankruptcy Code sections 1129(a)(14) and (15) apply only to individual Debtors, and

thus are inapplicable. *See* 11 U.S.C. §§ 1129(a)(14) and (15).

**O.        Section 1129(a)(16) Is Inapplicable.**

Bankruptcy Code section 1129(a)(16) places limits on the permissible transfers of

property by a nonprofit entity or a trust under a chapter 11 plan. 11 U.S.C. § 1129(a)(16). As

the Debtors are not a nonprofit entity or a trust, this requirement is inapplicable.

**P.   The Plan Complies with the Requirements of Bankruptcy Code Section 1129(b).**

As discussed above, because Classes 4, 6, 8, 9 and 10 are deemed to have rejected the Plan, the requirements of Bankruptcy Code section 1129(a)(8) are not satisfied.  The Debtors therefore request confirmation of the Plan under Bankruptcy Code section 1129(b), the "cramdown" provision with respect to any class that rejects the Plan.  Bankruptcy Code section 1129(b) provides that where all of the applicable confirmation requirements of section 1129(a) other than subsection 1129(a)(8) are satisfied, the Court, on request of the plan proponent, shall confirm the plan if it does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interest that is impaired under, and that has not accepted, the plan.  11 U.S.C. § 1129(b).

**1.   The Plan Is Fair and Equitable.**

The Plan is "fair and equitable" with respect to Classes 6, 8, 9 and 10 under Bankruptcy Code section 1129(b).  The requirements of this test with respect to unsecured creditors and equity holders are set forth in Sections 1129(b)(2)(B) and 1129(b)(2)(C).  Each section specifies two alternative requirements, only one of which must be satisfied in order for a plan to be fair and equitable with respect to a dissenting class of unsecured creditors or equity interests.  *See* 11 U.S.C. § 1129(b)(2)(B)(i), (ii) and 1129(b)(2)(C)(i), (ii); *see also, In re P.J. Keating Co.*, 168 B.R. 464, 468 (Bankr. D. Mass. 1994) ("test under Section 1129(b)(2)(C) is an alternative one").

With respect to Classes 6, 8, 9 and 10, the Plan satisfies Bankruptcy Code section § 1129(b)(2)(C)(ii).  That section permits cramdown of a class that has not accepted the plan, where "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property."   11 U.S.C.

§ 1129(b)(2)(C)(ii). Under the Plan, none of these Classes will receive a distribution.

Furthermore, to the extent that judicial decisions have articulated an uncodified aspect of the fair and equitable standard that requires classes senior to a non-assenting class to receive no more than 100% of the value of their claims, the Plan satisfies that requirement. *See, e.g., In re Mcorp Fin., Inc.*, 137 B.R. 219, 234 (Bankr. S.D. Tex. 1992), *dismissed on other grounds*, 139 B.R. 820 (S.D. Tex. 1992) ("If former stockholders' interests are eliminated, a valuation is required to make sure that the senior classes of claims are not being provided for more than in full."). Neither Class 5 nor Class 7 can receive more under the Plan than the full amount of their Claims.

With respect to Class 4, insofar as the holder of Class 4 claims, Sundae Group Holdings I, LLC, was a party to and accepted the Settlement, it consents to the treatment under the Plan.

### 2.    The Plan Does Not Discriminate Unfairly.

The "unfair discrimination" standard of Bankruptcy Code section 1129(b) requires that a dissenting class receive "treatment which allocates value to the [dissenting] class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor," *Mcorp*, 137 B.R. at 234, so that "a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1987), *aff'd, Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *see also CoreStates Bank, N.A. v. United Chemical Techs.*, 202 B.R. 33, 47 (E.D. Pa. 1996).

The Bankruptcy Code does not define "unfair discrimination," leaving it to the courts to develop their own definitions and criteria. *In re Environdyne Indus.*, No. 93 B 310, 1993 WL 566565, at *36 (Bankr. N.D. Ill. Dec. 20, 1993). Under one test used by several bankruptcy courts, first articulated in *In re Dow Corning, Corp.*, there is a rebuttable presumption that a plan

is unfairly discriminatory when there is:

(1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution."

