|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 11-13167 (CTG) |
| AMICUS WIND DOWN CORPORATION, | ) | |
| et al.,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date:  December 2, 2024 at 3:30 p.m. (ET)** |
| | ) | **Objection Deadline: November 25, 2024 at 4:00 p.m. (ET)** |

**AMENDED MOTION FOR ENTRY OF AN ORDER**
**ESTABLISHING RESERVE AMOUNT FOR**
**DISTRIBUTION TO PERSONAL INJURY CLAIMANTS**

The Friendly's Liquidating Trust (the "Trust"), by and through the Liquidating

Trustee (defined below) and its undersigned counsel, hereby submits this amended motion (the

"Motion") pursuant to section 502(c) of title 11 of the United States Code (the "Bankruptcy

Code") for an order, substantially in the form attached hereto as Exhibit A (the "Proposed

Order"), establishing a collective reserve amount for distribution to claimants holding unresolved

unsecured personal injury litigation claims against the Debtors, to the extent any ultimately are

allowed in a non-zero dollar amount, based on the SIR (defined below) under the Debtors'

applicable insurance.  This Motion amends and supersedes the pending *Friendly's Liquidating*

*Trust's Motion for Entry of an Order Establishing Reserve Amount for Distribution to Personal*

*Injury Claimants* (the "Initial Motion")[2] to reflect a change in the amount requested to be

reserved.  In support of this Motion, the Trust respectfully represents as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Amicus Wind Down Corporation, f/k/a Friendly Ice Cream Corporation (3130); Amicus Restaurants Franchise Wind Down, LLC, f/k/a Friendly's Restaurants Franchise, LLC (3693); Amicus Realty I Wind Down, LLC, f/k/a Friendly's Realty I, LLC (2580); Amicus Realty II Wind Down, LLC, f/k/a Friendly's Realty II, LLC (2581); Amicus Realty III Wind Down, LLC, f/k/a Friendly's Realty III, LLC (2583).

[2]     Docket No. 1926.

## JURISDICTION

1.       This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and Article IX of the *Debtors' First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (as confirmed, the "Plan").[3]  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory and other bases for the relief requested herein are sections 105(a) and 502(c) of the Bankruptcy Code and Article IV of the Plan.

3.       Pursuant to Local Rule 9013-1(f), the Trust consents to the entry of final orders or judgments by the bankruptcy Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A.       The Chapter 11 Cases

4.       On October 5, 2011 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  From and after the Petition Date, through the Plan Effective Date (defined below), the Debtors continued to operate as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3]     Docket No. 948.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

5.      On December 29, 2011, the Court entered an order approving the sale of substantially all of the Debtors' assets to Friendly's Ice Cream, LLC (f/k/a Sundae Group Holdings II, LLC) (the "Purchaser").[4]  The closing of the sale occurred on January 9, 2012.

6.      An order confirming the Plan was entered on June 5, 2012.[5]  The Plan became effective on June 28, 2012 (the "Plan Effective Date").  On the Plan Effective Date, pursuant to the terms of the Plan, the *Amicus Wind Down Corporation, et al. Liquidating Trust Agreement* was executed, thereby creating the Trust and appointing SltnTrust LLC d/b/a Solution Trust (the "Liquidating Trustee") to administer the Trust.  Under the Plan, the Liquidating Trust Assets serve the dual purpose of satisfying all Trust expenses as well as funding potential distributions, if any, to Trust beneficiaries.[6]

7.      In the ordinary course of the Debtors' business prior to the Petition Date, the Debtors were subject to numerous litigation claims, particularly personal injury claims, asserted by customers and other third parties (collectively, the "Litigation Claims").  As of the February 13, 2012 deadline for asserting pre-petition claims against the Debtors (the "Bar Date"), approximately 55 proofs of claim were filed against the Debtors asserting various Litigation Claims.

8.      Because litigation claims routinely are asserted in unliquidated amounts, in light of their fact-intensive nature, and due to jurisdictional limitations and related issues, litigation claims are often difficult to resolve within the context of a bankruptcy case and present challenges to making creditor distributions.  Accordingly, on April 25, 2021, as a necessary step toward making first and final distributions to holders of General Unsecured Claims, the Trust

---

[4]     Docket No. 592.

[5]     Docket No. 1123.