*In re Dow Corning, Inc.*, 244 B.R. 705, 710-11 (Bankr. E.D. Mich. 1999) (subsequent history omitted); *see also In re Exide Techs.*, 30 B.R. 48, 79-80 (Bankr. D. Del. 2003) (using substantially similar test to *Dow Corning*); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 611 (Bankr. D. Del. 2001) (same).

None of the *Dow Corning* factors or any other indicia of unfair discrimination, is present in this case.  There are no dissenting classes or classes similarly situated or of the same priority as Classes 4, 6, 8, 9 and 10.  The third *Dow Corning* factor is similarly inapposite; the treatment of dissimilar classes is irrelevant to the determination of unfair discrimination.  Thus, it is clear that the Plan does not discriminate – unfairly or otherwise – against Classes 4, 6, 8, 9 or 10.

## III.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS IS APPROPRIATE

The Debtors respectfully submit that substantive consolidation provided for by the Plan is appropriate under the facts and circumstances of these cases either (a) because it is consensual and non-offensive or (b) because it is warranted under existing facts and law.

### A.    Substantive Consolidation is Consensual and Non-Offensive.

The United States Court of Appeals for the Third Circuit specifically has noted that consent can provide a basis for substantive consolidation.  *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).  Here, the consent of all of the creditors to the substantive consolidation

provided for by the Plan is established by the number of votes accepting the Plan.  Further, no party in interest objected to the plan on grounds of substantive consolidation.  Accordingly, the Debtors submit that the substantive consolidation provided by the Plan should be approved by the Court, since it truly is consensual and therefore complies with the Third Circuit's directives in *Owens Corning*.

### B.    Substantive Consolidation Is Warranted Under Facts and Law.

Bankruptcy Code § 1123(b) permits the inclusion of a broad variety of other provisions in a plan.  Section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  Consistent with 11 U.S.C. § 1123(b), the Plan provides for the substantive consolidation of the Debtors' estates pursuant to Bankruptcy Code §1123(a)(5)(C) for voting and distribution purposes.  Considering the circumstances present here, and based on case law authority, substantive consolidation of the estates is appropriate for purposes of implementing the Plan.

"[S]ubstantive consolidation may be authorized whenever it will benefit the debtors' estates without betraying legitimate expectations of the debtors and their respective creditors."  *In re Affiliated Foods, Inc.*, 249 B.R. 770, 776 (Bankr. W.D. Mo. 2000).  "It is clearly established that Bankruptcy Courts have long had such authority pursuant to their general equity jurisdiction, currently as implemented by § 105(a) of the Bankruptcy Code."  *In re F.A. Potts & Co.*, 23 B.R. 569, 571 (Bankr. E.D. Penn. 1982).  "Because substantive consolidation is an 'equitable' doctrine, the bankruptcy court has the power to modify substantive consolidation to meet the specific needs of the case."  *In re Standard Brands Paint Company*, 154 B.R. 563, 570 (Bankr. C.D. Cal. 1993).

In *In re Auto-Train Corp., Inc.*, 810 F.2d 270 (D.C. Cir. 1987), the D.C. Circuit articulated a three-part test under which the moving party must show:

(1) a substantial identity between the entities to be consolidated;

(2) that consolidation is necessary to avoid harm or to achieve some benefit; and

(3) in the event that the creditor shows harm, that the benefits of consolidation "heavily" outweigh the harm. *Id.* at 276; *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 618 (Bankr. D. Del. 2001). *See also Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991); *In re Giller*, 962 F.2d 796 (8th Cir. 1992). The test in the Second and Ninth Circuits is substantially similar, requiring that movant demonstrate *either*: "(i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,' . . . or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *In re Augie/Restivo Banking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988) (citations omitted); *In re Bonham*, 229 F.3d 750, 766 (9th Cir. 2000) (adopting *Augie/Restivo* test). *See also In re Snider*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982) ("possibility of economic prejudice which would result from continued corporate separateness outweighed the minimal prejudice that consolidation would cause."); *In re F.A. Potts and Co.*, 23 B.R. 569, 572 (Bankr. E.D. Pa. 1982) (following *Snider*); *Bracaglia v. Manzo (In re United Stairs Corp.)*, 176 B.R. 359, 369 (Bankr. D.N.J. 1995) ("court must weigh the economic prejudice of continued separateness against the economic prejudice of substantive consolidation.").