[6]     *See* Plan § III.B.

brought the Initial Motion seeking to establish a reserve amount for distribution in the amount of $250,000 (the "Initial Reserve") in connection with personal injury Litigation Claims against any Debtor. The impetus of the Initial Motion was that the pendency of numerous Litigation Claims, many asserted in unliquidated amounts and/or in excess of the self-insured retention ("SIR") relevant to the Debtors' applicable insurance policy, made it impossible for the Trust to make distributions to holders of General Unsecured Claims until the underlying litigation could be resolved, which would take place in numerous non-bankruptcy forums over an indeterminate period of time. To date, no objections to the Initial Motion have been received.

9. Subsequent to the filing of the Initial Motion, the Trust determined that the amount of the Initial Reserve should be revisited in light of, among other things, the *Order Sustaining Liquidating Trustee's Seventeenth Omnibus (Non Substantive) Objection to Certain Personal Injury Claims* (the "Seventeenth Omnibus Order")[7] disallowing and expunging 35 of the Litigation Claims, leaving a smaller subset of open Litigation Claims for further resolution.

10. In connection therewith, the pending Initial Motion was the subject of a dialogue before this Court at a status conference held on March 6, 2024 (the "March Hearing") discussing the open matters to be addressed before these chapter 11 cases could be closed. As part of that status conference, the Trust suggested to the Court that the Initial Reserve should be downwardly adjusted to account for the reduction in the number of Litigation Claims remaining on the claims register.[8] As further support, the Trust represented to the Court that, as a result of discussions with numerous claimants—none of whom were proceeding *pro se*—all holders of the open Litigation Claims that remained following entry of the Seventeenth Omnibus Order were

---

[7] Docket No. 1641.

[8] *See* Docket No. 1976 (*Order Setting Status Conference*); *see also* Docket No. 1983 (audio file of proceedings held on March 4, 2024).

aware that the liquidation of their claims ultimately would be subject to non-bankruptcy litigation and the availability of insurance proceeds.[9] The Trust explained that claimants were incentivized to waive their claims against the estate in favor of continued litigation and pursuit of available insurance proceeds (if any) above the SIR, with the consequences that, over time, several claimants entered into stipulations memorializing a waiver, or abandoned their Litigation Claims to the extent of any payment from the estate outright.[10] In light of these circumstances and given the materiality of $250,000 relative to the amount of cash expected to be available for distribution to holders of General Unsecured Claims, the Trust concluded at the March Hearing that reducing the Initial Reserve to $50,000 (the "Proposed Reserve") was appropriate under the circumstances.

11. In response to the Trust's representations at the March Hearing, the Court suggested that the Initial Motion should be amended and set for hearing on proper notice to potentially affected parties with an opportunity to respond.

**RELIEF REQUESTED**

12. By this Motion, the Trust, acting by and through the Liquidating Trustee, revises the relief requested in the Initial Motion and seeks entry of the Proposed Order attached hereto as Exhibit A, establishing the reduced Proposed Reserve for eventual distribution (if any) to holders of the remaining Litigation Claims whose claims ultimately are allowed, and estimating each remaining Litigation Claim as a General Unsecured Claim not to exceed the SIR.[11]

---

[9] *See* Docket No. 1983 (audio file of proceedings held on March 4, 2024).

[10] *See id.*

[11] Currently, the Trust has identified 20 open Litigation Claims, a list of which is attached hereto as Exhibit B.

13.     Section 502(c) of the Bankruptcy Code provides that the Court shall estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."[12] As the Delaware bankruptcy court has observed, "[e]stimation helps the court 'avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions.'"[13]

14.     Section 502(c) specifically contemplates the estimation of contingent or unliquidated claims to aid in the administration of a debtor's estate. Indeed, courts have long utilized section 502(c) to set claim distribution reserves in connection with contingent and/or unliquidated claims.[14] The Plan, too, highlights the Trust's ability to use this important tool:

> [A]fter the Effective Date, the Liquidating Trustee, may, at any time request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law, and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. . . .   In the event that the Bankruptcy Court estimates

---

[12]    11 U.S.C. § 502(c).

[13]    *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) (quoting *Matter of Ford*, 967 F.2d 1047, 1053 (5th Cir. 1992)); see also *In re Lionel L.L.C.*, No. 04-17324, 2007 WL 2261539, at *2 (Bankr. S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy proceedings result in "delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use the assets until they receive them" (citation omitted)).

[14]    *See In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) (Bankr. D. Del. Nov. 14, 2016) [D.I. 483] (establishing aggregate claims reserve based on estimated disputed claims); *In re Newpage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Feb. 19, 2013) [D.I. 3166] (establishing aggregate claims reserve based on estimated disputed claims).

> any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under this Plan, including the Purposes of distributions. . . .