In *Genesis Health Ventures*, the Court granted substantive consolidation based on the following showing:

> Here the debtors have shown both substantial identity between the entities to be consolidated, and benefit to the creditors to be achieved by the consolidation. The Genesis entities operate as business units. . . . These business units operate as separate,

> integrated units, without the formality of separate corporate
> entities. A central cash management system is maintained for all
> of the entities, through which most revenues are received and
> accounts are paid. The Senior Lenders hold debt that is secured by
> substantially all of the Genesis entities. Inter-company guarantees
> for single claims exist among the Genesis entities.

*Id.* 266 B.R. at 619.

Consistent with 11 U.S.C. § 1123(b), the Plan provides for the substantive consolidation of the Debtors' estates pursuant to Bankruptcy Code §1123(a)(5)(C) for voting and distribution purposes. No party in interest has objected to the Plan based on substantive consolidation grounds. As has previously been made clear on the record in the Debtors' cases (*see, e.g., Declaration of Steven C. Sanchioni of Friendly Ice Cream Corporation In Support of Debtors' Chapter 11 Petitions and First Day Motions*), the Amicus Debtors operated an integrated business that effectively operated as one enterprise. The Freeze Debtors, furthermore, operated collectively as the holding companies for the Amicus Debtors.

Moreover, the limited substantive consolidation provided by the Plan will avoid certain creditors' receiving a windfall double-recovery on account of substantially identical claims against multiple Debtors. Creditors transacted business with the Amicus Debtors and the Freeze Debtors as if the collective Debtor groups were integrated and consolidated enterprises, not on an individual Debtor-entity basis. In some cases, the Amicus Debtors were jointly and severally indebted to creditors, including their secured lenders. All of the Amicus Debtor subsidiaries are ultimately owned by Friendly Ice Cream Corporation, and the finances and operations of all the Amicus Debtors were controlled centrally from the Amicus Debtors' corporate office (including by use of a centralized cash management system). This unified operation, together with creditors' reliance upon the Debtors' consolidated enterprise, supports substantive consolidation.

Substantive consolidation would generate significant administrative benefits to the Debtors' estates. First, consolidation would eliminate the burden of attempting to segregate and establish the specific assets and liabilities of each individual Debtor and would obviate the

need to litigate or otherwise establish inter-Debtor claims.   Second, consolidation would streamline the distribution process by eliminating the need to process claims against each of the Debtors separately.   Third, consolidation would eliminate duplicative claims that have been filed against multiple Debtors.   Fourth, consolidation would eliminate any possible dispute with respect to the availability of the Debtors' assets for distribution among all of their creditors. Each of these benefits will directly benefit creditors by greatly reducing administrative costs and the thereby increasing the number of dollars available for distribution, and consolidation is accordingly warranted.

The foregoing facts easily satisfy both the *Augie/Restivo* and *Auto-Train* tests. Creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, thus satisfying *Augie/Restivo*.   Moreover, there is a substantial identity between the entities to be consolidated, a substantial administrative benefit to the estate, and no prejudice to creditors, satisfying *Auto-Train*.

For the reasons stated above, the Debtors respectfully submit that the substantive consolidation of the Debtors' chapter 11 cases is in the best interests of the Debtors, their estates and their creditors, and should be approved by the Court.

## IV.

## EXCULPATION, RELEASES, AND INJUNCTION

The Plan contains two principal categories of releases.   First, Article VI.B of the Plan contains releases by the Debtors.   Second, Article VI.C of the Plan contains Third-Party Releases—*i.e.*, releases of the Debtor Releasees, the Releasing Parties and the Third Party Releasees.   In addition, Article VI.D of the Plan provides a narrow exculpation of the Exculpated Parties, and Article VI.E of the Plan provides an injunction against pursuing certain claims.