Plan § V.A.3. While 28 U.S.C. § 157(b)(2) places restrictions on the Court's ability to estimate contingent or unliquidated personal injury tort or wrongful death claims against an estate for purposes of distribution, here, notably, the Court would not be estimating the Litigation Claims on their merits or making any findings associated therewith. Rather, because recoveries for unsecured creditors in this case are not expected to exceed 1%, the Proposed Reserve simply recognizes that the liability of the Debtors' estates cannot exceed the distributive value of the remaining twenty Litigation Claims if allowed at the SIR (20 x \$250,000 = \$5,000,000; \$5,000,000 x 0.01 = \$50,000).[15]

15.     Here, it is critical to the administration of the Trust and the conclusion of these long-pending chapter 11 cases to establish a reserve for the remaining Litigation Claims, which will eliminate the uncertainty associated with claims filed in unliquidated amounts and establish the maximum potential liability as to claims asserted in excess of the SIR. With the outer limits of the Trust's responsibility to make payments associated with the Litigation Claims defined, the Trust could potentially make distributions to unsecured creditors by the end of 2024 or the first quarter of 2025, to the extent that other pending matters are resolved, and substantially contemporaneous therewith, pursue entry of a final decree. As and when Litigation Claims are resolved in the applicable non-bankruptcy forums, upon notification to the Trust, the holders will receive their reserved distribution based on the ultimate allowed amount of their

---

[15]   Notably, three of the twenty Litigation Claims listed on Exhibit B are held by the same person, arising out of the same incident, with only a single SIR to apply. Moreover, as noted above, some of the other remaining Litigation Claims, by this time, are likely to have been waived or abandoned

General Unsecured Claims (up to an allowed amount of $250,000), but in any case, the Trust will be able to satisfy the standards under Section 350(a) of the Bankruptcy Code for closing these chapter 11 cases since the Litigation Claims will not need further administration before this Court.[16]

16. Contrariwise, the contingent and/or unliquidated nature of the Litigation Claims prevents the Trust from beginning the distribution process, because the Trust cannot even calculate a preliminary distribution percentage to determine which claims are likely to exceed the *de minimis* threshold for distributions under the Plan. The ultimate resolution of these Litigation Claims, therefore, materially impacts the Trust's ability to facilitate distributions to unsecured creditors.

17. Further, the Trust's resources are severely limited. Expending additional resources to liquidate these claims in amounts certain (up to the SIR) prior to making distributions would harm the holders of allowed General Unsecured Claims. The Trust submits, therefore, that the most expeditious and efficient course is to set a reserve at the maximum amount for which the Debtors' estate could be liable on account of these indeterminate claims.

18. Accordingly, the Trust respectfully requests that the Court approve the Proposed Reserve, together with the estimation of the Litigation Claims at the SIR in connection therewith, as being in the best interests of the Debtors' creditors and estates.

## NOTICE

19. Notice of this Motion has been given, in accordance with the Bankruptcy Rules and the Local Rules, via first-class mail service, e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to (i) the Office of the United States Trustee, Region 3, (ii) the holders

---

[16] This Motion is not an admission of any liability whatsoever, and is without prejudice as to any insurer's or personal injury claimant's rights to argue any issue of fact or law in any underlying litigation.

of remaining Litigation Claims, and (ii) all parties that have requested service of notice in these cases pursuant to Bankruptcy Rule 2002.  The Trust respectfully submits that no other or further notice need be given in light of the circumstances of these cases.

WHEREFORE, the Trust respectfully requests the entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
   November 13, 2024

**BENESCH, FRIEDLANDER,  
 COPLAN & ARONOFF LLP**

 */s/ Jennifer R. Hoover*  
Jennifer R. Hoover, Esq. (No. 5111)  
Steven L. Walsh, Esq. (No. 6499)  
1313 N. Market Street, Suite 1201  
Wilmington, DE 19801  
Telephone: (302) 442-7010  
Facsimile: (302) 442-7012  
Email:  jhoover@beneschlaw.com  
   swalsh@beneschlaw.com

-and-

**KELLEY DRYE & WARREN LLP**  
James S. Carr (*pro hac vice* forthcoming)  
Dana P. Kane (*pro hac vice* forthcoming)  
Katherine Cavins (*pro hac vice* forthcoming)  
3 World Trade Center  
175 Greenwich Street  
New York, New York 10007  
Tel:  212-808-7800  
Fax: 212-808-7897  
Email: jcarr@kelleydrye.com  
   dkane@kelleydrye.com  
   kcavins@kelleydrye.com

*Counsel to the Friendly's Liquidating Trust*