## A. Exculpation

By the exculpation provision, the Debtors seek an exculpation for parties critical to the Debtors' cases and the Settlement for any acts or omissions in connection with, *inter alia*, the Plan, the Disclosure Statement, the Liquidating Trust Agreement, and related agreements but specifically excluding acts determined by a final order to have constituted gross negligence or willful misconduct.

The Exculpated Parties have participated in good faith with respect to formulating and negotiating the Plan and are entitled to protection from lawsuits from disgruntled creditors or any other parties in interest. The scope of the exculpation provisions contained in Article VI.D of the Plan is consistent with chapter 11 plans confirmed in this and other districts. *See, e.g., In re Masonite Corp.*, No. 09-10844 (PJW) (Bankr. D. Del. May 29, 2009) [Docket No. 346]; *In re Hilex Poly Co. LLC*, No. 08-10890 (KJC) (Bankr. D. Del. June 26, 2008) [Docket No. 212]; *In re Remy Worldwide Holdings Inc.*, No. 07-11481 (KJC) (Bankr. D. Del. Nov. 20, 2007) [Docket No. 207]; *In re Foamex Int'l Inc.*, No. 05-12685 (KG) (Bankr. D. Del. Feb. 1, 2007) [Docket No. 2269].

Finally, the Debtors note that the exculpation provision of the Plan will eliminate the costs and risks of litigation for the Debtors and speed distribution and closing of the Debtors' cases, which may otherwise be hampered or diverted by litigation (either as a party to such litigation themselves or the indemnifying stakeholder who will bear the burden of the investigation, prosecution or participation in such litigation). The exculpation and injunction provisions are the product of arm's-length negotiations and have been critical to obtaining the support of the various constituencies for the Plan. Accordingly, the Debtors submit that the Plan's exculpation provision are necessary and appropriate under the circumstances of these Cases and should be approved pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

### B. Releases and Injunction

The release provisions are included in the Plan in consideration of the Settlement among the Debtors, the Purchaser, the DIP Agent, and the Committee, among other things. Indeed, the Debtors already have granted (and the Court already has approved) releases in favor of the Purchaser, Sun Capital, and the DIP Agent in connection with (and as consideration under) the DIP Facility. *See Final Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To Section 364 Of The Bankruptcy Code, (II) Authorizing The Use Of Cash Collateral Pursuant To Sections 105, 361, 362 And 363 Of The Bankruptcy Code, (III) Granting Adequate Protection To The Prepetition Secured Parties Pursuant To Sections 361, 362, 363 And 364 Of The Bankruptcy Code, And (IV) Granting Liens And Superpriority Claims On A Permanent Basis Pursuant To Bankruptcy Rules 4001(B) And 4001(C).* Notably, the Releasing Parties in connection with the Third-Party Release do *not* include creditors in voting classes who have not voted to accept the plan or creditors in non-voting classes who are deemed to reject the Plan. Thus, the Debtors submit that the Third-Party Release is in the nature of a consensual release.

As part of the Settlement, the Purchaser agreed to fund the Wind-Down Budget beyond what is required under Delaware law in exchange for, among other things, the inclusion of the release and exculpation provisions in the Plan. The agreement by the Debtors to grant broad releases, however, was fundamental to the Settlement. It is likely that the Settlement would not have been reached without the release and exculpation provisions contained in the Plan. The promise of release (and exculpation) played a significant role in facilitating the Settlement. The released and exculpated parties played a key role in facilitating the Sale and in attempting to facilitate the efficient wind-down of the Debtors' Estates.

The Third Circuit sides with the majority of reported federal circuit court decisions that permit third-party releases and injunctions under certain circumstances.[4] *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.),* 315 F.3d 217, 227 (3d Cir. 2003) (in approving the indemnification provisions in a financial advisor's retention agreement: "The 'hallmarks of permissible non-consensual releases' are 'fairness, necessity to the reorganization, and specific factual findings to support these conclusions.' . . . Added to these requirements is that the releases 'were given in exchange for fair consideration.'") (citing *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 214 (3d Cir. 2000) (while recognizing that third parties may be released and claims against them may be enjoined under a plan where there is a specific factual findings of fairness, necessity to the reorganization and fair consideration, injunction of claims against officers and directors of debtor violated section 524(e) of the Bankruptcy Code in that case)); *accord In re PWS Holding Corp.,* 228 F.3d at 246 (discussing *Continental Airlines:* "We did not treat § 524(e) as a per se rule barring any provision in a reorganization plan limiting the liability of third parties . . . Indeed, because this release does not affect the liability of third parties, but rather sets for the appropriate standard of liability, we believe that this release is outside of the scope of § 524(e)."). The Third Circuit has

---

[4]The majority of federal Circuit Courts of Appeal permit third-party releases and injunctions under certain circumstances. *See Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),* 280 F.3d at 656-57 ("section 105 of the Bankruptcy Code grants a bankruptcy court the broad authority to issue 'any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' . . . Section 1123(b)(6) permits a reorganization plan to 'include . . . any appropriate provision no inconsistent with the applicable provisions of this title . . . such an injunction is 'not inconsistent' with the [Bankruptcy] Code, and is authorized by section 1123(b)(6).") (citing 11 U.S.C. §§ 105(a), 1123(b)(6)); *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973 (1st Cir. 1995); *In re Specialty Equipment Co.,* 3 F.3d 1043, 1047 (7th Cir. 1993) (third-party releases permitted where creditors voting on plan have consented to release provisions); *SEC v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group),* 960 F.2d 285, 293 (2d Cir. 1992) (bankruptcy court has jurisdiction to approve release of identified nondebtor third parties in plan); *Menard-Sanford v. Mabey (In re A. H. Robins Co.),* 880 F.2d 694, 701 (4th Cir 1989); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 93-94 (2d Cir. 1988) (permanent injunction favoring settling insurance companies approved); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir. 1987); *In re AOV Industries,* 792 F.2d 1140, 1152-53 (D.C. Cir.), *vacated on other grounds,* 797 F.2d 1104 (D.C. Cir. 1986). *See also In re Dow Corning Corp.,* 287 B.R. 396, 416 (E.D. Mich. 2002) (on remand from 6th Cir., district court upheld third-party releases and injunction).

upheld release and injunction of claims of third parties against nondebtors upon specific factual findings of: (1) fairness; (2) necessity to the reorganization; (3) fair consideration provided by the nondebtors; (4) that were given in exchange for fair consideration. *See United Artists Theatre Co.*, 315 F.3d at 227.

Pursuant to these standards, the Delaware bankruptcy court has approved third-party releases and injunctions in confirmed chapter 11 plans. *See In re Vencor, Inc.,* 284 B.R. 79, 86 (Bankr. D. Del. 2002) (Walrath, J.) (confirmed plan with third-party release and injunction for the funder of a settlement: "Contrary to the suggestion of the Movants, the Third Circuit did not adopt the inflexible rule of the Ninth and Tenth Circuits but expressly stated that it would 'not establish our own rule regarding conditions under which non-debtor releases and permanent injunctions are appropriate or permissible.' Instead, the Third Circuit concluded in *Continental* that the releases did 'not pass muster under even the most flexible tests for the validity of non-debtor releases' because there was no record to support those releases.") (citing *Continental Airlines*, 203 F. 3d at 213-14); *In re International Wireless Comm. Holdings, Inc.,* 1999 Bankr. LEXIS 1853, *24 -*28 (Walrath, J.) (applied five-factor test of *Master Mortgage*, and approved third-party release and injunction because exceptional circumstances existed where litigation between third parties would be costly to estate and the release was not gratuitous).

The Delaware bankruptcy court has applied the following five-factor test when considering approval of third-party releases in a chapter 11 plan:

1.  Is there an identity of interests such that a judgment against the third party would deplete the estate?

2.  Did the nondebtor make a substantial contribution of assets to the estate?

3.  Without the injunction would there be little likelihood of a successful plan?

4.  Do a substantial majority of creditors support the injunction?

5.      Does the plan provide for payment of all or substantially all of the claims
        of the class or classes affected by the injunction?

*See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607 n.15 (Bankr. D. Del. 2001) (Visiting

Judge Wizmur of Bankr. D.N.J.) (third-party release and injunction stricken from plan because

test not met) (citing *In re Zenith Electronics, Inc.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)

(Walrath, J.) (citing *In re Master Mortgage Investment Fund, Inc.,* 168 B.R. 930, 937 (Bankr.

W.D. Mo. 1994)).

        The Debtors satisfy the release factors in these Chapter 11 cases.  First, the Plan,

among other things, together with the Settlement, effectuates a significant release of prepetition

claims by the Committee, the Debtors and the Purchaser.  Pursuant to such resolution, the

foregoing parties agreed to release each of the others with respect to claims or causes of action

related to the Debtors.  There is a necessary identity of interest among the Debtors, the

Committee and the Purchaser, in respect of the release of their extensive claims against the

Debtors—which claims would otherwise deplete the estates—in exchange for the Third-Party

Releases.  Second, as described above, the parties benefiting from the Third-Party Release have

made substantial contributions of assets to the estates in connection with these releases.  Third,

without the Third Party Releases there would be significantly reduced and perhaps little

likelihood of success with the Plan—recoveries for Classes 5 and 7 would be necessarily less (or

nothing), thereby discouraging acceptance; timing of distributions would be delayed by ongoing

disputes; and, ultimately, feasibility could be threatened by disputed claims and associated

expenses of litigation that could paralyze the estates.  The Settlement and the associated Third-

Party Releases were integral to the negotiation process that gave rise to the Plan, and but for such

provisions, the Debtors submit that there would be no Plan.  Fourth, the majority of creditors

have voted in favor of confirmation of the Plan, including the Third-Party Releases. Finally, the Plan provides for a distribution to all of the claims of the classes that are affected by the Third-Party Releases.

Finally, the Debtors note that the release and injunction provisions, like the exculpation provision, of the Plan will eliminate the costs and risks of litigation for the Debtors and speed distribution and closing of the Debtors' cases, which may otherwise be hampered or diverted by litigation (either as a party to such litigation themselves or the indemnifying stakeholder who will bear the burden of the investigation, prosecution or participation in such litigation). The release and injunction provisions are the product of arm's-length negotiations, have been critical to obtaining the support of the various constituencies for the Plan, and do not implicate any party in interest who may not simply opt out of the Third-Party Releases by virtue of a vote to reject the Plan. Accordingly, the Debtors submit that the Plan's release and injunction provisions are necessary and appropriate under the circumstances of these Cases and should be approved pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

Ultimately, in the instant case, the grounds for the Third-Party Releases are compelling. All of the releases have been conspicuously set forth in the Plan, the Disclosure Statement, and the voting materials. The releases in the Plan are consensual and supported by substantial consideration, including the release of millions of dollars in claims that has been provided by the Purchaser and that will enhance the recovery of general unsecured creditors. '

Moreover, consensual third party-releases are commonly approved in this District. *See, e.g., In re Buffets Holdings, Inc.*, Case No. 08-10141(MFW) (Bankr. D. Del. Apr. 17, 2009); *In re Mrs. Fields' Original Cookies, Inc.*, Case No. 08-11953 (PJW) (Bankr. D. Del. Oct. 2,

2008); *In re Nellson Nutraceutical, Inc.*, Case No. 06-10072 (CSS) (Bankr. D. Del. Sept. 10, 2008); *In re Dura Automotive Systems, Inc.*, Case No. 06-11202 (Bankr. D. Del. May 13, 2008); *In re Meridian Automotive Systems Composites Operations, Inc.*, Case No. 05-11168 (MFW) Bankr. D. Del. Dec. 6, 2006); *In re Pliant Corp.*, Case No. 06-10001 (MFW) (Bankr. D. Del. June 23, 2006); *In re American Online Latin America*, Case No. 05-11778 (KG) (Bankr. D. Del. April 25, 2006).

In addition, consensual third-party releases have also commonly been granted in liquidating cases. *See, e.g.*, *In re Custom Food Products, Inc.*, Case No. 07-10495(PJW) (Bankr. D. Del. Sept. 10, 2007); *In re Intermet Corp.*, Case No. 08-11859 (KG) (Bankr. D. Del. July 14, 2009); *In re DESA Holdings Corp.*, 02-11672(WS) (Bankr. D. Del. Apr. 1, 2005); *In re HomeLife Corp.*, Case No. 01-2412 (JWV) (Bankr. D. Del. Mar. 6, 2003); *In re Crown Simplimatic Inc.*, Case No. 00-2255 (PJW) (Jan. 17, 2002). Moreover, the principal factor that militates in favor of such a consensual release—that "a Plan is a contract that may bind those who vote in favor of it," *In re Coram*, 315 B.R. at 336—bears no relationship to the question of whether a plan is a plan of reorganization or of liquidation.

Realty Income and other landlords represented by Kelly Drye & Warren, LLP objected to Plan with respect to, among other things, the release and injunction provisions of the Plan (the "KDW Objection"). The KDW Objection has been resolved by the addition of language to the proposed Confirmation Order.

The IRS Objection also objects to the Releases, Exculpation and Injunction provisions of the Plan. IRS Objection, para. 4. The Debtors anticipate that the IRS Objection on this issue will be resolved by the addition of language to the proposed Confirmation Order.

  
Under these circumstances, the Debtors respectfully submit that the releases contained in Article VI.B and VI.C of the Plan and the injunction provided in Article V.E of the Plan are appropriate and should be approved.

**V.**

**DISMISSAL OF THE FREEZE DEBTORS' CASES**

The Debtors believe that they have satisfied all applicable requirements for confirmation of the Plan for all the Debtors including the Freeze Debtors. Accordingly, the Debtors believe that the Plan should be confirmed as to the Freeze Debtors and anticipate consummation of the Plan as to the Freeze Debtors. Nonetheless, in the alternative, Article III.I serves as the Debtors' motion, in the alternative to Confirmation and Consummation of the Plan with respect to the Freeze Debtors, entry of an order dismissing one or more of the Chapter 11 cases of the Freeze Debtors. Section 1112 of the Bankruptcy Code provides for dismissal for cause, when dismissal is in the best interest of the estate and the creditors, *see* 11 U.S.C. § 1112(b), unless the Court determines that unusual circumstances exist such that dismissal would not be in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Those enumerated bases include, for example, the inability to propose and confirm a plan. *See* 11 U.S.C. § 1112(b)(4)(J); *In re Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987) (finding cause exists to dismiss the case where, inter alia, the debtor could not fund a plan of reorganization). Even if the court determines that an enumerated basis does not exist, the court can still find cause exists for dismissal if dismissal is in the best interest of the estate. "The determination of whether cause has been shown must be made on a case-by-case basis, and cause is not limited to the enumerated grounds of § 1112(b)." *Id.* at 378. Should Confirmation or Consummation of the Plan with respect to the Freeze Debtors fail, cause would exist for dismissal of the Freeze

Debtors' cases.

## CONCLUSION

**WHEREFORE**, based on the foregoing, the Debtors respectfully request that the Court

enter an Order confirming the Plan.

Dated:  June __1__, 2012                        **PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:       (302) 652-4100
Facsimile:        (302) 652-4400
Email:            ljones@pszjlaw.com
                  tcairns@pszjlaw.com
                  kmakowski@pszjlaw.com

                                - and -


James A. Stempel (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
Jeffrey D. Pawlitz (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200
Email:            james.stempel@kirkland.com
                  ross.kwasteniet@kirkland.com
                  jeffrey.pawlitz@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*